**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE: XM SATELLITE RADIO HOLDINGS SECURITIES LITIGATION | ) ) ) Case No. 06-0802 (ESH) ) |

**MEMORANDUM OF LAW IN SUPPORT OF RON PRICE'S MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
<u>SELECTION OF LEAD COUNSEL</u>**

<u>**NATURE OF THE CASE**</u>

**I.   Introduction**

Ron Price ("Plaintiff" or "Movant") respectfully submits this memorandum of law in support of his motion for: (i) appointment of Movant as Lead Plaintiff on behalf of a Class of XM Satellite Radio Holdings ("XM") option purchasers, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA");[1] and (ii) approval of his selection of Finkelstein, Thompson & Loughran as Lead Counsel.

This litigation is a securities fraud class action commenced in this court against XM and Hugh Panero.[2] The various related actions allege that the Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder and 20(a) of the Securities Exchange Act of 1934. The case against

---

[1]  These amendments are contained in Public Law 107-67, 109 Stat. 737, 15 U.S.C. § 78u-4.

[2]  The facts are based upon the allegations contained in the complaint filed by *Gerald Alan Cassel, Sr. v. XM Satellite Radio Holdings Inc.*, No. 1: 06cv0929.

Defendants is brought on behalf of a class (the "Class") of all persons or entities who purchased or otherwise acquired the publicly-traded securities of the Company between July 28, 2005 and February 15, 2006, (the "Class Period") and were damaged thereby.[3]

XM disclosed on February 16, 2006, that, in contrast with previous announcements, its fourth quarter resulted in enormous costs for the company. XM further disclosed that its Board Member, former Director Pierce J. Roberts, Jr. had resigned because he was becoming increasingly anxious that the current expenditures were not in the best interest of XM or its shareholders. Between February 16, 2005 and May 16, 2006 (the filing of the *Cassel* Complaint), XM's stock dropped by nearly 28.5%, as a result of this revelation.

Throughout the Class Period the defendants had represented to the public that XM would be able to reach its stated goal of acquiring 6 million subscribers by the end of 2005, while reducing the cost of its new subscribers. Since XM has never reported a profit, its value, and the value of its stock, is based principally on the number of subscribers it reports and the costs of acquiring those subscribers. Although Defendants knew that XM would need to spend these large sums of money in the fourth quarter of 2005, Defendants failed to disclose to the public that the cost of subscriber acquisition would rise to excessive levels, leading to huge increases in XM's net losses in direct contradiction of the goal and trend of declining subscriber acquisition costs and net losses that defendants were declaring during the Class Period. As evidenced by the January 6, 2006 disclosure, Defendants' statements during the Class Period were materially false and misleading at the time they were made because:

---

[3] Ron Price is a member of the Class as defined in *Boland v. XM Satellite Radio Holdings Inc.,* et al., No. 06cv889: "all persons who purchased XMSR publicly traded securities on the open market during the Class Period." *Boland* Complaint, ¶ 28 (filed May 10, 2006).

(1) In reality, the excessive cost of subscriber acquisition would lead to huge increases in XM's net losses;

(2) In reality, XM was not continuing to grow its gross margin while reducing costs to acquire each new subscriber;

(3) In reality, XM was required to spend enormous sums of money in the fourth quarter of 2005, in order to reach its goal of six million subscribers (Both SAC and CPGA were growing, rather than decreasing during the Class Period, due to the exorbitant cost of XM's aggressive marketing and advertising).

During the Class Period (as defined below), Movant purchased 20 contracts of options for shares of XM Satellite Radio Holdings Inc. ("XM") stock with a strike price of $35 for $13, 983. These prices were artificially inflated by defendants' false and misleading statements which were revealed to the public on February 16, 2006. Mr. Price exercised zero shares of XM's stock during the Class Period. As a result of the revelations of February 16, 2006, the underlying share price plummeted, causing Mr. Price to suffer a loss of $13,616. Mr. Price now seeks to represent a class of investors who purchased call options of XM's shares between July 28, 2005 and February 15, 2006, inclusive (the "Options Class"), seeking to recover damages from XM and Hugh Panero, XM's President and Chief Executive Officer. On May 1, 2006, the first class action lawsuit related to this disclosure was filed in the United States District Court for the District of Columbia. Notice of the pendency of the lawsuit was filed on May 3, 2006. Subsequently, additional complaints were filed in this District.[4] The cases were

---

[4] Ten complaints (the "Related Actions") have been filed and consolidated in this District against XM, Hugh Panero, and/or certain of XM's current and former officers and directors for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j(b) and 78t(a)). Presently pending in this District are: *Booth Family Trust v. Parsons*, et al., No. 06cv833; *Boland v. XM Satellite*

3

consolidated by the court on June 7, 2006. Presently before the Court is Ron Price's Motion For Appointment as Lead Plaintiffs and Approval of His Selection of Lead Counsel.

