**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re XM Satellite Radio Holdings Securities Litigation** )<br>)<br>)<br>) | **Civil Action No. 06-0802** |
| **This Document Relates To:<br>All Plaintiffs** )<br>)<br>)<br>)<br>) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF VICTOR
VENTIMIGLIA FOR APPOINTMENT AS LEAD PLAINTIFF AND
<u>APPROVALOF SELECTION OF CO-LEAD COUNSEL AND LIAISON COUNSEL</u>**

Movant Victor Ventimiglia (the "Ventimiglia" or "Movant") hereby respectfully submits this memorandum of law in support of his motion for: (i) appointment as Lead Plaintiff, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (ii) approval of Movant's selection of Co-Lead Counsel and Liaison Counsel.

## INTRODUCTION

This action is a securities fraud class action brought against XM Satellite Radio Holdings Inc. ("XM" or the "Company") and Hugh Panero (collectively referred to as the "Defendants") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, on behalf of all persons who purchased or otherwise acquired XM common stock at artificially inflated prices during the proposed Class Period (collectively, the "Class").

Movant purchased 7,000 shares of XM common stock between July 28, 2005 and February 16, 2006 (the "Class Period"), and suffered estimated losses[1] of $46,390.64 as a result of Defendants' misconduct. Movant seeks appointment as Lead Plaintiff and approval of his selection of Co-Lead Counsel and Liaison Counsel for plaintiffs and the Class as set forth herein. As discussed below, Movant has satisfied each of the requirements of the PSLRA and, therefore, is qualified for appointment as Lead Plaintiff.

## PROCEDURAL BACKGROUND

On or about May 1, 2006, the plaintiff in the Satloff action[2] filed a complaint on behalf of

---

[1] The estimated losses suffered by Movant is determined based on the certification required under Section 21D of the Exchange Act and based on information concerning the current market for the Company's common stock. See Declaration of Gary E. Mason, July 3, 2006, Ex. C. ("Mason Decl.").

[2] Satloff v. XM Satellite Radio Holdings, Inc., et al., 06 CV 0802 (ESH) (D.C. May 3, 2006).

1

a class consisting of all persons and entities who purchased XM common stock at artificially inflated prices during the proposed Class Period.  On May 3, 2006, notice was published over PrimeZone Media Network advising members of the proposed class of their right to move the Court to serve as lead plaintiff within the requisite period from the date of publication of the notice.  See Mason Decl., Ex. A.  On June 7, 2006, this Court consolidated approximately nine actions under the within caption.

## SUMMARY OF FACTS

The allegations of this action center on Defendants' false and misleading statements made to the investing public concerning the number of subscribers and, in particular, a critical component of success in the satellite radio field -- costs of acquiring subscribers or subscriber acquisition costs (hereinafter "SAC") ¶¶s 16, 21.  [3] Defendants failed to inform the investing public that SAC, and other costs such as Cost Per Gross Addition ("CPGA"), ¶ 18, would rise to extraordinary levels. In fact ,instead, defendants touted throughout the Class Period that SAC would actually decline as compared to the prior year"). ¶19.  Specifically, defendant Panero emphasized in public announcements what he called "smart subscriber growth," or growth in the subscriber base that was achieved at a low SAC, thus preserving profitability."¶ ¶ 22 and 26.  Only at the end of the Class Period, on February 16, 2006, did Defendants disclose that SAC had skyrocketed over SAC for the same annual period the year earlier, increasing 39%. ¶ 28.  The Defendants blamed this huge increase in expenses in both SAC and CPGA (which increased 36% over the prior period) on what Defendants called a "one time competitive event" in the 4th quarter of 2005, which the Complaint makes clear, was easily anticipated earlier in the Class

---

[3]    References to complaints for purposes of this memorandum will be to the complaint filed in the action Bernstein v. XM Satellite Radio Holdings, Inc., et al., 06 CV 0926 (ESH) (D.C. May 16, 2006) (the "Complaint") (referred to as "¶ __").

2

Period.  These events caused the resignation of at least one very knowledgeable director of XM who, unbeknownst to XM public investors, had internally been decrying XM's skyrocketing costs and expenditures. ¶¶ 29 and 27.  In response to XM's February 16 announcement the price of XM's common shares plunged 13% from $25.25 to $21.96. ¶ 29.

During the Class Period the Complaint also alleges that key insiders of XM sold huge amounts of their XM holdings taking advantage of XM's artificially inflated share price. Defendant Panero sold 99% of his XM shares to reap proceeds of $11,846,000. ¶ 40(a).  In addition, other key officers of the Company unloaded shares at an alarming rate, reaping over $8 million in proceeds, and XM director George Weaver Haywood reaped proceeds of over $58 million, representing 72% of his holdings, from his sale of shares during the Class Period. ¶ 40.

## ARGUMENT

## POINT I

### Movant Should Be Appointed Lead Plaintiff

#### A.    The Procedure Required By The PSLRA

The PSLRA establishes a procedure governing the appointment of a lead plaintiff in "each action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i).  On May 3, 2006, notice of the first XM action was published over PrimeZone Media Network.  See Mason Decl., Ex. A.

Second, the PSLRA provides that within 90 days after publication of notice, the Court

3

shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines the most adequate to represent the interests of the class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that - -
>
> (aa)    has either filed the complaint or made a motion in response to a notice . . .
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4 (a)(3)(B)(iii). See generally Greebel v. FTP Software, 939 F. Supp. 57, 64 (D. Mass. 1996).

