UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------- x
                                         :
                                         :
In re XM Satellite Radio Holdings        : Civil Action No. 06-0802 (ESH)
Securities Litigation                    :
                                         :
---------------------------------------- :
                                         :
                                         :
This Document Relates to:                :
                                         :
All Actions                              x
---------------------------------------- 


# MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE ZARIF GROUP TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE SELECTION OF COUNSEL

## PRELIMINARY STATEMENT

Avi Zarif, Brock Ketcher, Victor Ventimiglia and Corey Spohn ("The Zarif Group") hereby move to be appointed Lead Plaintiff in this action against XM Satellite Radio Holdings Inc. ("XMSR") pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and for approval of its selection of the law firms Motley Rice, LLC ("Motley Rice") and Kahn Gauthier Swick, LLC ("KGS") as Lead Counsel, and Cohen Milstein Hausfeld & Toll, PLLC, ("Cohen Milstein") as Liaison Counsel in this case.

The Zarif Group is precisely the type of lead plaintiff the framers of the PSLRA encouraged to participate in securities class actions by enacting the PSLRA's lead plaintiff provision. The legislative history of the PSLRA is summarized in the Statement of Managers, which noted the PSLRA was intended to increase the likelihood that sophisticated investors who have a significant interest in the underlying action, will serve as lead plaintiffs because, among other reasons, small, cohesive groups of sophisticated investors with large amounts at stake "will represent the interest of the plaintiff class more effectively than class members with small amounts at stake." House Conference Report No. 104-369, 104th Cong. 1st Sess. At 34 (1995), reprinted at 1995 USCC&AN730, 733. The Zarif Group is comprised of the type of sophisticated investors Congress sought to lead securities class actions through enactment of the PSLRA.

The Zarif Group fully understands its duties and responsibilities to the class, and is willing and able to oversee the vigorous prosecution of this action. As described in the Certification attached to the Kahn Declaration at Ex. A, The Zarif Group has suffered a loss of $471,671.39 as a result of its purchase and/or acquisition of 103,647 shares of XMSR common

stock during the period July 28, 2005 and May 24, 2006, inclusive (the "Class Period"). To the best of its knowledge, The Zarif Group has therefore sustained the largest loss of any qualified investor seeking to be appointed as Lead Plaintiff. In addition to evidencing the largest financial interest in the outcome of this litigation, The Zarif Group's Certification demonstrates its intent to serve as Lead Plaintiff in this litigation, including its cognizance of the duties of serving in that role.[1] Moreover, The Zarif Group satisfies both the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and is presumptively the "most adequate plaintiff." The Zarif Group respectfully submits that it should be appointed as Lead Plaintiff in this action, and that this Honorable Court should approve its selection of the law firms of Motley Rice and KGS as Lead Counsel for the Class, and Cohen Milstein as Liaison Counsel for the Class.

## BACKGROUND

**Defendant XMSR**

XMSR is a Delaware corporation with its principal place of business and chief operating offices located in Washington, DC. The Company operates as a provider of satellite radio content and services, primarily throughout the United States. XMSR provides music, information, news, sports and entertainment content that is available only through home, vehicle or portable satellite radio receivers, which the Company also sells.

**Summary of Allegations**

The complaint filed herein against XMSR alleges that defendants violated federal securities laws by issuing a series of materially false statements. Specifically, the complaint

---

[1] The relevant federal securities laws specifically authorize any class member seeking to be appointed lead plaintiff to either file a complaint or move for appointment as lead plaintiff. *See*, 15 U.S.C. § 78u-4(a)(3)(B)(iii). A copy of The Zarif Group's certification of its transactions in XMSR' securities during the Class Period is attached as Exhibit A to the Kahn Decl. that has been filed in support of this motion.

charges, that defendants made misrepresentations regarding XMSR's ability to reduce new subscriber acquisition costs as the Company reached its purported goal of 9 million subscribers by year-end 2006. Unbeknownst to investors, as defendants attempted to reach this announced goal, they began to force the Company to spend extraordinarily large sums on its marketing efforts. Regardless of these substantial additional marketing costs, however, defendants consistently represented that XMSR expected to exceed 9 million subscribers by year-end 2006 and that XMSR had been successful in *lowering* its subscriber acquisition costs.

Throughout the Class Period, defendants failed to disclose that XM's subscriber acquisition costs were rising to extraordinary levels, and that the Company would not be able to meet its subscriber guidance. Regardless of these undisclosed adverse conditions that were negatively impacting the Company throughout this time, during the Class Period, several key XMSR insiders liquidated large amounts of their personally held XMSR shares wile in possession of material, adverse non-public information about the Company.

It was only beginning on February 16, 2006, that investors first began to learn the truth about the Company, after XMSR published a release, that day, announcing a much larger loss in the fourth quarter, on higher costs for marketing and subscriber acquisitions. That day, XMSR announced that its subscriber acquisition cost per customer was $89 - - compared to $64 in the same period of the prior year.

