UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re XM SATELLITE RADIO HOLDINGS SECURITIES LITIGATION | ) Civil Action No. 1:06-cv-00802-ESH )  ) <u>CLASS ACTION</u> ) |
| This Document Relates To:  ALL ACTIONS. | ) ) ) ) ) |

MEMORANDUM IN SUPPORT OF THE MOTION OF BOCA RATON AND PLUMBERS LOCAL 267 FOR APPOINTMENT AS LEAD PLAINTIFFS AND FOR APPROVAL OF SELECTION OF LEAD COUNSEL

**I.      PRELIMINARY STATEMENT**

Presently pending before this Court is a consolidated securities class action lawsuit (the "Action")[1] brought on behalf of all those who purchased or otherwise acquired XM Satellite Radio Holdings Inc. ("XM" or the "Company") securities between July 28, 2005 and May 24, 2006, inclusive (the "Class Period")[2] and allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Institutional Investors Boca Raton Firefighters and Police Pension Fund ("Boca Raton") and Plumbers Local 267 Pension Fund ("Plumbers Local 267") hereby move this Court for an Order to: (i) appoint Boca Raton and Plumbers Local 267 as Lead Plaintiffs in the Action under Section 21D(a)(3)(B) of the Exchange Act; and (ii) approve Boca Raton's and Plumbers Local 267's selection of the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") to serve as Lead Counsel.

This motion is made on the grounds that Boca Raton and Plumbers Local 267 are the most adequate plaintiffs, as defined by the PSLRA. Boca Raton and Plumbers Local 267 are precisely the type of institutional investors that Congress sought to summon and empower when it enacted the PSLRA. *See Ferrari v. Impath, Inc.,* No. 03 Civ. 5667, 2004 U.S. Dist. LEXIS 13898, *10 (S.D.N.Y. July 15, 2004) (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as Lead Plaintiffs). Moreover, as institutional investors,

---

[1] On June 7, 2006, the Court, after considering the parties' Consent Motion to Consolidate Cases filed on June 5, 2006, entered an Order consolidating the eight actions pending before the Court and any subsequent, related actions that would be filed.

[2] The longest Class Period was provided in a press release published on June 30, 2006. *See* Juda Decl. Ex. A.

Boca Raton and Plumbers Local 267 are accustomed to acting as fiduciaries and their experience in legal and financial matters will substantially benefit the class.

Boca Raton and Plumbers Local 267 collectively suffered losses of $551,872.73 in connection with their purchases of thousands of XM shares during the Class Period. *See* Juda Decl. Ex. B.[3] To the best of our knowledge, this is the greatest loss sustained by any moving class member or class member group who has brought suit or filed an application to serve as Lead Plaintiff in this Action. In addition, Boca Raton and Plumbers Local 267, for the purposes of this motion, adequately satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure in that their claims are typical of the claims of the putative class and that they will fairly and adequately represent the interests of the class.

## II.   FACTUAL BACKGROUND

Defendant XM describes itself as "America's number one satellite radio service with more than 6.5 million subscribers."

In the satellite radio industry, there are two companies that compete for customers: XM and Sirius Satellite Radio Inc. ("Sirius"). Unlike conventional radio, which can be listened to through any radio device for free, satellite radio is a paid service that requires a special receiver, which must also be purchased by customers. The services cost about $13 a month and offers various channels of talk and news as well as commercial-free music.

Since they first began operations, XM and Sirius have been engaged in an expensive battle to line up listeners and programming for their pay radio services and have consistently reported large losses as a result.

---

[3]   References to the "Juda Decl., Ex. ___" are to the exhibits attached to the accompanying Declaration of Nancy M. Juda dated July 3, 2006, and submitted herewith.

In October 2004, Sirius announced that it signed shock jock Howard Stern to a five year contract to move his program over from conventional radio to satellite radio. The Stern programming was set to commence in January 2006.

The complaint charges XM and certain of its officers and directors with violations of the Securities Exchange Act of 1934. The complaint alleges that, throughout the Class Period, defendants issued numerous positive statements concerning the Company's financial performance that failed to disclose, among other things: (a) that the Company would be required to dramatically increase its marketing and acquisition costs to attract subscribers to compete with Sirius; (b) that the Company was experiencing decreased subscriber additions; (c) that there was no reasonable basis for projections of over nine million customers by year end of 2006; (d) that the Company was engaging in improper marketing tactics; (e) that the Company was subject to heightened regulatory risks associated with its marketing efforts; and (f) that, as a result of the foregoing, the Company's future revenue streams and growth would be in serious doubt.

