Steven J. Toll (DC Bar No. 225623)
Daniel S. Sommers (DC Bar No. 416549)
**COHEN, MILSTEIN, HAUSFELD & TOLL, PLLC**
1100 New York Avenue, NW
West Tower, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699

*Proposed Liaison Counsel for
the XM Shareholder Group*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE XM SATELLITE RADIO HOLDINGS SECURITIES LITIGATION<br><br>This Document relates to: All Actions | **JOINT OPPOSITION OF PLAINTIFFS THE ZARIF GROUP AND ADAM BARBER TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF & SELECTION OF COUNSEL**<br><br>Master File No.: 06-0802 (ESH) |

1

I.   **STATEMENT OF ISSUES AND FACTS**

   **1.   Introduction**

At least ten actions, all of which assert securities fraud claims against XM Satellite Radio Holdings, Inc. ("XMSR" or the "Company"), have been filed by various plaintiffs.[1] These cases have been consolidated, and on June 30, 2006, four movants and/or groups of movants petitioned the Court to be appointed Lead Plaintiff in these consolidated actions: (i) Avi Zarif, Brock Ketcher, Victor Ventimiglia, and Corey Spohn (the "Zarif Group"); (ii) Boca Raton Firefighters and Police Pension Fund ("Boca Raton") and Plumbers Local 267 Pension Fund ("Plumbers Local 267") (the "Lerach Group"); (iii) Ron Price; and (iv) Adam Barber.[2]

At this time, the Zarif Group and Adam Barber (hereinafter the "XM Shareholder Group") hereby oppose the competing motions for appointment as Lead Plaintiff because the XM Shareholder Group is the most adequate plaintiff that otherwise satisfies the requirements of Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

The XM Shareholder Group is the most adequate plaintiff because, as detailed below: (i) the XM Shareholder Group has the largest financial interest in the relief sought

---

[1] These actions, as well as any subsequent filed related actions, were consolidated by Order of this Court, dated June 7, 2006.

[2] A fifth motion was filed, purportedly on behalf of Victor Ventimiglia. This motion was filed without the authorization of Mr. Ventimiglia, who is and has been a member of The Zarif Group. Mr. Ventimiglia intends to file a separate declaration stating his position on this matter, as well as in further support of the instant joint opposition. The unauthorized motion has since been withdrawn.. *See also* Notice of Withdrawal of Motion of Victor Ventimiglia (Doc. # 23).

by the proposed class; (ii) the Lerach Group is neither adequate nor typical since it has failed to demonstrate any unity or cohesion, and has produced no information regarding the members of this purported group or how it intends to monitor and control this litigation; (iii) there is no justification for appointing any "niche" plaintiffs or creating any "subclasses;" and (iv) no other movant has a larger financial interest in the relief sought by the proposed class.

2. **Procedural History**

On May 3, 2006, notice was published on *Primezone*, a national newswire service, alerting investors to the pendency of this action, filed individually and on behalf of all persons or entities that purchased or otherwise acquired the securities of XMSR during the relevant class period.[3]

Within 60 days following the publication of this notice, consistent with the terms of the Exchange Act and the PSLRA, four plaintiffs and/or groups of plaintiffs have timely filed motions for appointment as Lead Plaintiff. After a review of the pending motions, the Court should approve the XM Shareholder Group as Lead Plaintiff, and approve its selection of Co-Lead and Liaison Counsel. This Court should also reject any motion opposing or competing with the XM Shareholder Group.

II. **THE XM SHAREHOLDER GROUP IS THE MOST ADEQUATE PLAINTIFF OF ALL MOVANTS**

The members of the XM Shareholder Group timely filed their respective motions to be appointed Lead Plaintiff and have the largest financial interest in the relief sought by the class. Accordingly, the XM Shareholder Group meet the requirements of 15

---

[3] The initial action purported to represent a class of investors who purchased shares of the Company between July 28, 2005 and February 15, 2006. Later, this class period was purportedly expanded from July 28, 2005 to May 24, 2006.

