# Exhibit B

# XM Shareholder Group Bylaws

**SECTION 1: Name**

1.01    The name of the organization is the XM Shareholder Group.

**SECTION 2: Offices**

2.01    The principal office of the organization shall be located at the offices of the President.

**SECTION 3: Purposes**

3.01    This organization is established exclusively for the purposes of:

a.  To represent the interests of shareholders who purchased XM common stock who are eligible to participate in the XM securities fraud class action pending in D.C. federal court.

b.  To ensure that the members have access to up-to-date and accurate information regarding the ongoing securities fraud class action litigation;

c.  To foster the communication among XM Shareholder Group members concerning the progress of the litigation;

d.  To take any and all measures to ensure that the interests of the XM Shareholder Group members and XM class members are represented and that any available recovery for losses related to XM securities fraud are made available and distributed to class members.

e.  Securing a Lead Plaintiff appointment in the securities litigation currently pending in the United States District Court;

3.02    This organization shall not engage in any activities that are not in the furtherance of the purposes stated in this section.

**SECTION 4: Members**

4.01    There shall be one class of membership in this organization. Any person that meets the criteria of 3.01 shall be eligible for membership upon affixing his/her signature to the organization's bylaws.

4.02    The membership of any member shall terminate upon the occurrence of any of the following events:

a.  The resignation of the member;

b.  The determination by a majority of members that the member has failed in a material and serious degree to observe the rules of

conduct governing organization membership.

    c.    The resolution of the underlying securities fraud class action against XM.

## SECTION 5: Meetings of Members

5.01    Meetings of the membership shall occur within one hundred and eighty day intervals from the last meeting, and may be held at any place designated by the board of directors.

5.02    Special meetings may be called by any member of the board of directors at any time, with at least a twenty four hour notice.

5.03    Fifty percent of the membership shall constitute a quorum for the transaction of business at a meeting of the members. For any action to be taken, a minimum of seventy five percent of members present must concur.

## SECTION 6: Directors

6.01    The business and affairs of this organization shall be conducted, and all the powers shall be exercised, by or under the direction of a board of directors.

6.02    The Directors shall have the power to:

    a.  Select and remove all officers of the organization; prescribe any powers and duties for them that are consistent with these bylaws;

    b.  Designate an officer to liaison with counsel, speak for the organization, maintain communication among members of the organization through the maintenance of a member e-mail list, and maintain minutes and the like.

    c.  Designate and retain outside counsel to represent the XM Shareholder Group to represent it in the action now currently pending against XM. The retention of outside counsel does not, however, result in any member hereof to be financially responsible for costs or fees associated with the litigation of any action, and allows for any legal representation of the XM Shareholder Group, provided that such representation is provided on a contingency fee basis.

## SECTION 7: Officers

7.01    The board of directors shall consist of the following officers: President and Secretary. Any number of offices may be held by the same person. The officers of the organization, except those appointed in accordance with the provisions of Section 7.02 of these bylaws, shall be elected by the general membership by majority vote, prior to July 17, 2006.

7.02    The board of directors may appoint, and may authorize the President to appoint any other officers that the business of the organization may require.

7.03    Any officer may be removed, with cause, by the board of directors, at any regular or special meeting of the board.

7.04    Any officer may resign at any time by giving written notice to the board of directors.

7.05    A vacancy in any office shall be filled by a majority vote of the members.

7.06    The President shall:

    a.   Chair all Group meetings, and in the event of a vote deadlock shall cast the tie-breaking vote.

    b.   Generally supervise, direct and control the business and officers of the organization, and shall have such other powers and duties as shall be prescribed by the board of directors or the bylaws.

7.07    The Secretary shall:

    a.   Maintain a record of the proceedings of each meeting of the Group and of the board of directors.

## SECTION 8:  Records

8.01    The bylaws and minutes or proceedings of the board of directors shall be kept at such place or places designated by the board of directors. The minutes shall be kept in written or typed form.

