UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re XM SATELLITE RADIO HOLDINGS SECURITIES LITIGATION | ) Civil Action No. 1:06-cv-00802-ESH ) ) <u>CLASS ACTION</u> ) |
| This Document Relates To:<br><br>    ALL ACTIONS. | ) ) ) ) ) ) |

MEMORANDUM IN FURTHER SUPPORT OF BOCA RATON AND PLUMBERS LOCAL 267'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

**I.     INTRODUCTION**

Presently pending before this Court are four competing motions for appointment as lead plaintiff, which were filed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). In addition to the motion filed by the only institutional investors, Boca Raton Firefighters and Police Pension Fund ("Boca Raton") and Plumbers Local 267 Pension Fund ("Plumbers Local 267"), competing motions were also filed by the following individual investors: (1) Avi Zarif, Brock Ketcher, Victor Ventimiglia and Corey Spohn (the "Zarif Group"); (2) Adam Barber; and (3) Ron Price.[1]

In making the determination of which investor to appoint as lead plaintiff, the PSLRA instructs this Court to decide which movant, among all of the competing movants, "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)-(cc); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268-69 (3d Cir. 2001); *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).

Institutional investors Boca Raton and Plumbers Local 267 have the largest financial interest (with losses of $551,872.73) of any other movant and also satisfy the requirements of Rule 23. *See Cendant*, 264 F.3d at 268 (noting that institutional investors will "more often than not" satisfy the requirements of Rule 23); *see also Ferrari v. Impath, Inc.,* No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *10 (S.D.N.Y. July 20, 2004) (holding that the PSLRA's purpose is best achieved by encouraging institutional investors to serve as lead plaintiff).

---

[1] A fourth competing motion was filed by the firms Stull Stull & Brody and Kantrowitz Goldhamer & Graifman seeking to represent Victor Ventimiglia. In recognition of the fact that Mr. Ventimiglia has a smaller financial interest than Boca Raton and Plumbers Local 267, as well as the fact that he was proffered by two different firms as a potential lead plaintiff, Mr. Ventimiglia's second motion was withdrawn on July 11, 2006.

As discussed herein in detail, each of the remaining movants has a smaller financial interest in this case against XM Satellite Radio Holdings Inc. ("XM Satellite" or the "Company") than Boca Raton and Plumbers Local 267 and also fails to satisfy Rule 23's adequacy and typicality requirements. It is therefore respectfully submitted that Boca Raton and Plumbers Local 267 are the most adequate plaintiffs and should accordingly be appointed Lead Plaintiffs, their choice of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") as lead counsel should be approved, and the other motions should be denied.

## II.     ARGUMENT

### A.     The PSLRA's Lead Plaintiff Procedure

The PSLRA provides that in securities class actions, "courts shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). In determining which class member is "the most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> > (aa) has either filed the complaint or made a motion in response to a notice . . .;
> >
> > (bb) in the determination of the court, *has the largest financial interest* in the relief sought by the class; and
> >
> > (cc) otherwise *satisfies the requirements of Rule 23* of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) (emphasis added).

**B.     Boca Raton and Plumbers Local 267 Are the "Most Adequate Plaintiff"**

**1.     Boca Raton and Plumbers Local 267 Have the Largest Financial Interest in the Relief Sought in This Case**

In accordance with the Court's July 10, 2006 Minute Order, counsel for Boca Raton and Plumbers Local 267 have analyzed each of the movants' financial interests in this case, which can be summarized as follows:

| Movants[2] | Shares Purchased During Class Period[3] | Net Shares Purchased | Total Net Funds Expended | Loss |
|---|---|---|---|---|
| Boca Raton and Plumbers Local 267 | 34,775 | 34,775 | $1,045,888.45 | $551,872.73 |
| Zarif Group | 93,647 | <3,000> | <$228,986.22> | $475,646.60 |
| Adam Barber | 94,244 | 0 | <$258,633.42> | $258,633.42 |

As the movants with the most net shares purchased, total net funds expended and largest loss, Boca Raton and Plumbers Local 267 *clearly* have the largest financial interest in the relief sought by the class.

