UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

_____
                                                                  )
IN RE: XM SATELLITE RADIO HOLDINGS      )
SECURITIES LITIGATION                             ) Case No. 06-0802 (ESH)
_____)
                                                                  )
This Document Relates to:                             )
All Actions                                                     )
_____)


**MEMORANDUM OF LAW IN SUPPORT OF RON PRICE'S MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF LEAD COUNSEL**

**PRELIMINARY STATEMENT**

Ron Price ("Price" or "Movant") respectfully submits this Memorandum of Law in further support of his Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, and in opposition to the competing motions insofar as such other motions purport to represent a class including the options purchasers for shares of XM Satellite Radio Holdings ("XM") options during the class period.

As demonstrated more fully below, Price should be appointed lead plaintiff on behalf of XM options purchasers (the "XM Options Class")[1] for several reasons. First, common shareholders of XM securities do not have standing to assert various claims specific to the Options class and the common shareholder claims are atypical of (and possibly adverse to) those of the Options class members.[2] Movant additionally has the greatest losses of any options purchaser seeking to be appointed lead plaintiff to represent

---

[1] The XM Options Class is comprised of option contracts for common shares and preferred shares of XM.

[2] Price neither challenges the other movants' standing to assert claims on behalf of common shareholders nor seeks to represent the common shareholder class himself.

1

the XM Options Class. Finally, Price readily meets all of the requirements of Federal Rule of Civil Procedure 23, understands the commitments required of a lead plaintiff and has selected counsel qualified and experienced in securities class action litigation.

## ARGUMENT

I.  **TO BE ELIGIBLE TO SERVE AS A LEAD PLAINTIFF, A MOVANT MUST HAVE STANDING TO ASSERT THE CLAIMS OF THE CLASS MEMBERS**

A basic tenet of constitutional law is that a plaintiff must have standing to assert the claims that they allege. *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458-59 (4th Cir. 2005). It thus follows that a lead plaintiff in securities litigation also must have standing to assert claims for which they seek to represent a class. *Simon v. Westinghouse Elec. Corp.*, 73 F.R.D. 480, 484 (E.D. Pa. 1977)(denying class certification of all non-common shareholders because "there are no named plaintiffs who purchased debentures or preferred stock and so are able to represent such purchasers and insure that their possibly different interests are considered"); *Model Assocs., Inc. v. U.S. Steel Corp.*, 88 F.R.D. 338, 339-40 (W.D. Oh. 1980)(denying class certification and stating that "the interests of a stockholder under such circumstances are antagonistic to a debenture holder and since plaintiff owned only common stock, its claim is not typical of the class it seeks to represent."); *In re Paracelsus Corp. Sec. Litig.*, 6 F. Supp. 2d 626, 631 (S.D. Tex. 1998)(granting defendants' motion to dismiss, in part, because the named plaintiffs were common shareholders who had not purchased subordinated notes, holding that "an individual plaintiff who lacks standing to assert a claim on his or her own behalf cannot avoid dismissal by purporting to maintain the action on behalf of which he or she is not a member."). Finally, a shareholder of common class securities may not be appointed a

lead plaintiff to represent the interest of options purchasers due to the inherent difference between purchasers of different classes of securities. *In re Nanophase Tech. Corp. Litig.*, No. 98-3450, 1999 U.S. Dist. LEXIS 16171, at *19 (N.D. Ill. Sept. 30, 1999)(establishing a separate class and lead plaintiff for purchasers of preferred class securities); *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 373, 375-78 (E.D. Va. 2003)(appointing Co-Lead Plaintiffs to establish representation for both ADR and common stock purchasers).

## II.   THE MOVANTS WHO PURCHASED XM STOCK DO NOT HAVE THE REQUIRED STANDING OR TYPICALITY TO REPRESENT THE XM OPTIONS CLASS.

The Private Securities Litigation Reform Act of 1995 ("PSLRA") creates a rebuttable presumption that the "most adequate plaintiff"

> is the 'person or group of persons' who (i) 'has either filed the complaint or made a motion in response to [notice given],' 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa), (ii) 'has the largest financial interest in the relief sought by the class,' 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) and (iii) 'otherwise satisfies the requirements of [Rule 23, Fed. R. Civ. P.],' 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). This presumption may be rebutted by evidence that the presumptively 'most adequate plaintiff' (i) 'will not fairly and adequately protect the interests of the class' or (ii) 'is subject to unique defenses and render such plaintiff incapable of adequately representing the class.' 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

*In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 433 (E.D. Va. 2000). Here, the other movants cannot satisfy these requirements for the XM Options Class.

