UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re XM SATELLITE RADIO HOLDINGS SECURITIES LITIGATION | ) ) ) | Civil Action No. 1:06-cv-00802-ESH |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | |
| ALL ACTIONS. | ) ) ) | |

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF BOCA RATON FIREFIGHTERS AND POLICE PENSION FUND AND PLUMBERS LOCAL 267 PENSION FUND FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF LEAD COUNSEL

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ..........................................................................................1

II.   ARGUMENT ..............................................................................................................4

    A.    No Movant Has Rebutted the Presumption Afforded to Boca Raton and
        Plumbers Local 267 .......................................................................................4

    B.    The XM Shareholders Group Is a Lawyer-Driven Group That Is
        Inadequate To Serve As Lead Plaintiff ...........................................................7

    C.    The Zarif Group and Barber Have Failed to Demonstrate Their Ability to
        Adequately Represent the Interests of the Class.............................................11

    D.    The Court Should Not Appoint a Separate Lead Plaintiff to Represent
        Purchasers of Options ...................................................................................15

III.  CONCLUSION ..........................................................................................................18

# TABLE OF AUTHORITIES

Page

## CASES

*Ferrari v. Gisch,*
  225 F.R.D. 599 (C.D. Cal. 2004) ........................................................................8

*Freeland v. Iridium World Commun. Ltd.,*
  No. 99-1002 (March 15, 2001) ..........................................................................17

*Hill v. Tribune,*
  Case No. 05 C 2602 (N.D. Ill. Oct. 13, 2005) ..................................................11

*In re Able Laboratories Securities Litigation,*
  425 F. Supp. 2d 562 (D.N.J. 2006) ................................................1, 6, 10, 13

*In re Activision Securities Litigation,*
  Case No. CV-04-01501-PA (C.D. Cal. July 20, 2004)......................................11

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,*
  03 MD 1529 2005 U.S. Dist. LEXIS 19052 (S.D.N.Y. Sept. 1, 2005) .............14

*In re Bank One S'holders Class Actions,*
  96 F. Supp. 2d 780 (N.D. Ill. 2000) ..................................................................11

*In re Cable & Wireless, PLC, Sec. Litig.,*
  217 F.R.D. 372 (E.D. Va. 2003) ........................................................................17

*In re Cendant Corp. Litig.,*
  182 F.R.D. 144 (D.N.J. 1998)..............................................................................3

*In re Donnkenny Inc. Sec. Litig.,*
  171 F.R.D. 156 (S.D.N.Y. 1997) ......................................................................10

*In re Enron Corp. Sec. Litig.,*
  206 F.R.D. 427 (S.D. Tex. 2002)........................................................................8

*In re Fannie Mae Sec. Litig.,*
  355 F. Supp. 2d 261 (D.D.C. 2005)..............................................................4, 14

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.,*
  209 F.R.D. 447 (C.D. Cal. 2002)............................................................3, 8, 9, 10

*In re Initial Pub. Offering Secs. Litig.,*
  214 F.R.D. 117 (S.D.N.Y. 2002) ..................................................................3, 13

**Page**

*In re Microstrategy Sec. Litig.*,
    110 F. Supp. 2d 427 (E.D. Va. 2000) ...............................................................................8

*In re Nanophase Technologies Corporation Litigation*,
    98 C 3450 1999 U.S. Dist. LEXIS 16171 (DHC) (N.D. Ill. Sept. 27, 1999)...............16, 17

*In re Paracelsus Corp.*,
    6 F. Supp. 2d 626 (S.D. Tex. 1998) ................................................................................15

*In re R&G Fin. Corp. Sec. Litig.*,
    No. 05 Civ. 4186 (JES) (S.D.N.Y. July 26, 2006)............................................................7

*In re Razorfish, Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001).............................................................................10

*In re Salomon Analyst Level 3 Litig.*,
    350 F. Supp. 2d 477 (S.D.N.Y. 2004).............................................................................16

*In re Smith Barney Transfer Agent Litigation*,
    05 Civ. 7583, (WHP) 2006 U.S. Dist. LEXIS 19728 (S.D.N.Y. April 17, 2006) .............16

*In re The Mills Corp. Sec. Litig.*,
    Civ No. 1:06-77 (GBL), 2006 U.S. Dist. LEXIS 50485 (E.D. Va. May 30, 2006)...........17

*In re Vaxgen Sec. Litig.,*
    *No. C 03-1129* 2004, U.S. Dist. LEXIS 29812 *(JSW)*(N.D. Cal. Apr. 14, 2004)......8, 9, 10

*Malasky v. IAC/Interactivecorp*,
    No. 04 Civ. 7447 (RJH), 2004 U.S. Dist. LEXIS 25832 (S.D.N.Y. Dec. 20, 2004)...........7

*Model Associates, Inc. v. U. S. Steel Corp.*,
    88 F.R.D. 338 (S.D. Ohio 1980) ....................................................................................15

*Montoya v. Mamma.com Inc.*,
    05 Civ. 2313 (HB) 2005 U.S. Dist. LEXIS 10224 (S.D.N.Y. May 31, 2005)....................7

*Piambino v. Bailey*,
    757 F.2d 1112 (11th Cir. 1985) .....................................................................................17

*Schriver v. Impac Mortg. Holdings, Inc.,*
    *No. SACV 06-31( CJC)*, 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 1, 2006)......3, 8, 9

*Simon v. Westinghouse Electric Corp.*,
    73 F.R.D. 480 (E.D. Pa. 1977).......................................................................................15

**Page**

*Singer v. Nicor, Inc.*,
   No. 02 *C 5168*, 2002 U.S. Dist. LEXIS 19884 (N.D. Ill. Oct. 16, 2002) .........................11

*Switzenbaum v. Orbital Scis. Corp.*,
   187 F.R.D. 246 (E.D. Va. 1999) .........................................................................................8

## STATUTES

15 U.S.C. §78u-4 .................................................................................................... *passim*

Proposed Lead Plaintiffs Boca Raton Firefighters and Police Pension Fund ("Boca Raton") and Plumbers Local 267 Pension Fund ("Plumbers Local 267") respectfully submit this reply memorandum of law in further support of their motion for appointment as Lead Plaintiffs and approval of their selection of Lerach Coughlin Stoia Geller Rudman & Robbins LLP as Lead Counsel and in response to the joint opposition memorandum filed by the Zarif Group and Adam Barber (the "Joint Opposition," with page references to "Joint Opp. at __") and the opposition memorandum filed by Ron Price (page references are to "Price Opp. at __").