## SUMMARY OF ARGUMENT

1.      As of June 30, 2006, Ron Price believes that he has suffered the largest loss of an options holder and that he satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and should therefore be appointed Lead Plaintiff in accordance with the PSLRA.

2.      Proposed Lead Plaintiff has chosen Finkelstein, Thompson & Loughran as Lead Counsel, and this choice should not be disturbed.

## ARGUMENT

**I.      Ron Price Satisfies the Lead Plaintiff Requirements of the PSLRA and Should Be Appointed.**

  **A.      Movant Has Complied with the Procedural Requirements of the PSLRA.**

The PSLRA established a procedure that governs the appointment of a lead plaintiff in "each action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(I). Under this statute, the plaintiff who files the initial action must publish a notice to the class within twenty (20) days of filing the action. Within sixty (60) days of publishing notice, any person or group of persons who are members of the proposed class

---

*Radio Holdings Inc.,* et al., No. 06cv889; *Murphy v. XM Satellite Radio Holdings Inc.*, et al., No. 06cv905; *Bernstein v. XM Satellite Radio Holdings Inc.,* et al., No. 06cv926; *Davis v. XM Satellite Radio Holdings Inc.,* et al., No. 06cv0952; *Chu v. XM Satellite Radio Holdings Inc.,* et al., No. 06cv973; *Frank v. XM Satellite Radio Holdings Inc.,* et al., No. 06cv1057; *Carey v. XM Satellite Radio Holdings Inc.,* et al., No. 06cv857; *Vassiltsov v. XM Satellite Radio Holdings Inc.,* et al., No. 06cv877; and *Satloff v. XM Satellite Radio Holdings Inc.,* et al., No. 06cv802.

may apply to the Court to be appointed lead plaintiff, regardless of whether they have previously filed a complaint in the action. *See* 15 U.S.C. §§ 78u-4(a)(3)(A) and (B).

The required notice must inform class members of: (1) the pendency of the action; (2) the claims asserted in the complaint; (3) the purported class period; and (4) that, no later than 60 days from the date the notice was published, any member of the purported class could move the Court to serve as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff's counsel in *Satloff v. XM Satellite Radio Holdings Inc.,* et al., No. 06cv802 caused notice sufficient to meet these requirements to be published in a recognized and reputable news source on May 3, 2006, following the filing of their complaint.[5] *See* First Notice annexed as Exhibit A to the accompanying Declaration of Donald J. Enright ("Enright Decl.").[6]

The 60 day time period provided by the PSLRA in which applications for appointment as lead plaintiff must be filed expires on July 3, 2006. Ron Price moved within this statutory time period, submitting a sworn certification and setting forth his transactions in XM securities during the Class Period. Movant has also confirmed his intention to serve as a representative party on behalf of the Class. *See* Enright Decl., Ex. B.

Moreover, Ron Price has selected and retained competent counsel to represent him and the Class. The firm resume for Finkelstein, Thompson & Loughran, Proposed Lead Counsel, is attached as Exhibit D to the Enright Declaration. Accordingly, Movant

---

[5] The newswires have consistently been recognized as a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated business-oriented publication or wire services." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866 at *2 (N.D. Ill. Aug. 6, 1997).

[6] Submitted herewith is the Declaration of Donald J. Enright in support of Ron Price's Motion for Appointment as Lead Plaintiff and Selection of Lead Counsel.

has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B).  Thus, Movant is entitled to have his application for appointment as Lead Plaintiff granted, and his selection of Finkelstein, Thompson & Loughran as Lead Counsel approved by the Court.

> **B.     Movant Has The Largest Financial Interest of Any Proposed Lead Plaintiff on Behalf of Options Purchasers.**

In appointing the Lead Plaintiff for the Options Class, this Court must be guided a presumption that the most adequate plaintiff is the person or group of persons who "has the largest financial interest in the relief sought by the class" and who otherwise satisfies the requirements of Fed. R. Civ. P. 23.  15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(I).  *See In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 433 (E.D. Va. 2000); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 64 (D. Mass. 1996).  This presumption may only be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(II).

As stated above, the Options Class consists of purchasers of contracts of options for XM shares during the class period and who suffered a loss thereby.  Other proposed lead plaintiff groups who do not include call option purchasers may not be considered for appointment as lead plaintiff for the Options Class, because they do not count an adequate class representative among them.  Rather, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."  *See In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 375-78 (E.D. Va. 2003)(appointing Co-Lead Plaintiffs to have representation for both ADR and common stock purchasers); *see also General Tel. Co. of Southwest v. Falcon*, 457 U.S.