### B.    Movant Satisfies The PSLRA's "Lead Plaintiff" Requirements

#### 1.    Movant Has Complied with the PSLRA in Timely Seeking Appointment as Lead Plaintiff

The time period in which class members may move to be appointed as lead plaintiff herein under 15 U.S.C. § 78u-4 (a)(3)(A) and (B) expires on July 3, 2006. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on May 3, 2006), Movant timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

Movant has duly signed and filed a certification stating that he has reviewed the complaint filed in the action and is willing to serve as a representative party on behalf of the Class. See Mason Decl., Ex. B. In addition, Movant has selected and retained experienced and competent counsel to represent them and the class. See Mason Decl., Exs. D-F.

4

Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and is entitled to have his application for appointment as Lead Plaintiff and his selection of counsel, as set forth herein, considered and approved by the court.

### 2. Movant Has Among the Largest Financial Interests In The Relief Sought By The Class

According to 15 U.S.C. § 21(a)(3)(B)(iii), the court shall appoint the lead plaintiff who represents the largest financial interest in the relief sought by the action. During the Class Period, as evidenced by, among other things, the accompanying signed certification, collectively, Movant purchased 7,000 shares of XM common stock and suffered estimated losses of $46,390.64 as a result of Defendants' misconduct. See Mason Decl., Ex. C. Therefore, Movant herein has a significant financial interest in this case. Movant has received notice of only one other proposed lead plaintiff in this action who **may** have a larger financial interest in this matter which proposed Lead Plaintiff Ventimiglia has not had ample time to properly evaluate since he only just received the moving papers in connection therewith. (See Motion For Appointment of Adam Barber as Lead Plaintiff Pursuant to Section 21D of the Securities Exchange Act of 1934 and To Approve Lead Plaintiffs' Choice of Counsel). Therefore, it is believed at this time that Movant satisfies the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3. Movant Otherwise Satisfies the Requirements of Federal Rules of Civil Procedure Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

5

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only typicality and adequacy directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. Lax v. First Merchants, 1997 U.S. Dist. LEXIS 11866 at *20 (N.D. Il. 1997); Fischler v. Amsouth Bancorporation, 1997 U.S. Dist. LEXIS 2875 at *7-8 (M.D. Fla. 1997).

Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as Lead Plaintiff. Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists if claims "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." See In re Drexel Burnham Lambert Group, Inc., 960 F. 2d 285, 291 (2d Cir. 1992), cert. dismissed sub nom., 506 U.S. 1088 (1993). However, the claims of the class representative need not be identical to the claims of the class to satisfy typicality. Instead, the courts have recognized that:

> [T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.

Bishop v. New York City Dept. Of Housing Preservation and Development, 141 F.R.D. 229, 238 (2d Cir. 1992).

6

Movant seeks to represent a class of purchasers of XM common stock who have identical, non-competing and non-conflicting interests. Movant satisfies the typicality requirement, because he: (i) purchased or otherwise acquired XM common stock; (ii) at market prices allegedly artificially inflated as a result of Defendants' violations of the federal securities laws; and (iii) suffered damages thereby. Thus, typicality is satisfied since the claims asserted by Movant arise "from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." Walsh v. Northrop Grumman Corp., 162 F.R.D. 440, 445 (E.D.N.Y. 1995).

Under Rule 23(a)(4) the representative party must also "fairly and adequately protect the interests of the class." The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members, and (2) the class representative's choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. Garfinkel v. Memory Metals, Inc., 695 F. Supp. 1397, 1405 (D. Conn. 1988).

Here, Movant is an adequate representative of the class. As evidenced by the injury suffered by Movant, who purchased XM common stock at prices allegedly artificially inflated by Defendants' violations of the federal securities laws, the interests of Movant are clearly aligned with the members of the class, and there is no evidence of any antagonism between Movant's interests and those of the other members of the class. In addition, as shown below, Movant's proposed Co-Lead Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movant satisfies the typicality and adequacy requirements of Rule 23.

## POINT II

**The Court Should Approve Movant's Choice of Co-Lead Counsel and Liaison Counsel**

Pursuant to 15 U.S.C. § 78u-4 (a)(3)(B)(v), the proposed Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class they seek to represent. In that regard, Movant has selected Stull, Stull & Brody and Kantrowitz Goldhamer & Graifman, P.C. to serve as Co-Lead Counsel and The Mason Law Firm, P.C. to serve as Liaison Counsel. Stull, Stull & Brody and Kantrowitz Goldhamer & Graifman, P.C. have extensive experience in successfully prosecuting shareholder and securities class actions and have frequently appeared in major actions. See Mason Decl., Exs. D & E.

## CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (i) appoint Movant as Lead Plaintiff in the Action and (ii) approve Movant's selection of Co-Lead Counsel and Liaison Counsel as set forth herein.

Dated: July 3, 2006

    Respectfully submitted,

    **THE MASON LAW FIRM, P.C.**

    By: _____/s Gary E. Mason_____
    Gary E. Mason
    1225 19th St., NW, Suite 500
    Washington, D.C. 20036
    Tel: (202) 429-2290
    Fax: (202) 429-2294

    **Proposed Liaison Counsel For**
    **Plaintiffs and The Class**

STULL, STULL & BRODY
Howard T. Longman
James E. Lahm
6 East 45th Street
New York, NY 10017
Tel: (212) 687-7230
Fax: (212) 490-2022

KANTROWITZ GOLDHAMER &
GRAIFMAN, P.C.
Gary Graifman
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, NY 10977
Tel:  (845) 356-2570
Fax: (845) 356-0799

**Proposed Co-Lead Counsel For
Plaintiffs and The Class**