Later, however, on May 24, 2006, the final day of the Class Period, XMSR also announced that it was also unable to reach its subscriber acquisition goals and, accordingly, was reducing its subscriber guidance for 2006 from 9 million to 8.5 million. Upon this announcement, shares of XM fell $1.76, or 13%, to close at $13.75 per share.

The first of several class action lawsuits charging XMSR and certain officers with violating federal securities laws was filed on or about May 1, 2006, in the United States District Court for the District of Columbia. See Kahn Decl. at Ex. B. (press release announcing suit against XMSR and other defendants for violating the federal securities law). Consistent with the terms of the PSLRA, The Zarif Group has timely filed this motion for appointment as Lead Plaintiff within 60 days from the publication of the May 3, 2006 notice.

## ARGUMENT

### I. The PSLRA Procedure For Lead Plaintiff Appointment Favors Appointment of The Zarif Group

The selection of Lead Plaintiff in a securities class action is a determination made by the Court as to which plaintiff is the most capable of adequately representing the class. The Court:

> (s)hall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be *most capable of adequately representing* the interests of class members in accordance with this subparagraph.

15 U.S.C. §78u-4(a)(3)(B)(i) (emphasis added). The "most adequate plaintiff" assumes a rebuttable presumption that:

> The most adequate plaintiff in any private action arising under this subchapter is the person or group of persons that ---
>
> (aa)   has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb)   *in the determination of the court, has the largest financial interest in the relief sought by the class; and*
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) (emphasis added).

Only by a showing that a lead plaintiff will not fairly and adequately represent the class, or is subject to unique defenses that will render such plaintiff incapable of adequately representing the class, will this presumption be overcome. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Under this statutory test, The Zarif Group is the "most adequate plaintiff" and should be appointed as Lead Plaintiff on behalf of the proposed class. The Zarif Group is composed of exactly the types of sophisticated and interested investors with large losses that Congress intended to lead class action securities lawsuits. The Zarif Group has timely moved this Court for appointment as Lead Plaintiff in accordance with the PSLRA and has the willingness, resources and expertise to obtain excellent results for the class. Consequently, this Court should appoint The Zarif Group as Lead Plaintiff and approve its selection of Motley Rice and KGS as Lead Counsel and Cohen Milstein as Liaison Counsel.

### A. The Zarif Group Has Complied With The PSLRA And Should Be Appointed Lead Plaintiff

The Zarif Group moves the Court to be appointed Lead Plaintiff and has timely filed the instant motion to be appointed lead plaintiff within the 60-day time period requirement. The plaintiff in the first filed action published notice on a national business-oriented wire service, on May 3, 2006. Accordingly, The Zarif Group meets the requirement of 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa) and has filed its motion by July 3, 2006.

Moreover, The Zarif Group is composed of sophisticated investors that have collectively and individually sustained a substantial loss from their investment in XMSR stock and has shown its willingness to represent the class by signing a certification detailing its XMSR transaction information during the Class Period. See Kahn Decl. Ex. A. As demonstrated by these certifications, The Zarif Group is prepared to consult with counsel on a regular basis, prior to every major litigation event, and direct the course of the litigation, with the benefit of

counsel's advice. In addition, The Zarif Group has selected and retained highly competent counsel to represent the Class with significant experience in securities class action litigation. The firm biographies of Lead Counsel Motley Rice and Kahn Gauthier Swick are attached as Exhibits C and D to the Kahn Declaration, and the firm biography of Cohen Milstein is attached as Exhibit E to the Kahn Declaration.

### B. The Zarif Group Has The Largest Financial Interest of The Plaintiffs Who Have Submitted Applications for Lead Plaintiff And Is Otherwise Qualified To Serve as Lead Plaintiff In This Action

As a result of its purchases of XMSR common stock throughout the Class Period The Zarif Group has suffered losses of $471,671.39. See Kahn Decl. Ex. A. The Zarif Group believes it has the largest financial interest in this class action compared to any other party moving for Lead Plaintiff. The PSLRA provides that there is a rebuttable presumption that the "most adequate plaintiff" is the plaintiff or *group of plaintiffs* with the largest financial interest in the relief sought by the class. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb); see In re Baan Co. Sec. Lit., 186 F.R.D. 214, 217 (D.D.C. 2002) (approving a group of plaintiffs similar in size to that of the Zarif Group as *lead plaintiff*). The Zarif Group, therefore, is presumptively the "most adequate plaintiff" pursuant to the PSLRA.

### C. The Zarif Group Satisfies The Requirements Of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the Exchange Act, as amended by the PSLRA, provides that the lead plaintiff must satisfy the typicality and adequacy requirements of Fed.R.Civ.P. Rule 23(a). In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49-50 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). This Court's analysis of any other requirements of Rule 23 as it relates to class certification should be deferred until the lead

plaintiff moves for class certification. Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 252 (S.D.N.Y. 2003) (citing In re Party City, 189 F.R.D. at 106) ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'"). As detailed below, The Zarif Group satisfies both the typicality and adequacy requirements of Rule 23(a), and should therefore be appointed Lead Plaintiff in this action.