On February 16, 2006, the Company announced a much wider loss in the fourth quarter on higher costs for marketing and acquiring subscribers. The Company announced that its subscriber acquisition cost per customer was $89, compared to $64 in the same period of the prior year. The Company admitted that the increase was due to a "one-time competitive event in the fourth quarter," i.e. the arrival of Howard Stern on Sirius.

On that same day, the Company also announced the resignation of one of its directors, Pierce J. Roberts ("Roberts"). According to his resignation letter, Mr. Roberts was "troubled about the current direction of the company." Moreover, Mr. Roberts stated that "[g]iven current course and speed there is, in my view, a significant chance of a crisis on the horizon. Even absent a crisis, I believe that XM will inevitably serve its shareholders poorly without major changes now."

Following these announcements, shares of XM's common stock declined $1.27 per share, or 5%, to close at $23.98 per share, on heavy trading volume. The Company's stock continued to decline on the next trading day, falling $2.41 per share, or 11%, to close at $21.57 per share.

On April 27, 2006, the Company announced that it received a letter from the Federal Trade Commission ("FTC") stating that the FTC is conducting an inquiry into whether the Company is in violation of the FTC Act, the Telemarketing Sales Rule, the Truth in Lending Act and the CAN-SPAM Act. As part of the inquiry, the FTC requested information from the Company with regard to its marketing activities, including free trial periods, rebates, telemarketing activities, billing and customer complaints. Moreover, the Company also received a letter from the Federal Communications Commission ("FCC") stating that the transmitter in XM's "Delphi XM SKYFi2 radio" was not in compliance with the applicable emission limits. Following these announcements, shares of XM fell $1.21 per share, or 6%, to close at $20.80 per share, on heavy trading volume.

Then, on May 24, 2006, the Company announced that it was reducing its subscriber guidance for 2006 from 9 million to 8.5 million. Upon this announcement, shares of XM fell $1.76 per share, or 13%, to close at $13.75 per share, on heavy trading volume.

Prior to disclosing these adverse events, Company insiders sold 2.66 million shares of their personally-held XM stock for gross proceeds in excess of $75.8 million.

### III. ARGUMENT

#### A. BOCA RATON AND PLUMBERS LOCAL 267 SHOULD BE APPOINTED LEAD PLAINTIFFS

##### 1. The Procedure Required by the PSLRA

The PSLRA has established a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Securities Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. §§78u-4(a)(3)(A)(i). Plaintiff in the in the action entitled *Morris Satloff v. XM Satellite Radio Holdings Inc., et al.*, 1:06-cv-00802-ESH, caused the first notice regarding the pendency of these actions to be published on *PrimeZone Media Network*, a national, business-oriented newswire service, on May 3, 2006. *See* Juda Decl. Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. 78u-4(a)(3)(B)(iii). *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### 2. Boca Raton and Plumbers Local 267 Satisfy the "Lead Plaintiff" Requirements of the Exchange Act

#### a. Boca Raton and Plumbers Local 267 Have Complied with the Exchange Act and Should Be Appointed Lead Plaintiffs

The time period in which class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on July 3, 2006. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on May 3, 2006), Boca Raton and Plumbers Local 267 timely move this Court to be appointed Lead Plaintiffs on behalf of all members of the class.

Boca Raton and Plumbers Local 267 have duly signed and filed certifications stating that they are willing to serve as the representative parties on behalf of the class. *See* Juda Decl. Ex. C. In addition, Boca Raton and Plumbers Local 267 have selected and retained competent counsel to represent them and the class. *See* Juda Decl. Ex. D. Accordingly, Boca Raton and Plumbers Local 267 have satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiffs and selection of Lead Counsel as set forth herein, considered and approved by the Court.

#### b. Boca Raton and Plumbers Local 267 Are Precisely the Types of Lead Plaintiffs Congress Envisioned When It Passed the PSLRA

The Congressional objective in enacting the Lead Plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. Boca Raton and Plumbers Local 267, as institutional investors, are precisely the types of Lead Plaintiffs Congress envisioned when it passed the PSLRA.

        c.      **Boca Raton and Plumbers Local 267 Have the Requisite Financial Interest in the Relief Sought by the Class**

During the Class Period, as evidenced by, among other things, the accompanying signed certifications, *see* Juda Decl. Ex. C, Boca Raton and Plumbers Local 267 collectively purchased thousands of XM shares in reliance upon the materially false and misleading statements issued by the defendants and were injured thereby. In addition, Boca Raton and Plumbers Local 267 incurred a substantial $551,872.73 collective loss on their transactions in XM shares. Boca Raton and Plumbers Local 267 thus have a significant financial interest in this case. Therefore, Boca Raton and Plumbers Local 267 satisfy all of the PSLRA's prerequisites for appointment as Lead Plaintiffs in this Action and should be appointed Lead Plaintiffs pursuant to 15 U.S.C. 78u-4(a)(3)(B).

        d.      **Boca Raton and Plumbers Local 267 Otherwise Satisfy Rule 23**

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative.  Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification.  *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866 at *20, (N.D. Ill. Aug. 6, 1997).  Boca Raton and Plumbers Local 267 satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiffs.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members.  *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).  Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical.  *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted).  The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical.  *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981).