U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa). The XM Shareholder Group will fairly and adequately protect the interests of the class. Moreover, it is not subject to any unique claims or defenses that would render the XM Shareholder Group incapable of representing the interests of the class. *See* 15 U.S.C. §78u-4(a)(3) (B)(iii)(II).

### 1. The XM Shareholder Group Has the Largest Financial Interest in the Relief Sought

The XM Shareholder Group has the largest financial interest in the relief sought by the proposed class and is, therefore, presumptively the most adequate plaintiff. The XM Shareholder Group has suffered losses in excess of $730,304.81 in connection with its purchase of XMSR stock. *See* Exhibit A to Supplemental Declaration of Lewis Kahn in Further Support of Motions of the Zarif Group and Adam Barber for Appointment as Lead Plaintiff and in Opposition to All Competing Motions ("Supp. Kahn Decl."). In comparison, the purported losses of the Lerach Group are significantly less, $551,872.73. *See* Ex. B to Declaration of Nancy M. Juda in Support of the Motion of Boca Raton and Plumbers Local 267 (Doc. # 16). Furthermore, the losses of Ron Price are alleged to be a mere $13,616.00. *See* Ex. C to Declaration of Donald J. Enright in Support of Ron Price's Motion (Doc. #8). Accordingly, when compared to the two aforementioned competing movants, based upon the losses of each group or movant, the XM Shareholder Group has the largest financial interest under the PSLRA.[4]

### 2. In Addition to Having the Largest Financial Interest, the XM Shareholder Group Has Complied with the PSLRA, and Is Also Adequate and Typical of the Members of the Class it Seeks to Represent

---

[4] With losses of over $252,000 as a result of his investment in XMSR stock during the class period, movant Barber has the largest individual loss of any movant seeking appointment as Lead Plaintiff. In fact, it is likely that the personal loss of movant Barber is far greater than the personal loss of any member or participant in the two funds which comprise the Lerach Group.

The XM Shareholder Group has the largest financial interest in the relief sought by the class. Its members have also filed timely motions to serve as Lead Plaintiff, and the group as a whole, as well as each of its members, otherwise satisfy the requirements of Fed. R. Civ. P. 23. Furthermore, no movant has rebutted this presumption and no evidence has been offered to show that the XM Shareholder Group will not fairly and adequately represent the interests of the class. Similarly, no competing movant has offered any proof that the interest of the XM Shareholder Group or any of its members is antagonistic to, or in conflict with, the interests of the proposed class it seeks to represent.

Moreover, the XM Shareholder Group is composed of sophisticated, avid investors who manage personal investments and retirement portfolios for themselves and their dependents. The members of the XM Shareholder Group are cohesive, well-organized and have already laid a foundation for a litigation strategy, for communicating among themselves and with counsel, and they have already demonstrated their willingness and ability to actively monitor and direct this litigation. *See* XM Shareholders Group Bylaws, and Declaration of Brock Ketcher in Further Support of Motions of the Zarif Group and Adam Barber for Appointment as Lead Plaintiff and in Opposition to All Competing Motions, Ex. B to Supp. Kahn Decl.[5]

It is important to note that contrary to the position taken by the Lerach Group in its Memorandum of Law, "there is no per se rule requiring that an institutional investor be appointed lead plaintiff in lieu of an individual who has a larger stake in the litigation."

---

[5] In fact, the XM Shareholder Group's decision to allow movant Barber to join the group, as well as movant Barber's decision to join the XM Shareholder Group, is evidence in and of itself of the XM Shareholder Group and its member's commitment to the active management and oversight of this litigation.

*See Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 670 (C.D. Cal. 2005)(citing *In re: Cavanaugh*, 306 F.3d 726, 737 (9th Cir. 2002)). *See also In re: Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 821 (N.D. Ohio 1999) ("The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor"); *Steiner v. Aurora Foods, Inc.*, 2000 U.S. Dist. LEXIS 20341, No C 00-602, 2000 WL 33911305, *3 (N.D. CA June 5, 2000) (holding that "the PSLRA does not limit the presumption of most adequate plaintiff to institutional investors. Rather, the statute merely provides that the person or group of persons with the largest financial interest in the relief sought by the class is entitled to the presumption of most adequate plaintiff" (citations omitted)).