## SECTION 9:  Effective Date

9.01    These bylaws shall take effect as of July, 2006.

President & Secretary         Member         Member

Member         Member

7.02    The board of directors may appoint, and may authorize the President to appoint any other officers that the business of the organization may require.

7.03    Any officer may be removed, with cause, by the board of directors, at any regular or special meeting of the board.

7.04    Any officer may resign at any time by giving written notice to the board of directors.

7.05    A vacancy in any office shall be filled by a majority vote of the members.

7.06    The President shall:

    a.    Chair all Group meetings, and in the event of a vote deadlock shall cast the tie-breaking vote.

    b.    Generally supervise, direct and control the business and officers of the organization, and shall have such other powers and duties as shall be prescribed by the board of directors or the bylaws.

7.07    The Secretary shall:

    a.    Maintain a record of the proceedings of each meeting of the Group and of the board of directors.

## SECTION 8: Records

8.01    The bylaws and minutes or proceedings of the board of directors shall be kept at such place or places designated by the board of directors. The minutes shall be kept in written or typed form.

## SECTION 9: Effective Date

9.01    These bylaws shall take effect as of July, 2006.

_____          _____

President & Secretary                Member                  Member

_____          _____

Member                          Member      Corey Spann

07/17/2006  15:15    4075214492                SUNKISSED                              PAGE  01

JUL-17-2006  12:18      Yourman Alexander Parekh                    3167256420    P.04

The officers of the organization, except those appointed in accordance with the provisions of Section 7.02 of these bylaws, shall be elected by the general membership by majority vote, prior to July 17, 2006.

7.02    The board of directors may appoint, and may authorize the President to appoint any other officers that the business of the organization may require.

7.03    Any officer may be removed, with cause, by the board of directors, at any regular or special meeting of the board.

7.04    Any officer may resign at any time by giving written notice to the board of directors.

7.05    A vacancy in any office shall be filled by a majority vote of the members.

7.06    The President shall:

    a        Chair all Group meetings, and in the event of a vote deadlock shall cast the tie-breaking vote.

    b.       Generally supervise, direct and control the business and officers of the organization, and shall have such other powers and duties as shall be prescribed by the board of directors or the bylaws.

7.07    The Secretary shall:

    a.       Maintain a record of the proceedings of each meeting of the Group and of the board of directors

## SECTION 8:  Records

8.01    The bylaws and minutes or proceedings of the board of directors shall be kept at such place or places designated by the board of directors.  The minutes shall be kept in written or typed form

## SECTION 9:  Effective Date

9.01    These bylaws shall take effect as of July, 2006.

| President & Secretary | Member | Member |
|---|---|---|
| Member | Member | |

3

07/17/2006 09:27 FAX 248 435 6538    GAC-VIC    ⌀003

The officers of the organization, except those appointed in accordance with the provisions of Section 7.02 of these bylaws, shall be elected by the general membership by majority vote, prior to July 17, 2006.

7.02    The board of directors may appoint, and may authorize the President to appoint any other officers that the business of the organization may require.

7.03    Any officer may be removed, with cause, by the board of directors, at any regular or special meeting of the board.

7.04    Any officer may resign at any time by giving written notice to the board of directors.

7.05    A vacancy in any office shall be filled by a majority vote of the members.

7.06    The President shall:

  a.    Chair all Group meetings, and in the event of a vote deadlock shall cast the tie-breaking vote.

  b.    Generally supervise, direct and control the business and officers of the organization, and shall have such other powers and duties as shall be prescribed by the board of directors or the bylaws.

7.07    The Secretary shall:

  a.    Maintain a record of the proceedings of each meeting of the Group and of the board of directors.

## SECTION 8: Records

8.01    The bylaws and minutes or proceedings of the board of directors shall be kept at such place or places designated by the board of directors. The minutes shall be kept in written or typed form.

## SECTION 9: Effective Date

9.01    These bylaws shall take effect as of July, 2006.

_____        _____        _____
President & Secretary                    Member                                    Member

_____        _____
Member                                    Member

3

The officers of the organization, except those appointed in accordance with the provisions of Section 7.02 of these bylaws, shall be elected by the general membership by majority vote, prior to July 17, 2006.