Once a court finds that a movant has the largest financial interest in the litigation, as is the case here with Boca Raton and Plumbers Local 267, the court must appoint that plaintiff as Lead Plaintiff unless the court finds that the movant has not made a *prima facie* showing of adequacy and typicality. *See Cavanaugh*, 306 F.3d at 726; *In re Fannie Mae Sec. Litig.*, 355 F. Supp 2d 261, 265

---

[2] Movant Ron Price's financial interest cannot be computed in accordance with the Court's Minute Order as he merely holds the *option* to purchase shares, not shares themselves. Regardless of this fact, Mr. Price's claimed loss of $13,616 on these options is *de minimis* when compared with Boca Raton and Plumbers Local 267's loss of $551,000.

[3] Movants used two different Class Periods in calculating their financial interest. For the Court's convenience and in order to compare apples to apples, Boca Raton and Plumbers Local 267 have provided data for the longest Class Period, July 28, 2005 through May 24, 2006. *See Ferrari*, 2004 U.S. Dist. LEXIS 13898, at *8-*9. Moreover, any variance between the Class Periods will be addressed by the filing of the consolidated complaint after the appointment of lead plaintiff and lead counsel.

(D.D.C. 2005) (recognizing that this Court "*must*" deem the movant with the largest financial interest the presumptive lead plaintiff if it "makes a *prima facie* showing that it satisfies the typicality and adequacy requirements of Rule 23"). In this regard, the court in *Cavanaugh* stated:

> [A] straightforward application of the statutory scheme, as outlined above, provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case. Once that comparison is made and the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and [should] be limited to determining whether he satisfies the other statutory requirements.

306 F.3d at 732. *See also Cendant*, 264 F.3d at 268 (noting institutional investors will "more often than not" satisfy the requirements of Rule 23); *Fannie Mae*, 355 F. Supp 2d at 265 (appointing two institutional investors with the largest financial interest as lead plaintiff).

### 2.     Boca Raton and Plumbers Local 267 Satisfy Rule 23

Boca Raton and Plumbers Local 267 also satisfy Rule 23's typicality and adequacy requirements. *See Cendant*, 264 F.3d at 264 ("the court's initial inquiry should be confined to determining whether such movants have stated a *prima facie* case of typicality and adequacy"). Boca Raton and Plumbers Local 267's claims are typical of the claims of the rest of the class because, just like all other class members, they: (1) purchased XM Satellite Radio shares during the Class Period; (2) purchased XM Satellite Radio shares in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. *See* Memorandum in Support of the Motion of Boca Raton and Plumbers Local 267 for Appointment as Lead Plaintiffs and for Approval of Selection of Lead Counsel at 7-9. Thus, Boca Raton and Plumbers Local 267's claim are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events. *Fannie Mae*, 355 F. Supp. 2d at 263 (finding institutional investors with largest financial interest satisfied typicality requirement by "[demonstrating] its claims arose out of the same course of conduct and are based on the same legal theory").

- 4 -

Boca Raton and Plumbers Local 267 are also adequate representatives of the class. As evidenced by the injuries suffered by Boca Raton and Plumbers Local 267, who purchased XM Satellite Radio shares at prices allegedly artificially inflated by defendants' materially false and misleading statements, the interests of Boca Raton and Plumbers Local 267 are clearly aligned with the interests of the members of the class, and there is no evidence of any antagonism between Boca Raton and Plumbers Local 267's interests and those of the other members of the class. Further, Boca Raton and Plumbers Local 267 have taken steps which further demonstrate that they will protect the interests of all members of the class by retaining Lerach Coughlin, recognized as one of the leading securities class action firms in the United States, to prosecute these claims. *See In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002) (finding that the submissions of Lerach Coughlin's lawyers "stand out in the breadth and depth of its research and insight").

Accordingly, Boca Raton and Plumbers Local 267 should be appointed Lead Plaintiff because they have the largest financial interest in the relief sought in this case and are otherwise adequate and typical for the purposes of this motion. *See Fannie Mae*, 355 F. Supp. 2d at 263 (finding two pension funds with the largest financial interest satisfied adequacy requirement by demonstrating lack of "interests antagonistic to the class, [and] that its counsel is qualified, experienced, and able to conduct the litigation").