The various other movants and movant groups did not purchase options for XM securities. Rather, The Boca Raton Firefighters and Police Pension Fund and Plumbers Local 267 Pension Fund ("Boca Raton Group"), The Zarif Group, or Adam Barber (collectively the "Shareholder Class Movants") have merely purchased XM stock. *See* Exhibit B to Memorandum of Points and Authorities in Support of Motion for

Appointment of Adam Barber As Lead Plaintiff Pursuant to §21D of the Securities Exchange Act of 1934 And to Approve Lead Plaintiff's' [sic] Choice of Counsel ("Adam Barber Memorandum"); Ex. A to the Declaration of Lewis S. Kahn in Support of the Motion of The Zarif Group to be Appointed Lead Plaintiff and to Approve Lead Plaintiff's Choice of Counsel ("Zarif Group Motion"); Exhibit B to the Declaration Of Nancy M. Juda In Support Of the Motion of Boca Raton and Plumbers 267 For Appointment as Lead Plaintiffs and For Approval Of Selection Of Lead Counsel ("Boca Raton Group Memorandum").  Thus while the Shareholder Class Movants have suffered significant financial losses, they fail to fulfill basic benchmark requirements to maintain an action on behalf of options purchasers: they have never purchased a single XM option contract.  Thus, the Shareholder Class Movants cannot claim to represent the XM Options Class as they do not have standing to assert claims on behalf of options purchasers.

### III.    VARIOUS MOVANTS CONSTITUTE IMPROPER AGGREGATIONS OF PROPOSED LEAD PLAINTIFFS.

The Boca Raton Group as well as the Zarif Group constitute improper aggregations that must be split when considering their lead plaintiff applications.[3]  While the appointment of lead plaintiff "groups" is "arguably invited by the PSLRA, there are significant and stringent limitations on these appointments."  *See In re Microstrategy Inc.*

---

[3] The court should note that originally Victor Ventimiglia had improperly sought appointment for lead plaintiff as both an individual (with representation by Stull, Stull & Brody) and as a member of the Zarif Group (with representation by Motley Rice).  *See* Exhibit B to Memorandum Of Law In Support Of The Motion Of Victor Ventimiglia For Appointment As Lead Plaintiff And Approval of Selection Of Co-Lead Counsel And Liaison Counsel; Memorandum of Law in Support of the Motion of the Zarif Group to be Appointed Lead Plaintiff and to Approve Selection of Counsel.  Mr. Ventimiglia has since withdrawn his papers for appointment for lead plaintiff as an individual but still seeks to be appointed as part of the Zarif Group.  *See* Notice of Withdrawal of Motion of Victor Ventimiglia for Appointment as Lead Plaintiff and Approval of Selection of Co-Lead Counsel and Liason Counsel (filed July 11, 2006).

*Sec. Litig.*, 110 F. Supp. 2d 427, 434 (E.D. Va. 2000).  Any movant group is required to plead facts showing that they are typical and adequate as a group to represent the class.  *Switzenbaum v. Orbital Sciences Corp.*, 187 F.R.D. 246, 250 (E.D. Va. 1999)("Although their claims appear to be typical of those of the putative class . . . little is known about the ties that the seven [group] members have to each other or to the putative class.  Having failed to volunteer anything more than conclusory assertions about its competence to manage this case, the Group has put its adequacy of representation in doubt.").  When a Court determines whether or not a proposed lead plaintiff group is proper, it should:

> rel[y] on no single factor, but instead require[] a 'group' to 'explain and justify its composition and structure to the court's satisfaction.'  Under this approach, a court may consider all relevant factors, such as 'description of [the group's] members, including any pre-existing relationships among them; an explanation of how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation.'

*Microstrategy*, 110 F. Supp. 2d at 435.