## I.    PRELIMINARY STATEMENT

In a transparent attempt to bypass the statutory framework of the Private Securities Litigation Reform Act (the "PSLRA"), two of the five movants who originally filed motions for appointment as lead plaintiff, the Zarif Group and Adam Barber, have now filed a joint opposition, renamed themselves the "XM Shareholders Group" and asked this Court to grant their new "motion" by appointing them as lead plaintiffs and approving of their (new) selection of lead counsel.

What the Zarif Group and Adam Barber are hoping to accomplish with this eleventh-hour tactical reconfiguration is obvious. Their claimed financial interests of $471,671 and $252,000, respectively, as reported in their opening motions, are smaller than the $551,872 financial interest reported by Boca Raton and Plumbers Local 267. Knowing that their individual motions would not be granted, the Zarif Group and Barber joined together in order to now claim a combined larger financial interest.

As a premise for filing their joint opposition, the Zarif Group and Barber borrow language from the only court that they can find that has allowed a post-motion reconfiguration, *In re Able Laboratories Securities Litigation*, 425 F. Supp. 2d 562 (D.N.J. 2006) ("*Able Labs.*"), (albeit under circumstances that differ greatly than those here) and claim that they have "concern" that Boca Raton and Plumbers Local 267, the presumptive lead plaintiff, will not "effectively monitor and

control this litigation." Joint Opp. at 12. Not only do the Zarif Group and Barber fail to explain what the basis for their "concern" is, but the disingenuous nature of this purported "concern" is further evidenced by the fact that the Zarif Group's own counsel, in an unrelated case, had filed a motion for lead plaintiff on behalf of a group of institutional investors, which included Boca Raton, so they knew very well that Boca Raton was capable of effectively monitoring and controlling this litigation and that there was no real "concern" about its serving as lead plaintiff. *See* Reply Declaration of Nancy M. Juda in Further Support of the Motion of Boca Raton Firefighters and Police Pension Fund and Plumbers Local 267 Pension Fund for Appointment as Lead Plaintiff and Approval of their Selection of Lead Counsel, dated July 27, 2006, ("Juda Reply Decl., Ex. __"), Ex. A.

Furthermore, the submissions to date by Boca Raton and Plumbers Local 267 and the Joint Declaration of Mervyn C. Timberlake and Greg Lancette in Support of the Motion of Boca Raton Firefighters and Police Pension Fund and Plumbers Local 267 Pension Fund for Appointment as Lead Plaintiff and Approval of their Selection of Lead Counsel ("Joint Decl. of Timberlake and Lancette"), submitted herewith, evidence that Boca Raton and Plumbers Local 267 are highly sophisticated institutional investors who are committed to vigorously prosecuting this action for the benefit of all class members. *See* Joint Decl. of Timberlake and Lancette, at ¶5. By contrast, the submissions that have been made so far by the Zarif Group and Adam Barber in this case belie any claim that *they* will be able to effectively monitor and control this litigation.

For example, a member of the Zarif Group, Victor Ventimiglia, authorized two separate law firms to file competing motions on his behalf seeking his appointment as lead plaintiff. Then, in their Joint Opposition, the members of the Zarif Group and Barber describe a procedure by which *only one* member of their group will be responsible for litigating this case and for supervising counsel. This procedure is in stark contrast to the PSLRA's requirement that the responsibility of a

lead plaintiff, i.e., *every* lead plaintiff, is to supervise counsel. *See In re Initial Pub. Offering Secs. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002) (stating that "the only responsibility explicitly given to lead plaintiffs by the PSLRA is the power to select and direct class counsel").

Moreover, no explanation has yet been offered as to why the pairing up of the Zarif Group and Barber was necessary at all. If, as they claim, there are "concerns" about the appointment of Boca Raton and Plumbers Local 267, then it would have sufficed for the Zarif Group and Barber to pursue their motions independently. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (stating that the presumption afforded to the presumptive lead plaintiff may be rebutted). It is therefore clear that the true reason for the post-motion grouping was to attempt to generate the largest financial interest in order for the Zarif Group and Barber to be appointed Lead Plaintiff and their counsel to be approved as Lead Counsel.

Reconfigurations of lead plaintiff motions without any plausible explanation, like the new motion of the XM Shareholders Group here, are consistently deemed by courts to be nothing more than the work of lawyers and courts have refused to appoint the reconfigured movants as Lead Plaintiffs. *See Schriver v. Impac Mortg. Holdings, Inc.,* No. SACV 06-31 CJC, 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) (rejecting post-motion reconfiguration of lead plaintiff movants); *see also In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002) (same).

Lastly, the independent effort by Ron Price to be appointed as a lead plaintiff for options purchasers or for his counsel to be appointed as separate counsel for options purchasers should likewise be denied. Contrary to Mr. Price's contention, the lead plaintiff is not required to have standing to assert *all* claims on behalf of *all* members of the class. Rather, the Court-appointed lead plaintiff shall ensure that the interests of all class members are properly protected by plaintiffs with standing at the time of the filing of an amended complaint and not at this early stage. *See In re*

*Cendant Corp. Litig.*, 182 F.R.D. 144, 148 (D.N.J. 1998) ("every warrior in this battle cannot be a general").