147, 156 (1982), quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395 (1977). As such, even if another proposed lead plaintiff group has a larger financial interest, such group would be inadequate for the purposes of representing the Options Class unless the group included an adequate option purchaser.

Options holders have distinct interests which do not apply to not common stock purchasers. Specifically, options holders such as Mr. Price have a different interest in this litigation as regards the XM corporate entity. Because options holders own no equity in the corporation, itself, they have no pecuniary interest in maintaining the viability or long-term integrity of the corporation. Instead, to options holders such as Mr. Price, the only interest in this action is to maximize their damages recovery– even if this is accomplished at the expense of harming the long-term financial integrity of the corporation. By contrast, a class comprised of stockholders who have equity in the corporation will necessarily consider the impact that various litigation outcomes will have on the integrity of the corporate entity that they own. As such, a litigation outcome that would be desirable and acceptable to options holders may very well end up being rejected by a class comprised of stockholders who are looking to safeguard the financial well-being of the corporation. For this reason, only a class comprised of options holders such as Mr. Price can adequately represent the interests of fellow XM call options holders. Additionally, option holders have distinguishable and identifiable differences in comparison to common shareholders should XM dissolve, liquidate or wind up their business dealings.

As stated *supra*, Mr. Price has a substantial financial stake in this litigation, having suffered total losses of $13,616. *See* Enright Decl. Ex. C. Movant is aware of no

other proposed lead plaintiff seeking to represent the Options Class, let alone any proposed lead plaintiff seeking to represent this class with a larger financial stake in this litigation. Because Mr. Price possesses the largest financial interest of all Options Class movants, he is presumed to be the "most adequate" plaintiff for purposes of appointing a Options Class Lead Plaintiff. 15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(I)(bb).

### C.  Mr. Price Satisfies the Requirement of Rule 23.

Mr. Price should be appointed Lead Plaintiff of the Options Class because he satisfies the typicality and adequacy requirements of Rule 23. According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class may be certified only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Yet, in selecting a lead plaintiff, it is well established that the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See In re MicroStrategy*, 110 F. Supp. 2d at 435 ("[A] district court need only determine (i) whether the movant's 'claims or defenses . . . are typical of the claims or defenses of the class' and (ii) whether the movant 'will fairly and adequately protect the interests of the class'") (internal citation omitted). *See also In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 441 (S.D. Tex. 2002) (courts limit their inquiry to the typicality and adequacy prongs of

8

Rule 23(a), and defer examination of the remaining requirements until class certification); *In re Waste Management,* 128 F. Supp. 2d 401, 411 (S.D. Tex. 2000); *In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998); *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.") (*citing Gluck v. Cellstar Corp.,* 976 F. Supp. 542, 546 (N.D. Tex. 1997); *Fischler v. AmSouth Corporation*, 176 F.R.D. 583 (M.D. Fla. 1997)).

A *prima facie* showing that the class member in question satisfies the requirements of Rule 23(a) is sufficient. *See In re MicroStrategy,* 110 F. Supp. 2d at 435-36. *See also In re Cendant Corp. Lit.*, 264 F.3d 201, 263 (3d Cir. 2001); *Greebel*, 939 F. Supp. at 64 (holding that a *prima facie* showing that a PSLRA movant satisfies the requirements of Rule 23 is sufficient.).

### 1. Mr. Price's Claims Are Typical of the Options Class' Claims

The typicality requirement is met where, as here, the claims of a plaintiff are typical of the claims of the class comprised of XM call options purchasers. Moreover, the "typicality requirement is satisfied as long as plaintiff and the Class 'point to the same broad course of alleged fraudulent conduct' to support a claim for relief." *Zinberg v. Washington Bancorp., Inc.*, 138 F.R.D. 397, 401 (D.N.J. 1990), *quoting In re Electro-Catheter Sec. Litig.,* [1987-1988 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 93,643, at 97,931 (D.N.J. Dec. 3, 1987); *see also Fisher v. Virginia Electric and Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003) ("Some factual variations between the class members is not fatal to typicality.")(internal citation omitted); *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not

show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members."). The focus of the typicality inquiry is not the plaintiffs' behavior, but rather, defendants' actions. *In re IGI Sec. Litig.*, 122 F.R.D 451, 456 (D.N.J. 1988) ("[I]t is the **defendants'** course of conduct, in this case the release to the press of the allegedly fraudulent and misleading statements, upon which the court must focus in determining typicality.") (emphasis in original).