        1.        **The Zarif Group's Claims Are Typical Of The Claims Of All The Class Members**

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims….of the class." The typicality requirement of Rule 23 (a)(3) is satisfied when the representative plaintiffs' claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. See Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598 (2d Cir. 1986). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. See Daniels v. City of N.Y., 198 F.R.D. 409, 418 (S.D.N.Y. 2001) (citing Wilder v. Bernstein, 499 F. Supp. 980, 922 (S.D.N.Y. 1980)).

In this case, the typicality requirement is met because The Zarif Group's claims *are* identical to the claims of the other Class Members. The Zarif Group and all the members of the Class Members purchased XMSR securities during the Class Period when the stock prices were artificially inflated as a result of the Defendants' fraudulent misrepresentations and omissions, and thus, both The Zarif Group and the Class Members suffered damages as a result of these purchases. Simply put, The Zarif Group, like all the other Class Members, (1) purchased XMSR stock during the Class Period; (2) purchased XMSR stock at artificially inflated prices as a result

of the Defendants' misrepresentations and omissions; and (3) suffered damages thereby. The Zarif Group's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise." Oxford, at 50.

Moreover, The Zarif Group and its members are not subject to any unique or special defenses. Thus, The Zarif Group meets the typicality requirement of Fed.R.Civ.P. Rule 23 because its claims are the same as the claims of the other Class Members.

### 2. The Zarif Group Will Adequately Represent The Interests Of The Class

The Requirements of Rule 23(a)(4) relating to adequate representation are satisfied "if (1) the class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the interests of the class are not antagonistic to one another; and (3) the lead plaintiff has a sufficient interest in the outcome to ensure vigorous advocacy." In re Olsten Corp. Sec. Litig., 3 F.Supp.2d 289, 296 (E.D.N.Y. 1998). As described below, The Zarif Group will adequately represent the interests of the class.

The Zarif Group's interests are clearly aligned with the members of the class because its claims are identical to the claims of the Class. There is no evidence of antagonism between its interests and those of proposed Class Members. Furthermore, The Zarif Group has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the very large financial loss it incurred as a result of the wrongful conduct alleged herein. This motivation, combined with The Zarif Group's identical interest with the members of the Class, clearly shows that The Zarif Group will adequately and vigorously pursue the interests of the Class. In addition, The Zarif Group has selected law firms that are highly experienced in prosecuting securities class actions such as this one to represent it.

In sum, because of The Zarif Group's common interests with the Class Members, its clear motivation and ability to vigorously pursue this action, and its competent counsel, the adequacy requirement of Fed.R.Civ.P. Rule 23(a) is met in this case. Therefore, since The Zarif Group not only meets both the typicality and adequacy requirements of Fed.R.Civ.P. Rule 23(a), and has sustained the largest amount of losses at the hands of the Defendants, it is, in accordance with 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), presumptively the most adequate plaintiff to lead this action.[2]

## II.     This Court Should Approve The Zarif Group's Selection of Counsel

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the class, subject to the Court's approval. See U.S.C. §78u-4(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

The Zarif Group has selected Motley Rice and KGS to serve together as Lead Counsel for the Class and Cohen Milstein to serve as Liaison Counsel for the Class. Each of these firms has not only prosecuted complex securities fraud actions, but has successfully prosecuted many other types of complex cases. See Ex. C, D and E to Kahn Decl. This Court may be assured that in the event that this motion is granted, the members of the class will receive the highest caliber of legal representation.

## CONCLUSION

For all of the foregoing reasons, The Zarif Group respectfully requests that this Court: (1) appoint The Zarif Group to serve as Lead Plaintiff in this consolidated action; (2) approve The

---

[2] The PSLRA clearly envisions a two-part test of a presumption of adequacy and a mechanism for rebutting the presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I) and (II). The Zarif Group meets the presumption of adequacy. However, there have not been any submissions to the Court which seek to rebut this presumption at this time. If any such submission can be made or is submitted to the Court, The Zarif Group would respectfully request the opportunity to address them with the Court in both written and oral argument.

Zarif Group's selection of Lead and Liaison Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

DATED: July 3, 2006

Respectfully submitted,

BY: /s/ Daniel S. Sommers
Steven J. Toll  (DC Bar No. 225623)
Daniel S. Sommers (DC Bar No. 416549)
Joseph P. Helm, III
**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
1100 New York Avenue, NW
West Tower, Suite 500
Washington, DC  20005
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699

*Liaison Counsel for*
   *The Zarif Group and the Class*

Stuart J. Guber (Georgia Bar No. 141879)
James M. Evangelista
(New York Bar No. JE 1246)
**Motley Rice LLC**
One Georgia Center
600 West Peachtree Street, Suite 800
Atlanta, GA 30308
Telephone: (404) 201-6900
Facsimile:

Lewis  S. Kahn (Louisiana Bar No. 23805)
Michael A. Swick (New York Bar No. MS 9970)
**Kahn Gauthier Swick, LLC**
650 Poydras St., Suite 2150
New Orleans, Louisiana 70130
Telephone (504) 455-1400
Facsimile: (504) 455-1498

*Counsel for The Zarif Group and*
*Proposed Lead Counsel for the Class*