Boca Raton and Plumbers Local 267 satisfy this requirement because, just like all other class members, they: (1) purchased XM shares during the Class Period; (2) purchased XM shares in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby.  Thus, Boca Raton's and Plumbers Local 267's claims are typical of those

of other class members since their claims and the claims of other class members arise out of the same course of events.  Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class."  The PSLRA directs this Court to limit its inquiry regarding the adequacy of Boca Raton and Plumbers Local 267 to represent the class to the existence of any conflicts between the interest of Boca Raton and Plumbers Local 267 and the members of the class.  The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members; and (2) the class representatives' choice of counsel who are qualified, experienced and able to vigorously conduct the proposed litigation.  *See Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

Here, Boca Raton and Plumbers Local 267 are adequate representatives of the class.  As evidenced by the injuries suffered by Boca Raton and Plumbers Local 267, who purchased XM shares at prices allegedly artificially inflated by defendants' materially false and misleading statements, the interests of Boca Raton and Plumbers Local 267 are clearly aligned with the members of the class, and there is no evidence of any antagonism between Boca Raton's and Plumbers Local 267's interests and those of the other members of the class.  Further, Boca Raton and Plumbers Local 267 have taken significant steps which demonstrate they will protect the interests of the class: they have retained competent and experienced counsel to prosecute these claims.  In addition, as shown below, Boca Raton's and Plumbers Local 267's proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner.  Thus, Boca Raton and Plumbers Local 267 *prima facie* satisfy the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

**B.    THE COURT SHOULD APPROVE BOCA RATON'S AND PLUMBERS LOCAL 267'S CHOICE OF COUNSEL**

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent.  In that regard, Boca Raton and Plumbers Local 267 have selected the law firm of Lerach Coughlin as Lead Counsel, a firm which has substantial experience in the prosecution of shareholder and securities class actions, including serving as lead counsel in *In re Enron Corp. Sec. Litig.*, No. H-01-3624, 2005 U.S. Dist. LEXIS 39867 (S.D. Tex. Dec. 22, 2005), in which Lerach Coughlin has obtained recoveries to date which represent the largest recovery ever obtained in a shareholder class action.. *See* Juda Decl. Ex. D.  Accordingly, the Court should approve Boca Raton's and Plumbers Local 267's selection of counsel.

**IV.    CONCLUSION**

For all the foregoing reasons, Boca Raton and Plumbers Local 267 respectfully request that the Court: (i) appoint Boca Raton and Plumbers Local 267 as Lead Plaintiffs in the Action; (ii) approve their selection of Lead Counsel as set forth herein; and (iii) grant such other relief as the court may deem just and proper.

DATED:  July 3, 2006                                    LERACH COUGHLIN STOIA GELLER
                                                                              RUDMAN & ROBBINS LLP
                                                                        NANCY M. JUDA (DC Bar # 445487)


                                                                                    s/ *Nancy M. Juda*
                                                                              NANCY M. JUDA

                                                                        1100 Connecticut Avenue, N.W., Suite 730
                                                                        Washington, DC  20036
                                                                        Telephone:  202/822-6762
                                                                        202/828-8528 (fax)

        LERACH COUGHLIN STOIA GELLER
          RUDMAN & ROBBINS LLP
        SAMUEL H. RUDMAN
        DAVID A. ROSENFELD
        MARIO ALBA, JR.
        58 South Service Road, Suite 200
        Melville, NY  11747
        Telephone:  631/367-7100
        631/367-1173 (fax)

        [Proposed] Lead Counsel for Plaintiffs

        LAW OFFICES BERNARD M.
          GROSS, P.C.
        DEBORAH R. GROSS
        Wanamaker Bldg., Suite 450
        100 Penn Square East
        Philadelphia, PA  19107
        Telephone:  215/561-3600
        215/561-3000 (fax)

        SUGARMAN AND SUSSKIND
        ROBERT SUGARMAN
        2801 Ponce De Leon, Suite 750
        Coral Gables, FL 33134
        Telephone:  305/529-2801
        305/447-8115 (fax)

        Additional Counsel for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 3, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

          LERACH COUGHLIN STOIA GELLER
            RUDMAN & ROBBINS LLP

                s/ Mario Alba, Jr.
                MARIO ALBA, JR.

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
E-mail:  MAlba@lerachlaw.com