Thus, in addition to being afforded the presumption as the most adequate plaintiff as a result of its losses, by virtue of its members' familiarity with the Company and its products and services, and as a result of the XM Shareholder Group's demonstrated commitment to the efficient and effective litigation of this action, the XM Shareholder Group would make an ideal Lead Plaintiff. The XM Shareholder Group will fairly protect the interests of the class, and furthermore, it has no interests that are in conflict with the interests of the class and is not subject to any unique claims or defenses that would otherwise render it incapable or inadequate of representing the class. Accordingly, the XM Shareholder Group should be appointed Lead Plaintiff in this action.

II.  **NO BASIS IN LAW OR FACT SUPPORTS CREATION OF AN "OPTIONS" SUBCLASS OR APPOINTMENT OF A "NICHE" LEAD PLAINTIFF**

The motion by movant Price to be appointed Lead Plaintiff of a purported "options" subclass or "niche" class of investors who purchased call options between July

28, 2005 and February 15, 2006 (the purported "Options Class") must be rejected. This motion was made by a movant with only $13,616.00 in losses as a desperate means of preserving his personal position in the action, regardless of the negative effect this would have on the efficiency of the litigation itself.[6]

Similar requests by other movants competing for appointment as Lead Plaintiff in a securities class action have been routinely rejected by Courts considering the same issue. Remarkably, movant Price cites a case that firmly establishes the general proposition that no options subclass Lead Plaintiff should be appointed in a securities fraud class action. See *In re MicroStrategy Inc Sec. Litig.*, 110 F. Supp. 2d 427, 440 (E.D. Va. 2000) (refusal to appoint Lead Plaintiff for a separate class of persons who traded MicroStrategy options). In rejecting the appointment of a similar options subclass, the *MicroStrategy* Court stated:

> Finally, Paul Schweitzer sought to be named lead plaintiff for a separate "Call Options Class." At the time of the second round, there was no separate class or subclass related to the sale or purchase of options. Moreover, ***the record at that point suggested that the claims of options-holders and stockholders are in most cases sufficiently similar that they should be consolidated "in form and in fact," and thus litigated by the same lead plaintiff and lead counsel.*** See *In re Orbital Sciences Corp. Sec. Litig.*, 188 F.R.D. 237 at 240. In any event, even assuming proper class certification required a separate subclass of options-holders, ***the PSLRA requires a district court to appoint a single lead plaintiff or lead plaintiff group for each class action; there is no provision for multiple lead plaintiffs other than those joined as a group.*** See 15 U.S.C. § 78u-4(a)(3)(B). To the extent a subclass or -classes represented by separate counsel are required for the proper administration of this litigation and representation of the members of the class, that issue may be addressed at a later stage pursuant to Rule 23, Fed. R. Civ. P. [Emphasis added.]

---

[6] The sincerity of this position is further tested when one considers that the purported Options Class is defined to include *only* purchasers of call options. No explanation is provided why this purported class would not also include sellers of put options. The net effect of purchasing call options and selling put options is the same, so, logically, both purchasers of call options *and* sellers of put options, presumably suffered similar losses as a result of the illegal conduct complained of herein.

7

The Court in *Orbital Sciences* also addressed this issue - - similarly rejecting a movant's plea to be appointed Lead Plaintiff of an options subclass and explaining that such an appointment would only serve to complicate the litigation and frustrate the intent of the PSLRA. *In re Orbital Sciences Corp. Sec. Litig.*, 188 F.R.D. 237 (E.D. Va. 1999). The effect on the instant action would be the same and, as the *Orbital Sciences* Court noted:

> *"But unless one firm were selected to serve as Lead Counsel for all of the claimants as a whole, the shareholders' lawyers would properly be heard to complain of interference from the option holders' lawyers and vice versa whenever a tactical decision in one lawsuit affected the posture of the other lawsuit. The Private Securities Litigation Reform Act was designed to avoid these kinds of difficulties by requiring the selection of Lead Counsel*, see Pub. L. No. 104-67, 109 Stat. 737 (1995) (codified in pertinent part at 15 U.S.C. § 78u-4(a)(3)(B)(v)), and the purpose of the statute favors the choice of one law firm to act in this capacity absent a specific reason to use multiple firms, *see In re: Milestone Scientific Sec. Litig.*, 187 F.R.D. 165, 1999 U.S. Dist. LEXIS 6798, 1999 WL 297019, at *5 (D. N.J. 1999). [Emphasis added - *Id.* at 240].