7.02    The board of directors may appoint, and may authorize the President to appoint any other officers that the business of the organization may require.

7.03    Any officer may be removed, with cause, by the board of directors, at any regular or special meeting of the board.

7.04    Any officer may resign at any time by giving written notice to the board of directors.

7.05    A vacancy in any office shall be filled by a majority vote of the members.

7.06    The President shall:

   a.    Chair all Group meetings, and in the event of a vote deadlock shall cast the tie-breaking vote.

   b.    Generally supervise, direct and control the business and officers of the organization, and shall have such other powers and duties as shall be prescribed by the board of directors or the bylaws.

7.07    The Secretary shall:

   a.    Maintain a record of the proceedings of each meeting of the Group and of the board of directors.

**SECTION 8:  Records**

8.01    The bylaws and minutes or proceedings of the board of directors shall be kept at such place or places designated by the board of directors.  The minutes shall be kept in written or typed form.

**SECTION 9:  Effective Date**

9.01    These bylaws shall take effect as of July, 2006.



_____        _____        _____
President & Secretary               Member                               Member

                                                                                            AVI ZARIF

_____        _____
Member                               Member

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE XM SATELLITE RADIO HOLDINGS SECURITIES LITIGATION | **DECLARATION OF BROCK KETCHER IN FURTHER SUPPORT OF MOTIONS OF THE ZARIF GROUP AND ADAM BARBER FOR APPOINTMENT AS LEAD PLAINTIFF AND IN OPPOSITION TO ALL COMPETING MOTIONS** |
| This Document relates to: All Actions | Master File No.: 06-0802 (ESH) |

Brock Ketcher, pursuant to 28 U.S.C. § 1746, declares as follows:

1.    I am a member of the Zarif Group that has moved to be appointed as Lead Plaintiff in this matter.

2.    I have been elected President and Secretary of the XM Shareholders Group by the members of the Zarif Group and Adam Barber, and have the authority to speak on its behalf.

3.    This group of XM Satellite Radio Holdings shareholders has joined because they have concerns regarding the ability of the Lerach Group movants to effectively monitor and control this litigation in order to achieve the best results possible for the class.

4.    The XM Shareholders Group has created group bylaws that each member has signed to foster the effective management and coordination of this litigation on behalf of the class.   The group's bylaws include provisions for holding meetings, voting on

1

significant litigation issues, communicating amongst group members, and otherwise liaisoning with selected counsel to oversee and monitor the litigation.

     5.     On behalf of the XM Shareholders Group, I understand my responsibilities should the XM Shareholders Group be appointed as Lead Plaintiff in this matter, including a fiduciary obligation to the class, an obligation to oversee choice of lead counsel, the responsibility to stay abreast of the litigation and effectively communicate with counsel, and the ultimate goal of assuring maximum recovery for the class. I have extensive experience running my own business and will effectively oversee counsel. I manage and own a portfolio of diverse housing, including student housing, trailer parks, and campgrounds. I recognize that I will be acting in a representative capacity on behalf of a class of other similarly situated investors, and I intend to assure that this case is prosecuted efficiently, fairly, and successfully. The XM Shareholders Group has selected Kahn Gauthier Swick, LLC and Yourman Alexander & Parekh, LLP to prosecute this matter on behalf of the shareholders and the class should it be appointed Lead Plaintiff in this matter.

     6.     The XM Shareholders Group has discussed with its choice of lead counsel the manner in which it will be compensated in this matter and will assure that counsel's fee request is reasonable when presented to the Court. I will assure that any fees awarded are in proportion to the results achieved for the class.

     7.     Each member of the XM Shareholders Group intends to work closely with lead counsel to zealously pursue this action and obtain a significant recovery. On behalf of the group, I will consult with counsel with respect to each major litigation event, including motions, hearings and trial, if necessary. Based on counsel's advice, I will

direct counsel pursuant to its fiduciary obligation to the class and the PSLRA.  To the

extent necessary, a representative of the XM shareholders Group will attend hearings and

trial.