    C.    **Boca Raton and Plumbers Local 267 Are the *Only* Institutional Investor Movants, Which Congress Recognized as Being Ideally Suited for Appointment as Lead Plaintiff**

Boca Raton and Plumbers Local 267 are precisely the type of investors Congress sought to summon and empower when it enacted the PSLRA. *See Ferrari*, 2004 U.S. Dist. LEXIS 13898, at *10 (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as lead plaintiff). Moreover, as institutional investors, Boca Raton and Plumbers

Local 267 are accustomed to acting as fiduciaries and their experience in legal and financial matters will substantially benefit the class.

In fact, Congress, in passing the PSLRA, expressed a strong preference for institutional plaintiffs, such as Boca Raton and Plumbers Local 267, to be appointed lead plaintiff. The legislative history of the PSLRA demonstrates this clear Congressional intent "to increase the likelihood that institutional investors will serve as lead plaintiffs." House Conf. Rep. No. 104-369, 104th Cong. 1st Sess. at 34 (1995); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 03 MD 1529 (LMM), 2005 U.S. Dist. LEXIS 19052, at *4-*6 (S.D.N.Y. Sept. 1, 2005). In keeping with that Congressional intent, courts in this District, as well as others, consistently appoint pension and retirement funds as lead plaintiff pursuant to the PSLRA. *See Fannie Mae*, 355 F. Supp 2d at 265 (appointing two pension funds as lead plaintiff); *see also Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05-cv-04617 RJH, 2006 U.S. Dist. LEXIS 3028, at *21 (S.D.N.Y. Jan. 24, 2006); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395 (S.D.N.Y. 2004).

Accordingly, Boca Raton and Plumbers Local 267 should be appointed Lead Plaintiff.

**D.    The Remaining Motions Should Be Denied**

In addition to claiming a smaller financial interest than Boca Raton and Plumbers Local 267, each of the competing motions should further be denied as each of the movants has numerous deficiencies which prevent them from adequately representing the class.

**1.    The Zarif Group's Motion Should Be Denied**

The Zarif Group is not a cohesive "group," but rather is an amalgam of individual investors cobbled together by their lawyers with numerous deficiencies which defendants would no doubt exploit to the detriment of the class if the Zarif Group were to be appointed lead plaintiff. In fact, one member of the "group," Victor Ventimiglia, made a second lead plaintiff motion, ***competing with himself to serve as lead plaintiff***. *See* n.1 *supra*. That Mr. Ventimiglia was simultaneously

- 6 -

represented by two law firms raises serious questions not only about Mr. Ventimiglia's awareness and involvement in this process, but also about the *bona fides* of the other members of the Zarif Group. *Singer v. Nicor, Inc.*, No. 02 C 5168 GWL, 2002 U.S. Dist. LEXIS 19884, at *7 (N.D. Ill. Oct. 16, 2002) (holding that movant's "unknowing retention of two different law firms and filing of two motions for appointment as lead plaintiff reveal conflicts . . . that make it unsuitable to make decisions on behalf of the class"). Moreover, Mr. Ventimiglia's submission of two separate and competing lead plaintiff motions is indicative of the type of lawyer-driven machinations Congress sought to eliminate by enacting the PSLRA. *Ferrari*, 2004 U.S. Dist. LEXIS 13898, at *10 ("The purpose behind the PSLRA is to prevent 'lawyer-driven' litigation . . . .").[4]

The Zarif Group also seeks to have two law firms appointed as co-lead counsel–Motley Rice LLC and Kahn Gauthier Swick, LLC. The appointment of two firms, one with offices in Atlanta and South Carolina and the other with offices in New Orleans and New York City, would no doubt saddle the class with unnecessary and duplicative expenses. The Zarif Group has provided no evidence or justification for why two firms are preferable to one. *See In re Carreker Corp. Sec. Litig.*, No. 3:03-CV-0250 BMGL, 2003 U.S. Dist. LEXIS 25988, at *13 (N.D. Tex. Aug. 14, 2003) ("appointing two other law firms to act as co-lead counsel is not in the best interest of the putative class"); *Friedman v. Rayovac*, 219 F.R.D. 603, 605-6 (W.D. Wis. 2002) (denying lead plaintiff's request to appoint multiple counsel over concerns for the best interests of the class). In contrast, Boca Raton and Plumbers Local 267 have demonstrated their commitment to adequately represent