In their motions seeking appointment as lead plaintiffs, the Zarif Group and the Baton Raton Group have woefully failed to meet their pleading burden of why an aggregation of their respective members is appropriate or permissible.  Neither has even gone so far as to give "conclusory assertions" regarding their abilities to work together and jointly manage the complexities of serving as a lead plaintiff, let alone provided descriptions of group members, how the members would communicate or render decisions, or whether the parties had preexisting investment or litigation experience together.

As the Boca Raton and Zarfi Group members have only purchased common shares (and not option contracts), it thus seems apparent that additional group member adds nothing new to their respective movant group other than bringing additional shares to the lead plaintiff damage calculation table. This shows that they merely "seek to aggregate their losses to enhance their chances of winning selection as lead plaintiff (and hence, to enhance counsel's chances of winning selection as lead counsel)." *Microstrategy*, 110 F. Supp. 2d at 434; *see also In re Doral Financial Corp. Sec. Litig.*, Case No. 05 MDL 1706, 2006 U.S. Dist. LEXIS 7189 at*11-12 (S.D.N.Y. Feb. 8, 2006)("[n]othing before this Court indicates that these random cumulations of plaintiffs are anything more than an effort to achieve the highest possible 'financial interest' figure to be chosen, which, however also cumulates case control problems and rival disagreements, resulting in delay and increased expense. . . .[B]y allowing attorneys to designate otherwise unrelated plaintiffs as a purported 'group,' and by allowing unrelated groups to aggregate investments in an effort to generate the 'largest financial interest,' a strong possibility emerges that lawyers will form such groups to manipulate the selection process, and thereby gain control of the litigation.").

The Boca Raton Group and Zarif Group, quite simply, cannot be aggregated based on the information and facts contained in their respective lead plaintiff papers. An initial showing of why aggregation is proper must be fulfilled. Here, the aggregated groups merely seek to increase the likelihood that they are appointed lead plaintiff to their respective classes. Such a circumvention of the PSLRA's lead plaintiff mechanism should not be allowed and these "groups" should be severed with the Court considering each group member as a potential lead plaintiff solely in their individual capacity.

IV. **THE BOCA RATON GROUP AND THE ZARIF GROUP HAVE IMPROPERLY CALCULATED THEIR DAMAGES.**

In addition to being an improper aggregation of proposed lead plaintiffs, the Zarif Group and the Boca Raton Group have incorrectly calculated their damages.

For example, in their damages calculations, the Zarif Group inappropriately included a purchase that took place before the class period began. The Zarif Group included in group member Avi Zarif's damages calculations a June 16, 2005 purchase of 10,000 shares. *See* Avi Zarif Certification. These additional shares dramatically inflated Avi Zarif's loss, which would have been only $13,771 rather than the claimed $183,471.50.

It is apparent that the extra 10,000 shares were included in Avi Zarif's damages calculations to hide the fact that he is a net seller of XM securities during the class period. Specifically, Avi Zarif sold 55,944 shares during the class period, while purchasing only 45,944 shares: simple mathematics reveals that Avi Zarif sold 10,000 more shares than he bought during the Class Period. *See* Lewis S. Kahn Decl., Ex. A.

Moreover, the Zarif Group as a whole is a net seller. Victor Ventimiglia is the only member of the group to still own shares at the end of the class period, However Ventimiglia's 7,000 shares are eclipsed by the extra 10,000 shares that Ari Zarif sold during the class period. *See* Lewis S. Kahn Decl., Ex. A. Hence, the Zarif Group, as a whole, is a net seller by 3,000 shares.

Numerous courts have held that being a net seller precludes the possibility of being appointed as a lead plaintiff because of the potential for unique defenses being asserted against it. *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Oh. 2005)(eliminating two institutions from a movant group because they were net sellers and

atypical of the class); *In re: Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03cv2166, 2004 U.S. Dist. LEXIS 27043 at * 18-20 (N.D. Oh. May 12, 2004)(denying a movants application to be appointed lead plaintiff because they "may have benefited from the alleged fraud in view of the fact that they earned millions of dollars on net sales of Goodyear stock during the Class Period."); *Weisz v. Calpine Corp.*, No. 02-1200, 2002 U.S. Dist. LEXIS 27831 at * 26-27 (N.D. Ca. Aug. 19, 2002)(denying movants application to be appointed lead plaintiff because they were a net seller during the class period); *In re Cable & Wireless PLC Sec. Litig.*, 217 F.R.D. 372, 378 (E.D. Va. 2003)(same). Thus, the Zarif Group's application for appointment as lead plaintiff cannot be granted.