For these reasons, and as more fully set forth below, Boca Raton and Plumbers Local 267 represent the largest financial interest of any movant that has a *bona fide* and timely claim for injury as a result of Defendants' fraud. Moreover, Boca Raton and Plumbers Local 267's claims are typical of the rest of the Class and they are adequate to represent those interests. As such, their motion should be granted in full.

## II.    ARGUMENT

### A.    No Movant Has Rebutted the Presumption Afforded to Boca Raton and Plumbers Local 267

The PSLRA provides a presumption of lead plaintiff to the investor who timely files a motion seeking appointment as lead plaintiff, who represents the largest financial interest of all other movants and who is also otherwise adequate and typical. This presumption may be rebutted, however, if another movant can offer "***proof***" that the presumptive lead plaintiff "will not fairly and adequately represent the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *see also In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C. 2005).

Boca Raton and Plumbers Local 267 are the presumptive lead plaintiffs in this action. They are two institutional investors who timely filed motions seeking appointment as lead plaintiff, they represent the largest financial interest of all timely movants and they are otherwise adequate and typical of the rest of the class.

The other movants have ***not*** rebutted this presumption or offered any of the requisite "proof." Instead, the Zarif Group and Barber have joined their two separately-filed, competing motions together out of their purported "concern" that the presumptive lead plaintiff will not "effectively monitor and control this litigation." Joint Opp. at 12. Tellingly, the Zarif Group and Barber never

detail anywhere in their motion what their "concerns" regarding Boca Raton and Plumbers Local 267 are.

Rather, the Zarif Group and Adam Barber describe how their initial contact with each other concerning a joint motion was prompted by concerns about the "backgrounds or qualifications" of Boca Raton and Plumbers Local 267. Joint Opp. at 15. If this was truly the reason for the joinder, the Zarif Group and/or Adam Barber or their counsel should have – but did not – request additional information from counsel for Boca Raton and Plumbers Local 267.[1] Or, the Zarif Group could have consulted its own counsel – Motley Rice[2] – who recently filed a motion seeking the appointment of a group of institutional investors, that included Boca Raton, as lead plaintiff and attested to the exact opposite of what it now claims here. *See* Juda Reply Decl., Ex. A at 12 ("Here, the members of the Institutional Investor Group [including Boca Raton] are adequate representatives of the class. . . . [T]he Institutional Investor Group [including Boca Raton] has taken significant steps which demonstrate it will protect the interests of the class . . . ."). Thus, the Zarif Group and Barber's claim that they lack information regarding Boca Raton's background and experience is patently false.[3]

In a transparent effort to preempt the Court's automatic rejection of its late-hour submission, the XM Shareholder Group lifted language verbatim from *Able Labs.*, in a desperate attempt to persuade the Court that the group's combination is valid as it has "concerns regarding the ability of the Lerach Group movants to effectively monitor and control this litigation in order to achieve the

---

[1]     In *Able Labs.*, the two institutional investors who were ultimately appointed as lead plaintiffs made repeated requests for additional background information from counsel for the individual investor who reported the largest financial interest at the time of the filing of the initial motions. *See* Juda Reply Decl., Ex. B at 4 and 13. No such requests were made here.

[2]     Motley Rice has suspiciously (and without explanation) been removed as a proposed lead counsel and is now only listed on the Joint Opposition as additional counsel for Plaintiff.

[3]     As institutional investors, information about these funds is also readily available in the public domain.

best results possible for the class." Joint Opp. at 15; *compare* Joint Opp. at 15 ("Their initial contact with each other was prompted . . . by concern over the lack of information available on the backgrounds or qualifications of the Lerach Group") *with Able Labs.*, 425 F. Supp. 2d at 569 (declarations submitted by movants noted that "[t]heir initial contact with each other was prompted by their concern over the lack of information available on [movant's] background and experience").

In *Able Labs.*, two large ***institutional investors*** provided the court with signed declarations attesting that "***they***, not their counsel, sought each other out after learning that [the individual with the largest loss] would be the presumptive lead plaintiff." 425 F. Supp. 2d at 569 (emphasis added). Their counsel also "repeatedly stated that it was the institutional investors ***themselves*** who decided to work together." *Id.* (emphasis added). Here, the members of the Zarif Group and Barber do not make any such representations that ***they*** were the ones who sought each other out after the filing of the lead plaintiff motions nor do they attest to any of this in a joint declaration. *See* Joint Opp. at 12 (stating that the joinder was "discussed and approved by the movants themselves," with no mention of who sought out who). Rather, this joining of motions appears to have been done at the direction and instruction of counsel.

And, none of the benefits perceived by the *Able Labs.* court in favor of allowing a post-filing combination are present here. Specifically, the Zarif Group and Barber have not demonstrated that they are experienced fiduciaries with experience in overseeing outside counsel. *See Able Labs.*, 425 F. Supp. 2d at 570 (enumerating various benefits to union of movants including "experience overseeing outside counsel in complex litigation" and "experience serving as lead plaintiff").

Rather than the two sophisticated institutional investors who sought each other out in an effort to protect the class, as was the case in *Able Labs.*, the XM Shareholder Group's ***counsel*** are the ones here who appear to have taken well-considered and calculated actions to enhance ***their*** prospects of being appointed lead counsel. *See Able Labs.*, 425 F. Supp. 2d at 569 ("The Third

Circuit has similarly expressed concern over groups that were created by counsel rather than class members, and directed that, in those situations, 'the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class.'"). (citations omitted) Evidence of this fact is the Declaration of Brock Ketcher which copied the exact "concern" the investors in *Able Labs.* had, and the revised lead counsel "structure" of which the XM Shareholder Group approved, purportedly to efficiently monitor this case.[4]

Thus, the purported "concerns" of the Zarif Group and Barber are unfounded and their lawyer-driven reconfiguration should not be allowed.