Of course, as stated earlier, a proper class representative must be a member of the class he or she seeks to represent. As such, only investors who purchased call options during the relevant Class Period may be considered as potential lead plaintiffs for the Options Class. *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982), *quoting East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395 (1977). *See also In Re Arakis Energy Corp. Sec. Litig.*, 1999 U.S. Dist. LEXIS 22246, *45 (S.D.N.Y. 1999)(creating a sub-class for options holders); *Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398, 402 (D. Minn. 1998)(appointing separate lead plaintiffs and counsel for classes of options purchasers and stock purchasers); *In re Paracelsus Corp. Sec. Litig.*, 6 F. Supp. 2d 626 (S.D. Tex. 1998) (holding that, because none of the class representatives had purchased senior subordinated notes, they did not have standing to pursue claims of note purchasers); *In re One Bancorp Sec. Litig.*, 136 F.R.D. 526, 531 (D. Me 1991) (holding that, where class representatives had only purchased common stock, the class was limited to common stock purchasers and could not include purchasers of other securities); *Model Assoc., Inc. v. U.S. Steel Corp.*, 88 F.R.D. 338, 340 (D. Ohio 1980) (same); *Cohen v. Uniroyal, Inc.*, 77 F.R.D. 685, 693 (E.D.Pa. 1977) (same). That

consideration is of particular significance here, where irreconcilable conflicts may exist between members of a stockholder class and members of an options class. Thus, Mr. Price is qualified to represent the Options Class, because he is a member, while any movant who did not purchase call options during the Class Period would not have standing, and could not be appointed as Lead Plaintiff for the Options Class.

Like all the members of the Options Class, Mr. Price purchased Call Options during the Class Period at prices artificially inflated by defendants' misrepresentations and omissions, and was damaged thereby. Typicality exists here because the claims asserted by Mr. Price are based on the same legal theory and arise from the same fraudulent scheme perpetrated by defendants. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 311 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114, 119 S. Ct. 890 (1999).

### 2. *Mr. Price Will Adequately Represent the Options Class' Interests*

The adequacy requirement of Rule 23 is satisfied where the prospective lead plaintiff: "(i) does not have interests that are adverse to the interests of the class, (ii) has retained competent counsel, and (iii) is otherwise competent to serve as class representative." *In re MicroStrategy, 110*, F. Supp. 2d at 435-36.

Here there is no question that Mr. Price is an adequate representative of the Class. Movant has sustained substantial damages as a result of each of his purchases of XM options and would benefit from the same relief. As a result, Mr. Price's interests are clearly aligned with those of the members of the Options Class, and there is no evidence of any antagonism between Movant and the putative class. The same cannot be said of would-be representatives who were merely stockholders but not options purchaser, like

11

Mr. Price. For the reasons already discussed, stockholders simply do not share the same interest in this litigation as options purchasers, and thus cannot adequately represent an options class. Mr. Price has amply demonstrated his adequacy to serve as a class representative by signing a certification, filing it with the Court, and affirming his willingness to serve as and assume the responsibilities of a class representative. In addition, as shown below, Movant's proposed Lead Counsel are highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Having suffered significant losses, Movant is also motivated to vigorously prosecute this action. Thus, Mr. Price satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

## II.     The Court Should Approve Ron Price's Selection of Lead Counsel

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class. The Court should not disturb the lead plaintiff's choice of counsel unless "necessary to protect the interest of the plaintiff class." *See* 141 Cong. Rec. H13691-08, at H13700 (daily edition Nov. 28, 1995) (Statement of Managers – "The Private Securities Litigation Reform Act of 1995"); 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

Mr. Price has retained Finkelstein, Thompson & Loughran to serve as Local Counsel. This firm possesses extensive experience in the area of securities litigation and have successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of injured investors in this Court and others. *See* Finkelstein Thompson & Loughran firm resume, filed herewith as Exhibit D to the Enright Decl.

Accordingly, the Court should approve Ron Price's selection of Lead Counsel.

## **CONCLUSION**

For all the foregoing reasons, Ron Price respectfully requests that the Court: (i) appoint his as Lead Plaintiff on behalf of the Options Class; and (ii) approve his selection of Finkelstein, Thompson & Loughran as Lead Counsel for the Class.

Dated: June 30, 2006

FINKELSTEIN, THOMPSON & LOUGHRAN

*/S/ DONALD J. ENRIGHT*
Donald J. Enright   (D.C. Bar #463007)
Karen J. Marcus    (D.C. Bar #486435)
The Duvall Foundry
1050 30th Street, N.W.
Washington, DC 20007
(202) 337-8000

**Counsel for Movant and Proposed Lead Counsel to the Class**