In fact, the majority of Courts that have considered this issue have refused to appoint niche Lead Plaintiffs, arguing that such a practice defeats the PSLRA's goal of "minimizing lawyer-driven litigation." *See, e.g., Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1159 (N.D. Cal. 1999); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002) (refusing to subdivide into multiple "niche" lead plaintiffs based on the type of security purchased because it would "undermine the purpose of the PSLRA"); *Greenberg v. Bear Stearns & Co.*, 80 F. Supp. 2d 65, 70 (E.D.N.Y. 2000) (refusing to appoint subclasses with separate lead plaintiffs because it would "run counter to one of the stated purposes of the PSLRA which is to 'minimize costs; and to give control of the litigation to lead plaintiffs"); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 549 (N.D. Tex.

1997) ("Increasing the number of Lead Plaintiffs would detract from the Reform Act's fundamental goal of client control, as it would inevitably delegate more control and responsibility to the lawyers for the class and make the class representatives more reliant on the lawyers."); *Weinberg v. Atlas Air Worldwide Holdings, Inc.,* 216 F.R.D. 248, 254 (S.D.N.Y. 2003) ("In sum, there is no need to appoint multiple Lead Plaintiffs in order to represent different causes of action when subclasses or separate representatives may be appointed, if necessary, as the litigation proceeds.")

In addition to the foregoing, movant Price's argument that others cannot serve as Lead Plaintiff for the class as a result of having not purchased options is also contrary to case law. Rather, courts have routinely appointed equity investors to represent the interests of other security investors and have consistently held that "[n]othing in the PSLRA indicates that district courts must choose a Lead Plaintiff with standing to sue on every available cause of action." *Autobytel,* 226 F.R.D. at 669.

Moreover, because the PSLRA mandates that Courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, "it is inevitable that, in some cases, the Lead Plaintiff will not have standing to sue on every claim." *Id., quoting, Hevesi v. Citigroup, Inc.,* 366 F.3d 70, 82 (2d Cir. 2004). In addition, because other plaintiffs could always be named later if necessary, the *Autobytel* Court found no reason to conclude that a Lead Plaintiff have personal standing to bring every possible claim in an action, and also found no reason to appoint Lead Plaintiffs for a subclass.[7]

---

[7] The Court in *In re Oxford Health Plans Inc Sec. Litig.,* 182 F.R.D. 42, 51 (S.D.N.Y. 1998) also rejected a motion to create an options subclass during the Lead Plaintiff selection process, stating:

> At the June 11th hearing attorney Howard Longman from the law firm of Stull, Stull & Brody made a motion for the Court to appoint plaintiff Al Tawil as lead plaintiff of a sub-

9

In fact, when subclasses or niche plaintiffs are created, it is almost always when a movant has established, by proof, that a conflict of interest exists that prevents the presumptively adequate Lead Plaintiff from serving on behalf of the entire class. Thus, "while a conflict of interest is an adequate reason to appoint niche Lead Plaintiffs, the court may not rely on speculations about possible future conflicts." *Aronson*, 79 F. Supp. 2d at 1151 (Rejecting options subclass in part, because, speculations about possible conflicts do not rebut the statutory presumption a lead plaintiff can vigorously pursue all available causes of action against all possible solvent defendants under all available legal theories).