I declare, under penalty of perjury, that the foregoing is true and correct to the

best of my knowledge.

Executed this 17th day of July, 2006.

Brock Ketcher
President & Secretary
XM Shareholders Group

3

# Exhibit C

## KAHN GAUTHIER SWICK, LLC

Kahn Gauthier Swick, LLC ("KGS") is a Louisiana law firm with offices in New Orleans, Louisiana (www.kglg.com).    KGS focuses predominantly on class action litigation, and practices mainly in the fields of securities fraud, consumer fraud, mass tort litigation and securities transaction.    Since its inception KGS has recovered tens of millions of dollars for the plaintiffs it represents.    KGS was formed in 2000, as a partnership between established class action attorneys led by Wendell Gauthier.    Mr. Gauthier was an esteemed member of the Louisiana Bar prior to his passing in December, 2001 at the age of 58.    Mr. Gauthier was best known as Chairman of the Castano Tobacco Litigation Group, a coalition of national plaintiff firms that was the catalyst for the nationwide tobacco settlements of $206 billion.

KGS is uniquely positioned to represent plaintiffs in complex class action litigation.    Lewis Kahn serves as the managing partner of KGS.    Along with the representation of thousands of plaintiffs in class action and mass tort cases filed throughout the United States, Mr. Kahn has been appointed to various leadership positions in federal class action litigation.    Among other prestigious appointments, Mr. Kahn served as a member of the Plaintiffs' Steering Committee in MDL 1481, *In Re: Meridia Products Liability Litigation*, appointed by Judge James S. Gwin in the United States District Court for the Northern District of Ohio, Eastern District.    Mr. Kahn was also appointed Liaison Counsel in the national securities fraud litigation against Merck, Inc. for its failure to disclose the safety profile of Vioxx to its shareholders, *In Re Merck, Inc., Securities Litigation,* Case No. 03-3125 (E.D. La) by Judge Kurt Englehart.    This

case was transferred to Judge Stanley Chesler and is currently part of MDL 1658, *In Re Merk & Co., Inc. Securities, Derivative and "ERISA" Litigation.*

Moreover, Mr. Kahn also served as one of five plaintiffs' counsel that secured a $20.5 million securities fraud settlement in *Lasky v. Brown, et al.* (United Companies Securities Litigation), Case No. 99-1035-D-M2 (M.D. La.). Mr. Kahn has also been appointed and served as Liaison Counsel in the following federal securities fraud cases:

1.    *In Re Stewart Enterprises, Inc., Securities Litigation,* Case No. 99-2572 (E.D. La.);

2.    *In Re McDermott, Inc. Securities Litigation,* Case No. 99-3831 (E.D. La.);

3.    *In Re Orthodontic Care Associates, Securities Litigation,* Case No. 03-1027 (E.D. La).

Mr. Kahn is often turned to by the media for expert commentary in the field of class action litigation. Mr. Kahn has been profiled in the *New York Times, Washington Post, Boston Globe,* and many other media outlets, and has provided expert commentary on CNNfn surrounding the Enron securities fraud class action litigation. Mr. Kahn holds a Bachelor's degree from New York University and received a Juris Doctor from Tulane Law School in 1994. He is a member in good standing of the Louisiana State Bar Association since 1995, the American Association of Trial Lawyers, and the Federal Bars for the Eastern, Middle and Western Districts of Louisiana.

Michael Swick heads KGS's Securities Litigation Group. Prior to joining KGS, Mr. Swick worked at several of the nation's leading securities class action law firms, including: both the East Coast and West Coast offices of Milberg Weiss Bershad Hynes

& Lerach, LLP (now Lerach Coughlin Stoia Rudman Gellar & Robbins, LLP - CA, and

Milberg Weiss Bershad & Schulman LLP - NYC), and the Connecticut firm of Scott +

Scott, LLP.