---

[4] Defendants will undoubtedly exploit additional deficiencies within the "group." For example, "group" member Corey Spohn's sale of ***all*** of his shares prior to the revelation of the alleged fraud by XM Satellite may be taken advantage of by defendants seeking to prove lack of loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("if . . . the purchaser sells the shares . . . before the relevant truth begins to leak out, the misrepresentation will not have led to any loss"). Similarly, defendants will likely also argue that "group" member Brock Ketcher's inaccurate price listed for purchases on October 5, 2005–which fall outside XM Satellite's trading range on that day–further evidences his inadequacy to serve as a representative for the class.

the class in this case by asking the Court to appoint a sole firm, Lerach Coughlin, which maintains an office in this District, as Lead Counsel for the class.

These numerous deficiencies further confirm that the Zarif Group's motion should be denied, and Boca Raton and Plumbers Local 267's motion should be granted.

### 2.    Adam Barber's Motion Should Be Denied

The motion filed by Adam Barber should likewise be denied because the certification he submitted in support of his motion reveals high-volume in-and-out trading on various days between October 13, 2005 and October 21, 2005–a pattern which defendants will likely argue is indicative of "day-trading," which would subject Mr. Barber to unique defenses regarding his ability to adequately represent the class. *See In re Safeguard Scientifics*, 216 F.R.D. 577, 582-83 (E.D. Pa. 2003) (rejecting day trader as lead plaintiff). For example, on October 19, 2005, Barber both purchased ***and*** then immediately sold 40,000 shares for a miniscule profit of pennies per share. In cases such as this, where institutional movants not subject to unique defenses, namely Boca Raton and Plumbers Local 267, have also moved for appointment of lead plaintiff, appointment of a day trader like Mr. Barber is not appropriate. *See In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000) (suggesting that, when compared to another group of institutional investors, a movant who "engaged in extensive day-trading" was not qualified to serve as lead plaintiff).

As a result of this deficiency, as well as his smaller financial interest in this litigation when compared with Boca Raton and Plumbers Local 267, Mr. Barber's motion should be denied and Boca Raton and Plumbers Local 267 should be appointed lead plaintiff.

### 3.    Ron Price's Motion Should Be Denied

Unlike the other movants who are seeking to represent the interests of the entire class, movant Ron Price has moved for appointment as lead plaintiff only on behalf of a class of XM Satellite "options purchasers." *See* Memorandum of Law in Support of Ron Price's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Price Mem.") at 1.

- 8 -

To the extent Mr. Price is attempting to create a sub-class of options purchasers and be appointed as the lead plaintiff of that sub-class, this effort should be rejected.[5] Courts routinely deny attempts by lead plaintiff movants and defendants to argue that a lead plaintiff must have standing to sue on behalf of all claims within the class. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, (2d Cir. 2004) ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action."); *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 122 (S.D.N.Y. 2002) (holding that "in order for a claim to be asserted on behalf of a putative class, **only the named plaintiffs**–but not necessarily the lead plaintiff–**must have standing**") (Emphasis added). Attempts to concoct a lead plaintiff group that has standing to sue on all possible causes of action has been rejected repeatedly by courts and undermines the purpose of the PSLRA. *Id.*

Indeed, the attempt to create a subclass of options purchasers was very recently rejected by the court in *Averdick v. Hutchinson Technology, Inc.*, 05-2095 (MJD), 2006 U.S. Dist. LEXIS 47445 (D. Minn. Feb. 9, 2006). In *Averdick*, one movant, relying on many of the same cases as Mr. Price, sought to create a subclass of options purchasers and argued that the other investor's motion should be denied because, despite its larger financial interest, "it lacks standing to represent purchasers of Hutchinson call options." *Id.* at *17. In rejecting the creation of a subclass of options purchasers, the court adopted the reasoning of other courts which have held that "[t]he fact that plaintiffs might have different types of securities does not require a separate class or co-lead plaintiffs because lead plaintiffs need not satisfy all elements of standing with respect to the entire lawsuit under the

---

[5] Mr. Price's argument for a separate and distinct class of options purchasers is further belied by his counsel's consent to consolidation of **all** of the related actions, including *Boland v. XM Satellite Radio Holdings, Inc.*, No. 06-cv-889, on which he relies for including options holders in this case. *See* Consent Motion to Consolidate Cases and Proposed Consolidation Order, filed on June 5, 2006, at 10. Moreover, Mr. Price has not filed a separate complaint on behalf of options holders nor has he made any other effort to isolate and protect the interests that he is claiming to represent.