Further creating inaccuracy in their damage calculations, both the Zarif Group and the Boca Raton Group inappropriately extended the class period to inflate their losses. Both groups attached notices to their lead plaintiff motions stating that the class period ended on February 15, 2006. Yet, the Zarif Group's counsel, Cohen Milstein Hausfeld & Toll conveniently filed a new complaint on July 3, 2006 (the Lead Plaintiff motion due date) on behalf of Robert Martin which extended the class period from July 28, 2006 until May 24, 2006 on account of some later statements made by XM.[4] This new class period is approximately three months longer than in the initial complaint and was not noticed. Using the noticed class period, the Boca Raton Group's actual losses are $313,000 (rather than their reported loss of $551,872) and the Zarif Group's actual losses are $317,000 (rather than their reported loss of $471,671).[5]

---

[4] Robert Martin has not sought appointment as lead plaintiff.
[5] Additional calculations that use the noticed class period and exclude the 10,000 shares that Avi Zarif bought before the class period, reveal that the Zarif Group only sustained a loss of $194,000. Moveover,

Courts have found that it is inappropriate to use an unnoticed class period for the purposes of determining lead plaintiff appointments: "The use of the longer, unnoticed class period is improper. This longer class period would include many – perhaps thousands – more potential class members who were not apprised of their right to move to be appointed lead plaintiff in this action." *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005). The magnitude of the Zarif Group and Boca Raton Group's losses are thus exaggerated by the use of this extended proposed class period.

## V.    THE MEMBERS OF THE ZARIF GROUP AND ADAM BARBER ARE ATYPICAL CLASS REPRESENTATIVES.

The Zarif Group and Adam Barber do not appear to have suffered significant losses as a result of XM's misrepresentations because they sold their shares during the Class Period, prior to the revelations of Defendants' misrepresentations and omissions. Thus, they are both inadequate plaintiffs and disqualified under Rule 23 to represent a class of XM shareholders.

Having purchased and sold their shares during the class period, the Zarif Group and Barber enjoyed the benefit of the inflated price when they sold their shares before XM's misrepresentations were revealed on February 16, 2006. Particularly, Adam Barber[6] sold all of his 92,244 shares before the class period ended; Brock Ketcher of the Zarif Group sold all of his 25,703 shares during the class period; and Corey Spohn sold all of his 15,000 shares during the class period.

---

calculating Avi Zarif's individual loss using the noticed class period and excluding the 10,000 shares that he purchased before the class period, shows that Zarif actually had a gain of over $9000.

[6] Further making Adam Barber an atypical plaintiff is the fact that he is a day trader, where 74,744 of his shares (almost 80%) were purchased and sold on the same day (74,000 shares) or within one day (744 shares). *See* Ex. B to Adam Barber Memorandum.

Because they sold their shares prior to the revelation of the fraud, the Zarif Group and Adam Barber have unique defenses regarding loss causation and damages than would the majority of the class who held their shares until the end of the class period. Specifically, the Zarif Group and Adam Barber will have to prove that any losses they claim to have sustained from their sales during the class period were a result of XM's misrepresentations. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (U.S. 2005) ("Shares are normally purchased with an eye toward a later sale. But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."); *Freeland v. Iridium World Communs.*, Ltd., 233 F.R.D. 40, 46 (D.D.C. 2006) (finding that a plaintiff holding his shares until the end of the class period may be subject to unique defenses regarding their ability to prove loss causation). Whereas the Zarif Group and Adam Barber's losses for shares sold during the class period cannot be linked to XM's misrepresentations, the majority of the class will not have a difficult task proving such causation since it is more likely that their losses, sustained from sales after the end of the class period, will have been a result of XM's revelations.