**B.    The XM Shareholders Group Is a Lawyer-Driven Group That Is Inadequate To Serve As Lead Plaintiff**

The Joint Opposition evidences that the newly formed XM Shareholders Group is a lawyer-driven group that is not adequate to serve as Lead Plaintiff. Other Courts that have faced similar

---

[4]    The cases cited by the XM Shareholder Group in support of their last-minute aggregation are inapposite to the instant case. Unlike the Zarif Group or Barber, the group of investors which combined in *Montoya v. Mamma.com Inc.*, 05 Civ. 2313 (HB), 2005 U.S. Dist. LEXIS 10224, at *5 (S.D.N.Y. May 31, 2005), already had the largest financial interest in the relief sought by the class at the time that they first filed their opening motions, and thus were not "bootstrapping" themselves together to increase their claimed financial interest as the Zarif Group and Barber are doing here. In *Malasky v. IAC/Interactivecorp*, No. 04 Civ. 7447 (RJH), 2004 U.S. Dist. LEXIS 25832, at *13 (S.D.N.Y. Dec. 20, 2004), the court was concerned that the movant with the largest financial interest, an individual, would not satisfy the adequacy component of Rule 23 because he was not an institution, and utilized its discretion to appoint the institutional investor with the next largest losses in addition to that individual in order to protect the interests of the class. Here, Boca Raton and Plumbers Local 267 are institutions and have the largest financial interest, and as such, the Court is not faced with the same concerns as the *Malasky* court was. Finally, the two institutional investors who joined motions in *In re R&G Fin. Corp. Sec. Litig.*, No. 05 Civ. 4186 (JES) (S.D.N.Y. July 26, 2006) (Ex. B to XM Shareholder Group's Opposition), obviously did not do so in an effort to aggregate their losses since their combined financial interest was still less than another movant whom the court ultimately declined to appoint after concluding that, despite its larger claimed financial interest, it was a net seller of shares during the Class Period.

post-motion combinations have been quick to reject them, especially where no explanation for the reconfiguration is provided.[5]

Most recently, in *Schriver,* 2006 U.S. Dist. LEXIS 40607, at \*25-\*27, the court outright rejected the formation of such a group and denied the motions of both reconfigured movants, stating:

> The Impac/IMH Group provides ***no explanation*** of why its members combined into groups in the first place, ***how*** they plan to coordinate their litigation efforts, or ***why*** the Impac and IMH Groups decided to consolidate.
>
> \*       \*       \*
>
> ***The fact that the decision to combine the Impac and IMH groups was made by the groups' counsel, with no apparent involvement by the group members, does not bode well for the members' ability to supervise their attorneys***. The absence of any evidence of a relation among the nine proposed members, or between the two groups, ***suggests that the purpose of the combination was to secure lead plaintiff status for the group and appointment of lead counsel status for their attorneys***. This lack of relation, combined with the absence of any explanation of how the group intends to conduct discovery or coordinate litigation efforts or strategy, poses a danger that the group will not be cohesive. Moreover, as in *Gemstar*, it is not apparent why the Impac/IMH Group needs to retain two law firms to represent it, either of which would appear to be sufficient in itself. The Court is concerned that this multiplicity of counsel could impede the progress of the litigation, complicate discovery and communication among the parties, and increase the potential for conflict among the plaintiff class. ***In sum, the Court finds that the Impac/IMH Group is not entitled to***

---

5       The Joint Opposition also runs afoul of the strict deadlines imposed by the PSLRA which require that any movant seeking to be appointed lead plaintiff file a motion "no later than 60 days after the notice [informing investors of their opportunity to serve as lead plaintiff] is published." 15 U.S.C. §78u-4(a)(3)(A)(i)(II).  In effect, the Joint Opposition is a newly made motion which has been made after the statutory deadline.  *See In re Vaxgen Sec. Litig.*, No. C 03-1129 (JSW), 2004 U.S. Dist. LEXIS 29812, at \*8 (N.D. Cal. Apr. 14, 2004) ("The PSLRA is unequivocal and allows for no exceptions."); *see also See Ferrari v. Gisch*, 225 F.R.D. 599, 603 (C.D. Cal. 2004) (rejecting as untimely joint memorandum of two movants filed in opposition to other motions after 60-day statutory filing deadline); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455 (S.D. Tex. 2002) (rejecting joint motion filed after 60-day deadline as untimely and explaining that movants "have not shown that their grouping is not a manipulated effort to aggregate larger losses than other proposed Lead Plaintiffs or to cure certain deficiencies"); *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 433 (E.D. Va. 2000) ("A motion filed after the sixty-day period by a person who has not filed a complaint, however, is untimely, and may not, except perhaps in rare circumstances, be considered by a court."); *Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D. 246, 249-50 (E.D. Va. 1999) (rejecting attempt to "bootstrap" additional plaintiff to group of movants in opposition briefing after 60-day deadline expired).

> ***the presumption that it is the most adequate plaintiff because it has not made the required preliminary showing that it would adequately represent the class***.

*Id.* (emphasis added).