In the instant action, movant Price has alleged no specific conflict of interest, and his vague and speculative statements regarding an unspecified "irreconcilable conflict" that "may exist" are woefully insufficient to rebut the presumption in favor of appointing a unified representative party. In fact, movant Price's only apparent argument, that he has a purported "different interest" in this litigation because he does not continue to hold equity in the Company is true of virtually every member of the class that purchased shares of XMSR during the class period, sustained a loss and no longer continues to hold the stock. *See* Memorandum of Ron Price in Support of Motion for Appointment as Lead Plaintiff at 7.

The cases cited by movant Price are also vague and inapposite, and do little to support his ultimate position. In *In re: Cable & Wireless PLC Sec. Litig*, 217 F.R.D. 372

---

class of investors who lost money on options to buy and sell Oxford stock during the alleged class period. Counsel for Oxford and counsel representing other plaintiffs who lost money on options stated their belief *that it would be premature for the Court to delineate a separate options sub-class at this stage. This Court agrees. The issue of a potential options sub-class will be deferred until pre-trial discovery has delineated the issues to be tried.* Any objections to the formation of such a sub-class will be heard at that time. [Emphasis added.]

(E.D. Va. 2003), one of the few securities class action cases cited by movant Price, the Court was faced with a predominately foreign defendant whose common shares traded only in England and whose ADRs traded in the United States. In appointing co-Lead Plaintiffs, that Court selected one Lead Plaintiff that purchased ADRs in the United States, and a second Lead Plaintiff that was a foreign institution that had purchased shares of common stock on the London exchange. This was a fact-specific ruling, and it offers little or no support for movant Price's position.[8]

For all of the foregoing reasons, no options subclass or niche plaintiff should be appointed here. Such an appointment would only serve to diminish the efficiency of litigating this action and would result in waste and uncertainty. Movant Price has offered no proof that demonstrates any conflict of interest between the XM Shareholder Group and options holders, and the XM Shareholder Group intends to pursue all available claims, on behalf of all interested parties against all solvent and available defendants.

### III. PERMISSIBLE NATURE OF THE XM SHAREHOLDER GROUP

The joinder of movant Barber with the Zarif Group to form the XM Shareholder Group provides this group with the largest financial interest in the relief sought by the class and, therefore, has the effect of rendering the XM Shareholder Group as the presumptively most adequate Lead Plaintiff. Moreover, nothing in the PSLRA prevents the combination of movant Barber with the Zarif Group. Furthermore, the joinder of movant Barber with the Zarif Group does not render it inadequate, atypical or subject to unique claims or defenses.

---

[8] Other cases cited by movant Price, such as *General Tel Co of Southwest v. Falcon*, 457 U.S. 147, 156 (1982), quoting *East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395 (1977), are not PSLRA-related actions and the cites provided thereto are neither apposite nor insightful. Thus, they do not support movant Price's position regarding the creation of an options subclass.

As described herein, joinder of the Zarif Group and movant Barber was discussed and approved by the movants themselves. Also, as described *infra*, the creation of the XM Shareholder Group was prompted by legitimate concerns regarding the ability of the Lerach Group to effectively monitor and control this litigation. To the extent that the Lerach Group takes issue with the timing of this formation, it is hardly appropriate for it to complain about the formation of the XM Shareholder Group given that this is exactly the same type of combined group that the Lerach Group's counsel has formerly proffered under similar circumstances.

This District long ago realized that "[w]hile Congress provided flexibility for a 'group of persons' to be lead plaintiff, 'the most important open question under the lead plaintiff section of the PSLRA is whether unrelated individuals or institutions may aggregate their shares in order to be deemed the most 'adequate plaintiff.'" *In re the Baan Company Sec. Litig.*, 186 F.R.D. 214, 216 (D.D.C. 1999) *quoting*, John C. Coffee Jr., *Developments Under the Private Securities Litigation Reform Act of 1995: The Impact After Two Years*, SC53 ALI-ABA 395, 423, (1997).