Over the past decade of securities class action litigation, Mr. Swick has been

instrumental in instituting litigation that has produced hundreds of millions of dollars of

recoveries. Such actions include:

**$140 Million Recovery.** In re Sunbeam Securities Litigation: No. 98-8258 (S.D. Fla). Michael Swick drafted one of the first filed actions against Sunbeam, where plaintiffs alleged that Sunbeam, its auditor, and its management engaged in a massive accounting fraud, culminating in the restatement of over three years of previously reported financial results. The Court approved a combined settlement of over $140 million - - including $110 million paid by Arthur Andersen, LLP, then Sunbeam's auditor. In connection with this settlement, Albert Dunlap, Sunbeam's former Chairman and CEO, personally contributed $15 million.

**$134 Million Recovery.** In In re Computer Associates Securities Litigation, Nos. 98-CV-4839, 02-CV-1226 (TCP) (E.D.N.Y.), Michael Swick drafted and participated in the filing of one of the earliest and most comprehensive actions. This filing later resulted in a pretrial settlement of securities fraud charges valued at over $134 million.

**$300 Million Recovery.** In re Oxford Health Plans, Inc. Securities Litigation, MDL Dkt. No. 1222 (CLB) (S.D.N.Y.). Cash settlements totaling $300 million were recovered for plaintiffs after it was determined that Oxford Health Plans, Inc. issued fraudulent financial statements that misstated premium revenues and claims expense. Oxford's outside auditor, KPMG, was also named as a defendant in that action.

**$600 Million Recovery.** In re Lucent Technologies, Inc. Securities Litigation, No. 00cv621 (AJL) (D.N.J.). This settlement provided $600 million in compensation to aggrieved shareholders who purchased Lucent stock between Oct. 1999 and Dec. 2000.

Mr. Swick received a Juris Doctor from Tulane Law School in 1994. Further, Mr.

Swick received a Masters of Political Philosophy from Columbia University in 1989 and

a B.A. in Philosophy and Political Science from State University of New York at Albany in 1988. Mr. Swick was admitted to the state Bar of New York in 1996.

Kevin Oufnac is a partner at KGS who practices in the firm's class action section. Mr. Oufnac has litigated cases throughout the United States with both Ness, Motley, Loadholt, Richardson & Poole, PC and its successor firm Motley Rice, LLC in high value individual cases, mass torts, class actions, MDL's and various other complex cases. Mr. Oufnac has been licensed to practice law in Louisiana since 1995 and in South Carolina since 1997. Further, Mr. Oufnac is admitted to the United States Court of Appeals for the Fourth Circuit, and the United States District Courts for the Eastern District of Louisiana, the Eastern District of Michigan, and the District of South Carolina.

In addition to its partners, KGS employs three associate lawyers, along with multiple paralegals and investigators, providing the firm the resources necessary to litigation complex litigation. Moreover, KGS' foremost characteristic has been the ability to work cooperatively with the Court and with other attorneys as evidenced by its successful track record.

# YOURMAN ALEXANDER & PAREKH LLP

3601 AVIATION BOULEVARD
SUITE 3000
MANHATTAN BEACH, CALIFORNIA 90266
TEL: (310) 725-6400
FAX: (310) 725-6420

## FIRM BIOGRAPHY

The law firm of Yourman Alexander & Parekh LLP is located in Manhattan Beach, California. In Courts throughout the United States, attorneys with the firm have litigated hundreds of stockholder class actions brought for violations of federal and state securities laws, as well as shareholder class and derivative actions brought for violations of corporate and fiduciary duties. Attorneys with the firm have also litigated several class actions in the area of consumer fraud and unfair business practices.

Several Courts have also commended attorneys with the firm for their expertise and ability in litigating complex class actions as follows:

In *In re United Telecommunications, Inc. Securities Litigation*, Case No. 90-2251-0 (D. Kan.), Judge O'Conner stated "the court finds that plaintiffs' counsel were experienced and qualified attorneys with outstanding professional reputations in securities litigation who ably and zealously prosecuted the instant case on behalf of the class."