PSLRA." *Id.* at *18 (citations omitted).  *See also Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 325 (S.D.N.Y. 2004) (rejecting invitation by options holders to appoint a "niche" lead plaintiff sub-class of options holders at lead plaintiff stage).  Here, Boca Raton and Plumbers Local 267 do not need to satisfy "all elements of standing" and can adequately represent the interests of ***all*** members of the class and appropriately address any issues of standing in the filing of an amended complaint.

For these reasons, Ron Price's motion should be denied and Boca Raton and Plumbers Local 267 should be appointed lead plaintiff.

### III. CONCLUSION

For all the reasons stated herein, Boca Raton and Plumbers Local 267's motion for appointment as lead plaintiff and for approval of its selection of lead counsel should be granted and all other motions should be denied.

DATED: July 17, 2006

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
NANCY M. JUDA (DC Bar # 445487)


          /s/ Nancy M. Juda
          NANCY M. JUDA

1100 Connecticut Avenue, N.W., Suite 730
Washington, DC  20036
Telephone:  202/822-6762
202/828-8528 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA, JR.
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

[Proposed] Lead Counsel for Plaintiffs

- 10 -

        LAW OFFICES BERNARD M.
          GROSS, P.C.
        DEBORAH R. GROSS
        Wanamaker Bldg., Suite 450
        100 Penn Square East
        Philadelphia, PA  19107
        Telephone:  215/561-3600
        215/561-3000 (fax)

        SUGARMAN AND SUSSKIND
        ROBERT SUGARMAN
        2801 Ponce De Leon, Suite 750
        Coral Gables, FL 33134
        Telephone: 305/529-2801
        305/447-8115 (fax)

        Additional Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper *via* the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

    LERACH COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP


       s/ David A. Rosenfeld

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
E-mail: DRosenfeld@lerachlaw.com

# Mailing Information for a Case 1:06-cv-00802-ESH

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kimberly Anne Chadwick**
  kchadwick@dsp-law.com

- **Jonathan Watson Cuneo**
  jonc@cuneolaw.com

- **Charles Edward Davidow**
  charles.davidow@wilmerhale.com

- **Donald J. Enright**
  dje@ftllaw.com

- **Burton John Fishman**
  bfishman@fortneyscott.com

- **Nancy M. Juda**
  nancyj@lerachlaw.com

- **Karen Jennifer Marcus**
  kjm@ftllaw.com

- **Gary Edward Mason**
  gmason@masonlawdc.com nmigliaccio@masonlawdc.com;mdicocco@masonlawdc.com

- **Michael A Mugmon**
  michael.mugmon@wilmerhale.com

- **Arthur L. Shingler, III**
  ashingler@scott-scott.com

- **Daniel S. Sommers**
  dsommers@cmht.com

- **Steven J. Toll**
  stoll@cmht.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**ROBERT MARTIN**

**Service List – Additional Parties**

Deborah R. Gross
Robert P. Frutkin
**Law Offices of Bernard M. Gross, P.C.**
100 Penn Square East, Suite 450
Wanamaker Bldg.
Philadelphia, PA 19107
215/561-3600
215/561-3000 (fax)

Stuart J. Guber
James M. Evangelista
**Motley Rice LLC**
One Georgia Center
600 West Peachtree Street, Suite 800
Atlanta, GA 30308
404/201-6900

Lewis S. Kahn
Michael A. Swick
**Kahn Gauthier Swick, LLC**
650 Poydras St., Suite 2150
New Orleans, Louisiana 70130
504/455-1400
504/455-1498 (Fax)

Robert Sugarman
**Sugarman and Susskind**
2801 Ponce De Leon, Suite 750
Coral Gables, FL 33134
305/529-2801
305/447-8115 (fax)