## VI.    IT IS APPROPRIATE FOR THE COURT TO APPOINT SEPARATE LEGAL REPRESENTATION FOR OPTIONS PURCHASERS.

In order to assure that the interests of a subclass are adequately represented, it is proper for the Court to appoint separate lead counsel to represent the Options Class. Where the interests of the Shareholder Class and the Options Class conflict,[7] it is

___

[7] Options holders have conflicting interests with common stock purchasers. *See* Memorandum Of Law In Support Of Ron Price's Motion For Appointment As Lead Plaintiff And Approval Of Selection Of Lead Counsel (filed July 3, 2006). As options holders do not own equity in the corporation, itself, they have no pecuniary interest in maintaining the viability or long-term integrity of the corporation and are free to maximize their damages recovery- even if this is accomplished at the expense of harming the long-term

appropriate for the court to appoint separate lead counsel for the Options subclass. *See Freeland v. Iridium World Commun. Ltd.*, No. 99-1002, slip op. at 3 (March 15, 2001) (Ex. 1 to Declaration of Karen J. Marcus in Support Of The Memorandum Of Law In Support Of Ron Price's Motion For Appointment As Lead Plaintiff And Approval Of Selection Of Lead Counsel)[8]; *Piambino v. Bailey*, 757 F.2d 1112, 1145 (11th Cir. 1985) ("Appropriate action in the instant case would have involved, at the very least, the designation of the Minority Group as a subclass with the right to have separate counsel unbeholden to Lead Counsel."). In order to preserve the rights and interests of the Options Class, it is appropriate for the Court to appoint Finkelstein, Thompson & Loughran as lead counsel for the Options Class.

## CONCLUSION

In light of the inaccurate damage calculations and the improper aggregation of losses employed by the proposed lead plaintiffs, Movant is concerned with the adequacy of the proposed lead plaintiffs. Having satisfied the requirements of Rule 23 and coupled with the fact that each of the other proposed plaintiffs lacks standing to represent an Options Class, Movant believes that it is fitting for the court to appoint him as lead plaintiff for the Options Class. Furthermore, Movant asks the Court to appoint his counsel, Finkelstein, Thompson & Loughran as Lead Counsel for the Options Class.

---

financial integrity of the corporation. *See id.* However, a stockholders class that has equity in the corporation will necessarily consider the impact that various litigation outcomes will have on the integrity of the corporate entity that they own. *See id.*

[8] In *Iridium*, the court found that while the interests of the Common Stock Class and the Noteholders class did not conflict, it was nevertheless incumbent on the court to appoint the subclass representative's counsel to the Executive Committee where the subclass representative had a substantial financial interest in the litigation. *Freeland*, slip op. at 3. Thus, in the alternative to appointing Finkelstein Thompson & Loughran as separate lead counsel, at the very least it would be appropriate for the Court to appoint the firm to the Executive Committee in order to actively look out for the Options Class and its representative's sizable financial interests.

For the foregoing reasons, and as set forth in Movant's opening Memorandum of Law, the Court should deny the other movants' motions to be appointed lead plaintiffs to the extent that they seek to represent the XM Options Class, and should appoint Movant as Lead Plaintiff on behalf of this Class.

Dated: July 17, 2006                FINKELSTEIN, THOMPSON & LOUGHRAN


/S/ DONALD J. ENRIGHT
Donald J. Enright   (D.C. Bar #463007)
Karen J. Marcus    (D.C. Bar #486435)
The Duvall Foundry
1050 30th Street, N.W.
Washington, DC 20007
(202) 337-8000

**Counsel for Movant and Proposed Lead Counsel to the Options Class**

## CERTIFICATE OF SERVICE

I, Sandra Irwin, affirm and attest that on the 17th day of July, 2006, this Memorandum of Law in Support of Ron Price's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel and the accompanying supporting Declaration of Karen J. Marcus were served by first class mail and email upon the following:

Jonathan Cuneo
**Cuneo Gilbert & LaDuca, LLP**
507 C Street, N.E.
Washington, D.C. 20002

Charles E. Davidow
**WILMER CUTLER PICKERING HALE AND DORR LLP**
1875 Pennsylvania Avenue NW
Washington, DC 20006

Steven J. Toll
Joseph Helm
**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
1100 New York Avenue NW
West Tower, Suite 500
Washington, DC 20005-3934

**FORTNEY SCOTT**
Burton J. Fishman
1750 K Street NW
Suite 325
Washington, DC 20006

Gary Edward Mason, Esq.
1225 19th Street
Suite 500
Washington, DC 20036

*Sandra Irwin*
Sandra Irwin