Similarly, in *Vaxgen*, 2004 U.S. Dist. LEXIS 29812 at \*8, the court was faced with a set of circumstances very similar to what is now before the Court here. In *Vaxgen*, after the timely filing of motions seeking appointment as lead plaintiffs, the members of one group of investors "reconstituted themselves into [a] newly formed" group. *Id.* at \*12. Similar to the Zarif Group and Barber here, the combination of movants in Vaxgen "made its first appearance on the scene by way of" an opposition memorandum. *Id.* at \*13, n.1. The court, in rejecting this new group, disapprovingly concluded that:

> ***They offer no further reasons for why it would be beneficial to the class for them to collectively act as lead plaintiff***. By contrast, the Court can foresee a number of reasons why this new arrangement would be less than beneficial, not the least of which are the ***shifting memberships and alliances*** resulting in the abandonment of the old group members, ***the failure to provide any explanation regarding how the conflict between the old and the new groups has been resolved***, and finally, ***the appearance that the Group was manufactured in an effort to have its members designated as lead plaintiffs, and more importantly, its counsel designated as class counsel***.

*Id.* at \*15 (emphasis added).

Finally, in *Gemstar*, 209 F.R.D. at 452, the court refused to appoint as lead plaintiff a newly-formed group of movants that claimed to represent the largest loss of all movants, as the Zarif Group and Barber claim to here. The court, in denying the motion of those movants despite their larger claimed losses, reasoned that simply stating that the movants "thoughtfully opted to join together" did not provide "any credible explanation for the group's creation." *Id.* It is worth noting that, in *Gemstar,* the rejected movants represented the largest losses of any movants.

Here as well, the suspect explanation that the Zarif Group and Barber decided that the joining of their motions was necessary because of their purported "concern" about the ability of two institutional investors to adequately represent the interests of the class, Joint Opp. at 15, is not a very

"credible explanation for the group's creation," *Gemstar*, 209 F.R.D. at 452, and in no way explains how it "would be beneficial to the class for them to collectively act as lead plaintiff." *Vaxgen*, 2004 U.S. Dist. LEXIS 29812 at *15.

At bottom, the new grouping appears to be nothing more than the work of lawyers and, as such, is antithetical to the policies underlying the Lead Plaintiff provisions of the PSLRA. *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001) (stating that the PSLRA "contemplates that client-driven litigation will replace lawyer-driven litigation"); *see also In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) (rejecting efforts of counsel to create a group after the 60-day window closed).

The Zarif Group and Barber also contend that the joining of their motions is "not an artifice and the motivation for joinder is not solely to trump the losses of another movant." Joint Opp. at 14.[6] Their failure to provide any explanation for their action, other than to state that "the purpose of this joinder was to ensure that the interests of the class were adequately and properly protected," *Id*. at 15, makes it abundantly clear, however, that there can be no reason to join their motions together other than for the purposes of aggregating the size of their losses and this should not be allowed. *See e.g.*, *Able Labs.*, 425 F. Supp. 2d at 567 ("the Third Circuit disapproves of groups that are created by counsel in an effort to satisfy the largest financial loss requirement"); *see also Razorfish*, 143 F. Supp. 2d at 308 (rejecting motion of a group of investors who were an "artifice[s] cobbled together

---

[6]    The XM Shareholder Group's claim that the "individual members of the XM Shareholder Group likely had losses significantly greater then [sic] individual participants in the Lerach Group funds," Joint Opp. at 4, n.4, is also without merit.  Boca Raton and Plumbers Local 267 are independent entities who are the parties in interest here.  Any speculation about the size of the interests of any beneficiaries of these funds is no different than speculating about the size of the claims by the heirs of the members of the Zarif Group and/or Mr. Barber.  Such information is just irrelevant to the current analysis.

by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff' ").[7]

Accordingly, it is respectfully submitted that the Zarif Group and Barber are inadequate to serve as Lead Plaintiff and their application should be rejected.[8]

### C.    The Zarif Group and Barber Have Failed to Demonstrate Their Ability to Adequately Represent the Interests of the Class

While the Zarif Group and Barber contend that they have concerns about the adequacy of Boca Raton and Plumbers Local 267 to represent the interests of the class, it is actually *their* motions that raise serious questions about *their* adequacy to represent the interests of the class.[9]

---

[7]    Boca Raton and Plumbers Local 267, by contrast, were not cobbled together for the purposes of aggregating their losses. *See* Joint Decl. of Timberlake and Lancette at ¶8 ("Boca Raton and Plumbers Local 267 made an affirmative decision to jointly seek lead plaintiff status, and believe that the class will benefit from their diversity as well as their collective financial and legal resources and experience"). Indeed, even if the losses of all movants are viewed individually, Boca Raton's losses in excess of $375,000 are by far the largest of all of the movants.

[8]    The Zarif Group and Barber claim that counsel for Boca Raton and Plumbers Local 267 have argued in other instances that it is appropriate for courts to appoint a group of lead plaintiffs that was formed after "each movant in the group had initially filed independent Lead Plaintiff motion within the 60-days prescribed by the PSLRA." Joint Opp. at 15, n.9. The two examples provided by the Zarif Group and Barber, *In re Activision Securities Litigation*, Case No. CV-04-01501-PA (C.D. Cal. July 20, 2004) (attached as Exhibit A to the Joint Opp.) and *Hill v. Tribune*, Case No. 05 C 2602 (N.D. Ill. Oct. 13, 2005) (attached as Exhibit C to the Joint Opp.), involved circumstances that differed greatly from those here. In *Activision*, the two competing movants for lead plaintiff were able to resolve their differences through a joint stipulation and there was no opposition to this joinder by any of the other parties to the litigation. Here, the joinder of the motions of the Zarif Group and Barber does not resolve the competing motions since two other competing motions are still actively pending. In *Hill*, the two movants who joined together included the movant who had by far the largest financial interest. Therefore, it was evident that the joinder was not done for the purposes of increasing the movants' claimed financial interest. Here, the only plausible explanation for why the Zarif Group and Barber joined together is to aggregate their claimed financial interests – a tactic frowned upon by all courts to have considered this issue, as explained herein.