The Court in this District, and others following its guidance, have generally allowed such aggregation and have held that, "[t]he text of the PSLRA does not limit the composition of a 'group of persons' to those only with a pre-litigation relationship, nor does the legislative history provide a sound enough foundation to support such a gloss. *In re Baan* 186 F.R.D. at 216. *See also In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 434-35 (E.D. Va. 2000); *In re Network Associates, Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1024-25 (N.D. Cal. 1999); *Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398, 408-09 (D. Minn. 1998); *In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346, 352

(S.D. Cal. 1998); *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 417 (D.N.J. 1998).

In addition to the foregoing, the *Baan* Court specifically recognized the legitimacy of groups or plaintiffs reconfiguring their positions and stated, in footnote 1 of that opinion, ***"[i]t sometimes occurs that groups which start out in adverse positions form alliances*** leaving it to the Court to divine the arguments adverse to the alliance and to weigh the relative merit of those arguments." Here, since opposition presumably still exists, the Court may be somewhat relieved of this analytical burden; yet, the underlying proposition, favoring combinations of Lead Plaintiffs and Lead Plaintiff groups following the filing of initial motions, is sound.

The *Baan* Court Opinion, and the Memorandum of the Securities and Exchange Commission ("SEC"), filed *amicus curiae* therein, both instruct that a group of movants seeking to serve as Lead Plaintiff, who have no pre-litigation relationship, should not exceed five (SEC's recommended limit) or six (the *Baan* Court's recommended limit). In any event, both the SEC and the Baan Court also instruct that the Court should only approve a group that can establish that it is capable of effectively managing the litigation and its counsel. *In re Baan*, 186 F.R.D. at 218. In this instance, the five member XM Shareholder Group, with its demonstrated cohesive organization, is capable of such oversight and management.

Thus, while the *Baan* Court placed almost no restrictions upon the formation of groups of proposed Lead Plaintiffs, it did state that the appointment of Lead Plaintiffs should be made under a rule of reason. *Id.* Courts that have adopted this approach

generally adopt an "all relevant factors" analysis to determine if the group is permitted to serve as Lead Plaintiff in an action. Accordingly, as the Court in *MicroStrategy* stated:

> Under this approach, a court may consider all relevant factors, such as "descriptions of [the group's] members, including any pre-existing relationships among them; an explanation of how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation." ... This approach, which relies on no single factor, allows a district court maximum flexibility to select a lead plaintiff who will best represent the interests of the class and exercise control of the litigation.

*In re Microstrategy*, 110 F. Supp. 2d at 434-435, quoting *In re Network Associates Inc. Sec. Litig.*, 76 F. Supp 2d 1017, 1026 (N.D. Cal. 1999) (quoting Amicus Brief of the SEC filed in *Parnes, et al v. Digital Lightwave, Inc.*, No 99-11293 (11th Cir. Aug 25, 1999)).

In addition to the foregoing general propositions that favor the appointment of small, cohesive groups such as the XM Shareholder Group as Lead Plaintiff under the PSLRA, other Courts that have considered the issue as to whether groups of plaintiffs can be allowed to unite during the pendency of the Lead Plaintiff process have also generally allowed such combinations, provided mainly that such actions were ***not*** merely an "artifice" and were not primarily "lawyer driven." *See In re: Able Laboratories Sec Litig.*, 425 F. Supp. 2d 562 (D.N.J. 2006) (allowing movants, each of whom filed a motion and certification for appointment as Lead Plaintiff within the 60 day time limit, to form a group, provided only that such group was not formed by counsel in order to satisfy the largest financial loss requirement), citing *Cendant*, 264 F3d at 266.

Here, the joinder of the Zarif Group with movant Barber is not an artifice, and the motivation for joinder is not solely to trump the losses of another movant. While the effect of this combination clearly results in the XM Shareholder Group being the movant

14

with the largest financial interest in the relief sought by the class, the purpose of this joinder was to ensure that the interests of the class were adequately and properly protected.