In *In re VeriFone Inc. Securities Litigation*, Case No. C-93-3640 DCJ (N.D. Cal.), Judge Jensen stated "I think the case was handled extremely well, extremely professionally, so I think you've done very well."

In *In re Western Digital Securities Litigation*, Case No. SACV 91-375(A) GLT (RWRx) (C.D. Cal.), Judge Taylor complimented plaintiffs' attorneys' work in the action, specifically noting "the caliber of the work involved [and] the quality of the attorneys involved."

## CASES IN WHICH ATTORNEYS WITH YOURMAN ALEXANDER & PAREKH LLP WERE LEAD OR CO-LEAD COUNSEL

*Jordan v. California Department of Motor Vehicles* (Sacramento Cal.): The California Court of Appeal, Third Appellate District, held that the State of California's $300 smog impact fee was unconstitutional, paving the way for the creation of a $665 million fund and full refunds to 1.7 million motorists.

*In re Community Psychiatric Center Securities Litigation* (C.D. Cal.): A settlement of $42.5 million was obtained for the class.

*In re Apria Healthcare Group Securities Litigation* (Orange County Cal.): A settlement of $42 million for the class was approved in August 2002 by the California Superior Court.

*In re Platinum Software Securities Litigation* (C.D. Cal.): A settlement of $32 million was obtained for the class.

*In re United Telecommunications Securities Litigation* (D. Kan.): A settlement of $28 million was obtained for the class.

*In re Bergen Brunswig Corp. Sec. Litig.*, (C.D. Cal.): A settlement of $27.9 million was obtained for the class.

*In re Abbey Healthcare Securities Litigation* (C.D. Cal.): A settlement of $20.5 million was obtained for the class.

*In re Aura Systems, Inc. Securities Litigation* (C.D. Cal.): A settlement of $18 million was obtained for the class.

*In re MK Rail Securities Litigation* (D. Idaho): A settlement of $14.65 million was obtained for the class.

*In re California Microwave Securities Litigation* (N.D. Cal.): A settlement of $14 million was obtained for the class.

*In re Megafoods Securities Litigation* (D. Ariz.): A settlement of $12 million was obtained for the class.

*In re Mesa Airlines Securities Litigation* (D.N.M.): A settlement of $8 million was obtained for the class.

*In re Resound Securities Litigation* (N.D. Cal.): A settlement of $8 million was obtained for the class.

-2-

Document 19-      Filed 06/          Page 2  of 42

*In re Castle Energy Corp. Securities Litigation* (C.D. Cal.): A settlement of $7.5 million was obtained for the class.

*In re Western Digital, Inc. Securities Litigation* (C.D. Cal.): A settlement of $6.75 million was obtained for the class.

*In re Circle K Securities Litigation* (D. Ariz.): A settlement of $6 million was obtained for the class.

*In re Ascend Communications Securities Litigation* (C.D. Cal.): A settlement of $5.45 million was obtained for the class.

*In re WCT Securities Litigation* (C.D. Cal.): A settlement of $5 million was obtained for the class.

*In re Sumitomo Bank of California Securities Litigation* (San Francisco Sup. Ct.): A settlement of $4.95 million was obtained for the class.

*In re NextLevel Systems, Inc. Securities Litigation* (N.D. Ill.): A settlement of $4.6 million was obtained for the class.

*In re Shopping.com Securities Litigation* (C.D. Cal.): A settlement of $4.5 million was obtained for the class.

*In re Denver Bonds Securities Litigation* (D. Colo.): A settlement of $4.5 million was obtained for the class.

*In re Iwerks Securities Litigation* (C.D. Cal.): A settlement of $3.5 million was obtained for the class.

*In re Davstar, Inc. Securities Litigation* (C.D. Cal.): A settlement of $3.4 million was obtained for the class.