[9]    In addition to the concerns raised herein, the arguments previously discussed in opposition, which have not been responded to, should not be overlooked. *See* Memorandum in Further Support of the Motion of Boca Raton and Plumbers Local 267 for Appointment as Lead Plaintiff and Approval of their Selection of Lead Counsel, dated July 17, 2006, at 6-10. When all of these arguments are considered, the motions (and corresponding losses) of both Ventimiglia (for filing

For example, one member of the Zarif Group, Victor Ventimiglia, filed two separate motions seeking the appointment of two law firms as lead counsel. *See* Declaration of Gary E. Mason in Support of the Motion of Victor Ventimiglia for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, dated July 3, 2006 ("Mason Decl."); Declaration of Lewis S. Kahn in Support of the Motion of the Zarif Group to be Appointed Lead Plaintiff and Approve Lead Plaintiff's Choice of Counsel, dated July 3, 2006 ("Kahn Decl."). Other than the Zarif Group's claim that the other motion was "unauthorized," Joint Opp. at 2, n.2, there is no evidence in the record to support this claim. In fact, the motion that was filed by Mr. Ventimiglia alone contained a certification dated May 17, 2006 that explicitly states that he authorizes "the filing of an amended complaint or a motion for lead plaintiff" on his behalf." Mason Decl., Exhibit B. The motion filed by Mr. Ventimiglia as part of the Zarif Group, dated five days later on May 22, 2006, contains no specific authorization for any counsel to file a motion on his behalf. Kahn Decl., Ex. A. Accordingly, if any of the motions filed by Mr. Ventimiglia are "unauthorized," it would appear that it would be the one filed as part of the Zarif Group.[10]

In support of their Joint Opposition, the Zarif Group and Barber also submitted a copy of the XM Shareholder Group Bylaws (the "Bylaws") and the Declaration of Brock Ketcher, one of the members of the Zarif Group. Each one of these submissions raises questions that further cloud the motion of the Zarif Group and Barber. In the Bylaws, the Zarif Group and Barber state that fifty

competing motions against himself), *see Singer v. Nicor, Inc.,* No. 02 C 5168, 2002 U.S. Dist. LEXIS 19884, at *7 (N.D. Ill. Oct. 16, 2002)*, and Barber (who defendants will likely attack as being a day-trader), *see In re Bank One S'holders Class Actions,* 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000) , should be denied (and their losses excluded) and Boca Raton and Plumbers Local 267 still retain the largest financial interest.

[10]    Counsel for the Zarif Group claim that Mr. Ventimiglia "intends to file a separate declaration stating his position on this matter," Joint Opp. at 2, n.2. No explanation is provided as to why this declaration has not yet been filed, which is especially troubling given that Mr. Ventimiglia appears to have been able to make the time to sign the Bylaws included with the Joint Opposition.

percent of their group "shall constitute a quorum for the transaction of business at a meeting of the members. For any action to be taken, a minimum of seventy five percent of members must concur." Bylaws at 5.03. The Bylaws further state that the group shall be governed by a board of directors, consisting of a President and Secretary who, in this instance, happen to be the same person – Brock Ketcher. *Id*. at 6.02 and 7.01. None of the other members of the Zarif Group or Barber are listed as being on the board of directors or as having any active part in the XM Shareholders Group. Moreover, pursuant to the Bylaws, only an officer of the board of directors, *i.e.* Brock Ketcher, is responsible for working directly with counsel. Similarly, the Declaration of Brock Ketcher provides that "to the extent necessary, a ***representative*** of the XM shareholders Group will attend hearings and trial." *Id*. at 3 (emphasis added). The supervision of counsel, however, is the responsibility of ***every*** lead plaintiff. *See Initial Pub. Offering*, 214 F.R.D. at 123 (emphasis added) (stating that "the only responsibility explicitly given to lead plaintiffs by the PSLRA is the power to select and ***direct*** class counsel").[11]

Thus, it is not clear what role, if any, the other proposed lead plaintiffs intend to play in this case other than to lend the size of their financial interest to Mr. Ketcher in an effort to have him appointed as a lead plaintiff. *See Able Labs.*, 425 F. Supp. 2d at 567 ("the Third Circuit disapproves of groups that are created by counsel in an effort to satisfy the largest financial loss requirement").

Based on a review of these Bylaws and the Declaration of Brock Ketcher, it appears that the remaining members of the Zarif Group and Barber do not intend to vigorously prosecute this action and supervise their counsel, as they would be obligated to if appointed as lead plaintiffs.

---

[11]    Brock's representation in his declaration that "***Based on counsel's advice***, I will direct counsel," Brock Declaration at 2-3 (emphasis added), raises further questions about who is directing this litigation for the Zarif Group and Barber.

The Zarif Group and Barber also claim that, despite experience in serving as fiduciaries, no preference should be given to institutional investors seeking to be appointed as lead plaintiffs in this litigation. Joint Opp. at 5-6. Boca Raton and Plumbers Local 267, however, have never claimed that their motion should be granted simply because they are institutional investors. Rather, the fact that, in addition to representing the largest financial interest, they are also institutional investors, should provide comfort to the Court in satisfying the intent of Congress in appointing institutional investors as lead plaintiffs. *See* House Conf. Rep. No. 104-369, 104th Cong. 1st Sess. at 34 (1995) (stating that the legislative history of the PSLRA demonstrates the clear Congressional intent "to increase the likelihood that institutional investors will serve as lead plaintiffs"); *see also In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 03 MD 1529 (LMM), 2005 U.S. Dist. LEXIS 19052, at *4-*6 (S.D.N.Y. Sept. 1, 2005); *Fannie Mae*, 355 F. Supp 2d at 265 (appointing two pension funds as lead plaintiffs).