Furthermore, as stated above, the XM Shareholder Group was formed only after the matter was discussed by movants themselves and they agreed to the formation of the XM Shareholder Group. Their initial contact with each other was prompted, in part, by concern over the lack of information available on the backgrounds or qualifications of the Lerach Group and the fact that individual members of the XM Shareholder Group likely had losses significantly greater then individual participants in the Lerach Group funds. Moreover, there is no evidence that the Lerach Group has any meaningful litigation plan or organizational structure, or any type of mechanism in place for resolving issues upon which each potential member of that group may disagree. Furthermore, as the Lerach Group and its counsel are well aware, Courts routinely approve joint Lead Plaintiff petitions by applicants who initially made separate timely motions and, as here, have a valid basis to join together.

In fact, under similar circumstances, counsel for the Lerach Group has previously argued that it is perfectly appropriate for courts to appoint a Lead Plaintiff group formed *after* each movant in the group had initially filed independent Lead Plaintiff motions within the 60-days prescribed by the PSLRA.[9] In *In re Activision, Inc. Sec. Litig.*, Case

---

[9] In prior motions, counsel for the Lerach Group has quoted the following cases to support the proposition that the combination of diverse Lead Plaintiff movants is permissible under the facts and circumstances found here, including, *Montoya v. Mamma.com Inc.*, No 05 Civ 2313 (HB), 2005 U.S. Dist. LEXIS 10224 (S.D. N.Y. May 31, 2005)(appointing as Lead Plaintiff a group of investors that initially filed independent motions even when neither of these movants initially had the largest financial interest in the relief sought); *Malasky v. IAC/Interactive Corp.*, CIV No. 04-7447, 2004 U.S. Dist. LEXIS 25832 (S.D.N.Y. Dec. 21, 2004)(court appointed Lead Plaintiff structure consisting of parties who initially filed independent motions in order to address adequacy concerns); *see also, In re R&G Fin Corp. Sec. Litig.*, No. 05-cv-04186-JES (S.D.N.Y. July 26, 2005), slip opinion attached hereto as Ex. B.

No. CV-04-01501-PA (C.D. Cal. July 24, 2004), slip opinion attached hereto as Ex. A, counsel for the Lerach Group prepared a stipulation seeking appointment of a Lead Plaintiff group *after* each member of that group had previously sought individual appointment as Lead Plaintiff in that action.

The stipulation approved by the *Activision* Court, and entered by counsel for the Lerach Group, noted that both movants in that group filed their initial applications within the prescribed time limit and had joined together because they had "substantially similar interests," and they had concluded that "it would be more efficient and more beneficial to the class to propose a consensual resolution than to proceed with competing lead plaintiff motions." *Id* at 1-2.

Similarly, in *Hill v. Tribune Co., et al.*, Case. No. 05 C 2602 (N.D. Ill. October 13, 2005), slip opinion attached hereto as Ex. C, counsel for the Lerach Group sought joint appointment of two movants that had previously filed independent motions for appointment as Lead Plaintiff. While the *Tribune* Court ultimately denied that motion, it was on the grounds that one of the two movants proffered was not an appropriate Lead Plaintiff. At no time did the *Tribune* Court question the propriety of the combined motion itself, and it is clear from this and the other cases cited above that it is perfectly appropriate for this Court to approve the joinder of the Zarif Group and movant Barber and to appoint the XM Shareholder Group as Lead Plaintiff.

Each member of the XM Shareholder Group has satisfied the statutory requirements of filing a Lead Plaintiff motion within 60 days of the issuance of notice of the first-filed complaint. Each member of the group also shares common interests that the case is prosecuted by parties that are fully accountable, cohesive, organized and well-

suited to oversee this action.

The actions taken by the members of the XM Shareholder Group, documented by its bylaws, minutes and representations regarding its structure and formation, demonstrate the cohesive structure of this group and the active nature of its participants. These actions also demonstrate that the XM Shareholder Group has been formed in a manner that is in accordance with the PSLRA. In joining forces, the members of the XM Shareholder Group have taken action to exert their personal influence over this litigation, thereby furthering the intent of the PSLRA - - which is to empower investors in litigating securities fraud class actions. In other words, it is evident that the XM Shareholder Group represents a cohesive organization of movants, that have taken well-considered and calculated actions, each designed to assure that the interests of the class are protected and also designed to control and monitor this litigation.