*In re Trident Securities Litigation* (N.D. Cal.): A settlement of $3.15 million was obtained for the class.

Case 1:06-cv-00802-ESH    Doc    06/0    Page 30

## CLASS AND DERIVATIVE ACTIONS HANDLED BY ATTORNEYS WITH YOURMAN ALEXANDER & PAREKH LLP WHERE A SIGNIFICANT BENEFIT WAS OBTAINED FOR THE COMPANY AND/OR THE SHAREHOLDERS

*In re Xoma Shareholder Litigation* (N.D. Cal.).

*In re Castle Energy Corp. Shareholder Litigation* (C.D. Cal.).

*In re Times-Mirror, Inc. Shareholder Litigation* (C.D. Cal.).

*In re Lockheed Corp. Shareholder Litigation* (C.D. Cal.).

*In re Nexgen Securities Litigation* (N.D. Cal.).

*In re Pairgain Securities Litigation* (S.D. Cal.).

*In re AMI Securities Litigation* (L.A. Superior).

## BRIEF BIOGRAPHIES OF
## YOURMAN ALEXANDER & PAREKH LLP'S ATTORNEYS

**KEVIN J. YOURMAN** is a partner with the firm. He received his B.A. degree, *cum laude*, from Adelphi University in 1979 and graduated from Rutgers University School of Law-Camden in 1982. Mr. Yourman is a member of the State Bars of New York and California and is admitted to practice in the Southern and Eastern Districts of New York, the Southern, Central, Eastern and Northern Districts of California, and the Ninth and Second Circuit Courts of Appeals.

Mr. Yourman has been practicing in the area of shareholder litigation and securities class actions since 1985 and has been named lead counsel or had significant involvement in hundreds of class and derivative actions throughout the United States. Mr. Yourman also practices in the area of consumer fraud and protection, and unfair business practices on behalf of consumers.

Case 1:06-cv-00802-ESH   Document 25-4   Filed 07/17/2006   Page 21 of 42

**VAHN ALEXANDER** is a partner with the firm. He graduated from the University of California, at Los Angeles (B.A. 1990), with honors, and from Loyola Law School (J.D. 1993), where he was a member of the Scott Moot Court Honor's Board (1993 - Jessup Team). Mr. Alexander has been practicing in the area of shareholder litigation and securities class actions since 1994. He also practices in the area of consumer fraud and protection, and unfair business practices on behalf of consumers. Mr. Alexander is admitted to the Bar of the State of California and the United States District Courts for the Central, Northern, Southern and Eastern Districts of California, as well as the Ninth Circuit Court of Appeals.

**BEHRAM V. PAREKH** is a partner with the firm. He graduated from the University of California, Irvine (B.A. 1992), and received his law degree and a Certificate in Alternative Dispute Resolution from the Pepperdine University School of Law (J.D., *cum laude*, 1995). Mr. Parekh is admitted to the Bar of the State of California, to the United States Court of Appeals for the Ninth Circuit, and the United States District Courts for the Northern, Central, Eastern and Southern Districts of California, the Western District of Michigan, the District of Colorado, and the Northern District of Oklahoma.

**JANINE A. SPERANDEO** is an associate with the firm. She graduated from the University of California, at San Diego in 1998 (B.S. Biology), and received her law degree from Loyola Law School, Los Angeles (J.D. 2003). She is admitted to the Bar of the State of California and the United States District Court for the Central District of California.

**JOANN M. WAKANA** is an associate with the firm. She graduated from the University of California, Los Angeles (B.A. 2000), and received her law degree from Loyola Law School, Los Angeles (J.D. 2004). She is admitted to the Bar of the State of California and the United States District Court for the Central District of California.

Case 1:06-cv-00802-    Document 19-1    d 06/30/2006    Page 32 o

**RONALD R. CARLSON** is an associate with the firm.  He graduated from the Western State University (B.S.L. 1994), and received his law degree from the Pacific West College of Law (J.D. 1996).  He is admitted to the Bar of the State of California and the United States District Court for the Central District of California.