Moreover, in one of the numerous solicitation notices[12] issued by the law firm of Kahn Gauthier & Swick, LLC ("KGS"), proposed lead counsel for the Zarif Group and Barber, counsel explicitly advised that "Institutional investors are strongly encouraged to move for lead plaintiff status." *See* Juda Reply Decl., Ex. C. Thus, to now claim that they are "concerned" about the ability of two institutional investors to properly monitor this litigation is wholly disingenuous.

Despite all of these issues that they knew would be raised by the joining of their two motions, the Zarif Group and Barber nevertheless represented that:

> no movant has rebutted [their] presumption and no evidence has been offered to
> show that the XM Shareholder Group will not fairly and adequately represent the

---

12    These notices were clearly designed to solicit clients to participate in this litigation and were not the statutory notices required by the PSLRA, 15 U.S.C. §78u-4(a)(3)(A), since the KGS law firm is not listed as counsel on any of the complaints filed in these related actions. Consequently, it is very possible that members of the Zarif Group retained their counsel in response to these notices and are thereby tainted under the doctrine of "fruit of the poisonous tree."

interests of the class.  Similarly, no competing movant has offered any proof that the interest of the XM Shareholder Group or any of its members is antagonistic to, or in conflict with, the interests of the proposed class it seeks to represent.

Joint Opp. at 5.

These representations are obviously premature and inappropriate as the existence of the XM Shareholders Group was only first disclosed in that same brief and did not provide the other movants with an opportunity to respond to this new reconfiguration.  These representations also fail to address the arguments raised in the opposition memoranda filed by the competing movants on July 17, 2006.[13]

Accordingly, the joinder of the motions of the Zarif Group and Barber appear to be nothing more than an aggregation by counsel for the sole purpose of representing the largest financial interest.  The new group's submissions, however, make clear that its members do not intend to participate in this case in any meaningful way and, accordingly, their motions should be denied.

**D.    The Court Should Not Appoint a Separate Lead Plaintiff to Represent Purchasers of Options**

Ron Price encourages this court to create an options subclass limited to purchasers of call options contracts.  *See* Price Opp. at 3.  In support of his argument, Price claims that a "lead plaintiff in securities litigation . . . must have standing to assert claims for [a class] which they seek to represent."[14]  Price Opp. at 2.  As stated previously, this is not the law.

---

[13]    The Zarif Group and Barber further claim that the Zarif Group's decision to allow Barber to join their motion "is evidence in and of itself of the XM Shareholder Group and its member's commitment to the active management and oversight of this litigation."  Joint Opp. at 5, n.5.  Aside from not explaining how this decision evidences anything, the Zarif Group has not offered any explanation as to why it was necessary for Barber to join their motion in the first instance.

[14]    The cases cited by Price, *Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480 (E.D. Pa. 1977), *Model Associates, Inc. v. U. S. Steel Corp.*, 88 F.R.D. 338 (S.D. Ohio 1980), and *In re Paracelsus Corp.*, 6 F. Supp. 2d 626 (S.D. Tex. 1998), are inapposite because they concerned standing to bring these claims for **named** plaintiffs in a later-filed consolidated complaint and not **lead** plaintiffs at this early stage of the litigation.

"Nothing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims that may be made on behalf of all of the potential classes and subclasses of holders of different categories of security at issue in the case." *In re Smith Barney Transfer Agent Litigation*, 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728, at *10-*12 (S.D.N.Y. April 17, 2006); *see also In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004) (stating that "lead plaintiffs, appointed pursuant to the PSLRA, need not satisfy all elements of standing with respect to the entire lawsuit"). "Lead plaintiffs [need] only to prove that they suffered *a* concrete injury because of defendants" wrongdoing, not *every* injury alleged by the class." *In re Leapfrog Enters., Inc. Sec. Litig.*, No. 03 Civ. 5421 (RMW), 2005 U.S. Dist. LEXIS 40994 (N.D. Cal. Nov. 23, 2005). Accordingly, it is premature to address the standing issue on the current motions. *See Yates v. Open Joint Stock Co. "Vimpel-Communications"*, No. 04 Civ. 9742 (NRB), 2005 U.S. Dist. LEXIS 7717, at *6-7 (S.D.N.Y. Apr. 29, 2005) ("Defendants' arguments [that the lead plaintiff applicant lacked standing] are properly addressed at the class certification stage, not in the context of a motion to appoint lead counsel.").[15]

The few cases relied on by Price, in which courts have appointed multiple lead plaintiffs to represent the interests of the class, are readily distinguishable. In *In re Nanophase Technologies Corporation Litigation*, 98 C 3450 (DHC), 1999 U.S. Dist. LEXIS 16171 (N.D. Ill. Sept. 27, 1999), the court expressly stated that the two separate classes needed separate representation because each class would be claiming reliance on representations that were unique to them. *See id*. at *17 ("while the Paskowitz plaintiffs will rely upon the registration statement and the prospectus, the Harbour

---

[15]    Price argues that there is a conflict of interest between the stockholder class and the options class because the stockholder class will "consider the impact that various litigation outcomes will have on the integrity of the corporate entity that they own." Price Opp. at 10-11, n.7. By that analogy, no class would ever be certified since holders of a company's stock would always have conflicts with those class members who no longer own shares in the company.

Court plaintiffs will also use the Written Consent solicitation and the Consent letter"). No such claim has been made here by Mr. Price. Moreover, the planitiffs that were seeking separate representation in *Nanophase* had filed a complaint for those separate claims. Here, no complaint has been filed by anyone specifically on behalf of options purchasers.

In *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 379 (E.D. Va. 2003), also relied on by Price, the court *sua sponte* appointed two competing movants as lead plaintiffs because of its concern that the movant with the largest financial interest was a foreign investor who might have been subject to unique defenses on that basis. There is no such concern here.