IV. **THE LERACH GROUP IS INADEQUATE, ATYPICAL AND SUBJECT TO UNIQUE CLAIMS AND DEFENSES**

In addition to little or no disclosure regarding the members of the Lerach Group, and their abilities to monitor this action or control this litigation, there is also little or no indication as to why these entities moved to serve as Lead Plaintiff in this action and what relationship each movant has to the other or to their counsel. In fact, all that is known about Boca Raton and Plumbers Local 267 is that they suffered losses as a result of trading XMSR stock and they have selected the same counsel to represent them.

V. **THE XM SHAREHOLDER GROUP HAS SELECTED EXPERIENCED COUNSEL THAT MAINTAINS THE SKILLS, EXPERTISE AND RESOURCES NECESSARY TO SUCCESSFULLY PROSECUTE THIS LITIGATION**

The XM Shareholder Group is the most adequate plaintiff and should be selected to serve as Lead Plaintiff in this action. Accordingly, the XM Shareholder Group's selection of the law firms of Yourman Alexander & Parekh LLP ("YA&P") and Kahn Gauthier Swick, LLC, ("KGS") to be appointed Lead Counsel herein, should be ratified by this Court.

The YA&P and KGS each have the skills, abilities and resources to effectively prosecute this action to a successful conclusion. Attorneys at the these firms have many years of securities litigation experience collectively and individually, and the attorneys working on this action are highly skilled in the prosecution of securities fraud and negligence claims. *See* Ex. C to Supp. Kahn Decl. In addition to the highest quality legal talent, the combination of YA&P and KGS will also allow for the contribution of all necessary support staff of paralegals, investigators, secretaries and other professionals to vigorously pursue this matter. In addition, proposed liaison counsel, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., has extensive experience in litigating securities class actions (having successfully litigated dozens of such actions), and has ably served as liaison counsel in several actions in this Court.

VI.   **CONCLUSION**

For the foregoing reasons, the XM Shareholder Group has demonstrated that it is the "most adequate" plaintiff who "otherwise satisfies the requirements of Rule 23." *See* 15 U.S.C. §78u-4(a)(3)(B)(i) and 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Moreover, competing movants cannot rebut the presumption that the XM Shareholder Group is the most adequate Lead Plaintiff who will vigorously prosecute this action to protect the

interest of the class. Accordingly, this Court should appoint the XM Shareholder Group as Lead Plaintiff and approve their selection of YA&P and KGS as Co-Lead Counsel.

Dated: July 17, 2006

Respectfully submitted,

/s/ Daniel S. Sommers
Steven J. Toll (DC Bar No. 225623)
Daniel S. Sommers (DC Bar No. 416549)
**COHEN, MILSTEIN, HAUSFELD & TOLL, PLLC**
1100 New York Avenue, NW
West Tower, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

*Proposed Liaison Counsel for the XM Shareholder Group and the Class*

Michael A. Swick
(New York Bar No. MS-9970)
Lewis Kahn (Louisiana Bar No. 23805)
**KAHN GAUTHIER SWICK, LLC**
650 Poydras St., Suite 2150
New Orleans, Louisiana 70130
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

Vahn Alexander
Janine Sperandeo
**YOURMAN ALEXANDER & PAREKH LLP**
3601 Aviation Blvd, Suite 3000
Manhattan Beach, CA 90266
Telephone: (310) 725-6400
Facsimile: (310) 725-6420

*Proposed Co-Lead Counsel for the XM Shareholder Group and the Class*

Stuart J. Guber (Georgia Bar No. 141879)
James M. Evengelista
(New York Bar No. JE 1246)
**MOTLEY RICE LLC**
One Georgia Center
600 West Peachtree Street – Suite 800
Atlanta, GA 30308
Telephone: (404) 201-6900
Facsimile: (404) 201-6959

Jonathan W. Cuneo (D.C. Bar No 939389)
**CUNEO, GILBERT & LADUCA, LLP**
507 C Street NW
Washington D.C. 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813

**Additional Counsel
For Plaintiff and the Class**