Recognizing the weakness in its position, counsel for Price alternatively argues that, at the very least, this Court should appoint it as separate counsel for options purchasers. To support this argument, Price's counsel relies on two cases, each one of which is inapposite. In *Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985), the court, in a footnote, expressed its concern that a separate counsel should have been appointed ***after*** the lead counsel took adverse actions against a part of the class. *Id.* at 1145, n.88. Here, Price has not shown any adverse action taken by Boca Raton and Plumbers Local 267, or for that matter any other lead plaintiff movant, against options purchasers.

Similarly, in *Freeland v. Iridium World Commun. Ltd.*, No. 99-1002, slip. op. (March 15, 2001) (attached as Ex. 1 to the Decl. of Karen J. Marcus), the Court rejected the motion to appoint a separate lead plaintiff for notes and stock purchasers based on a purported conflict of interest between the common stock Class and the noteholders class and only appointed the noteholder's counsel as a member of the executive committee specifically because it represented "notes purchasers with a substantial financial interest in this litigation." *Id.* at *3. Here, Mr. Price lost approximately $13,000 – far from "substantial," when compared to the $551,872.73 loss sustained by Boca Raton and Plumbers Local 267. *See also In re The Mills Corp. Sec. Litig.*, Civ No. 1:06-77

(GBL), 2006 U.S. Dist. LEXIS 50485 at *12 (E.D. Va. May 30, 2006) (refusing to appoint a preferred stock owner as co-lead plaintiff "because his financial interest is relatively small").[16]

For these reasons, Ron Price's motion seeking the creation of a subclass or a leadership role for his counsel should be denied.

## III.    CONCLUSION

For all the foregoing reasons, Boca Raton and Plumbers Local 267 respectfully request that the Court: (i) appoint them as Lead Plaintiffs in the related Actions; (ii) approve their selection of Lead Counsel; and (iii) grant such other relief as the Court may deem just and proper.

DATED:  July 27, 2006                     LERACH COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                          NANCY M. JUDA (DC Bar # 445487)


                                          _____
                                                /s/ Nancy M. Juda
                                              NANCY M. JUDA

                                          1100 Connecticut Avenue, N.W., Suite 730
                                          Washington, DC  20036
                                          Telephone:  202/822-6762
                                          202/828-8528 (fax)

                                          LERACH COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                          SAMUEL H. RUDMAN
                                          DAVID A. ROSENFELD
                                          MARIO ALBA, JR.
                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)

                                          [Proposed] Lead Counsel for Plaintiffs

---

[16]    Price also claims that the Zarif Group and Boca Raton and Plumbers Local 267 improperly used a longer class period that "was not noticed." Price Opp. at 8.  Price is wrong.  The notice announcing the expanded class period in these related actions was properly published by counsel for plaintiff in the action captioned *Robert Martin v. XM Satellite Radio Holdings, Inc.*, 06-cv-01209-ESH, on June 30, 2006.  *See* Juda Reply Decl., Ex. D.

LAW OFFICES BERNARD M.
  GROSS, P.C.
DEBORAH R. GROSS
Wanamaker Bldg., Suite 450
100 Penn Square East
Philadelphia, PA  19107
Telephone:  215/561-3600
215/561-3000 (fax)

Additional Counsel for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on July 27, 2006, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send notification of such filing to the e-mail

addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

participants indicated on the attached Manual Notice List.


                                                 s/ DAVID A. ROSENFELD
                                            DAVID A. ROSENFELD
                                            LERACH COUGHLIN STOIA GELLER
                                                 RUDMAN & ROBBINS LLP
                                            58 South Service Road, Suite 200
                                            Melville, NY  11747
                                            Telephone:  631/367-7100
                                            631/367-1173 (fax)
                                            E-mail:DRosenfeld@lerachlaw.com

# Mailing Information for a Case 1:06-cv-00802-ESH

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kimberly Anne Chadwick**
  kchadwick@dsp-law.com

- **Jonathan Watson Cuneo**
  jonc@cuneolaw.com

- **Charles Edward Davidow**
  charles.davidow@wilmerhale.com

- **Donald J. Enright**
  dje@ftllaw.com

- **Burton John Fishman**
  bfishman@fortneyscott.com

- **Nancy M. Juda**
  nancyj@lerachlaw.com

- **Karen Jennifer Marcus**
  kjm@ftllaw.com

- **Gary Edward Mason**
  gmason@masonlawdc.com nmigliaccio@masonlawdc.com;mdicocco@masonlawdc.com

- **Michael A Mugmon**
  michael.mugmon@wilmerhale.com

- **Arthur L. Shingler, III**
  ashingler@scott-scott.com

- **Daniel S. Sommers**
  dsommers@cmht.com

- **Steven J. Toll**
  stoll@cmht.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
ROBERT MARTIN
```

**Service List – Additional Parties**

Deborah R. Gross
Robert P. Frutkin
**Law Offices of Bernard M. Gross, P.C.**
100 Penn Square East, Suite 450
Wanamaker Bldg.
Philadelphia, PA 19107
215/561-3600
215/561-3000 (fax)

Stuart J. Guber
James M. Evangelista
**Motley Rice LLC**
One Georgia Center
600 West Peachtree Street, Suite 800
Atlanta, GA 30308
404/201-6900

Lewis S. Kahn
Michael A. Swick
**Kahn Gauthier Swick, LLC**
650 Poydras St., Suite 2150
New Orleans, Louisiana 70130
504/455-1400
504/455-1498 (Fax)

Robert Sugarman
**Sugarman and Susskind**
2801 Ponce De Leon, Suite 750
Coral Gables, FL 33134
305/529-2801
305/447-8115 (fax)