UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re XM SATELLITE RADIO HOLDINGS SECURITIES LITIGATION | ) ) ) | Civil Action No. 1:06-cv-00802-ESH |
| | ) | <u>CLASS ACTION</u> |
| | ) | |
| This Document Relates To: | ) | |
| | ) | |
| ALL ACTIONS. | ) | |
| | ) | |

REPLY DECLARATION OF NANCY M. JUDA IN FURTHER SUPPORT OF THE
MOTION OF BOCA RATON FIREFIGHTERS AND POLICE PENSION FUND AND
PLUMBERS LOCAL 267 PENSION FUND FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF SELECTION OF LEAD COUNSEL

Nancy M. Juda, declares, under penalty of perjury:

1.      I am a member of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin").  I submit this reply declaration in further support of the motion of Boca Raton Firefighters and Police Pension Fund ("Boca Raton") and Plumbers Local 267 Pension Fund ("Plumbers Local 267") for Appointment as Lead Plaintiffs and for Approval of Selection of Lead Counsel.

2.      Attached hereto as Exhibit A is a true and accurate copy of the Memorandum In Support of The Institutional Investor Group for Consolidation, Appointment as Lead Plaintiff and for Approval of Selection of Lead Counsel, dated April 17, 2006, filed in *Argento Trading Company L.P. v. Coca Cola Enterprises, Inc.*, Civil Action No. 1:06-cv-0275-TWT (N.D. Ga.).

3.      Attached hereto as Exhibit B is a true and accurate copy of the Joint Memorandum of Law by Deka International (Ireland) Limited and the Denver Employees Retirement Plan in Support of Their Appointment as Co-Lead Plaintiffs and In Opposition to All Competing Motions for Appointment as Lead Plaintiff, dated August 29, 2005, filed in *Chaim Lodish v. Able Laboratories, Inc.*, Civil Action No. 2:05-cv-02681-JAG (D.N.J.)

4.      Attached hereto as Exhibit C are true and accurate copies of the notices published by Kahn Gaulthier Swick, LLC on *PrimeZone Media Network,* a national, business-oriented newswire service, on May 11, 2006 and May 24, 2006.

5.      Attached hereto as Exhibit D is a true and accurate copy of the notice published by Schatz & Nobel, P.C. on *PrimeZone Media Network,* a national, business-oriented newswire service, on June 30, 2006.

DATED:  July 27, 2006

                                                            */s/ Nancy M. Juda*
                                            NANCY M. JUDA (DC Bar # 445487)

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ───────────────────────── x | |
| ARGENTO TRADING COMPANY L.P., On Behalf of Itself and All Others Similarly Situated, | : Civil Action No. 1:06-CV-0275-TWT |
| | : <u>CLASS ACTION</u> |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| COCA-COLA ENTERPRISES, INC., et al., | : |
| | : |
| Defendants. | : |
| ───────────────────────── x | |

[Caption continued on following page.]

MEMORANDUM IN SUPPORT OF THE MOTION OF
THE INSTITUTIONAL INVESTOR GROUP FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF
SELECTION OF LEAD COUNSEL

|   |   |   |
|---|---|---|
| ———————————— | x |   |
| BELLUR RAMANATH, As Custodian for MADHU RAMANATH – UTMA TX, On Behalf of Plaintiff and All Others Similarly Situated, | : | Civil Action No. 1:06-CV-0765-TWT |
|   | : | <u>CLASS ACTION</u> |
|   | : |   |
| Plaintiff, | : |   |
|   | : |   |
| vs. | : |   |
|   | : |   |
| COCA-COLA ENTERPRISES, INC., et al., | : |   |
|   | : |   |
| Defendants. | : |   |
| ———————————— | x |   |

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ..................................................................1

II.  FACTUAL BACKGROUND ......................................................................3

III.  ARGUMENT ...............................................................................................4

    A.  THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL
        PURPOSES ........................................................................................4

    B.  THE INSTITUTIONAL INVESTOR GROUP SHOULD BE
        APPOINTED LEAD PLAINTIFF .......................................................5

        1.  The Procedure Required by the PSLRA ...................................5

        2.  The Institutional Investor Group Satisfies the "Lead
            Plaintiff" Requirements of the Exchange Act...........................7

            a.  The Institutional Investor Group Has Complied
                with the Exchange Act and Should Be Appointed
                Lead Plaintiff .................................................................7

            b.  The Institutional Investor Group Is Precisely the
                Type of Lead Plaintiff Congress Envisioned When
                It Passed the PSLRA........................................................8

            c.  The Institutional Investor Group Has the Requisite
                Financial Interest In the Relief Sought by the Class ........9

            d.  The Institutional Investor Group Otherwise
                Satisfies Rule 23 .............................................................9

    C.  THE COURT SHOULD APPROVE THE INSTITUTIONAL
        INVESTOR GROUP'S CHOICE OF COUNSEL .............................13

IV.  CONCLUSION...........................................................................................15

# TABLE OF AUTHORITIES

Page

## CASES

*Argento Trading Company L.P. v. Coca-Cola Enterprises, Inc. et al.*,
Civil Action No. 1:06-cv-00275-TWT ..........................................................3, 5

*Ferrari v. Impath, Inc.*,
No. 03 Civ. 5667, 2004 U.S. Dist. LEXIS 13898
(S.D.N.Y. July 15, 2004) ................................................................................2

*Foderaro v. Partsbase.com, Inc.*,
No. 01-8319-CIV, 2001 WL 34092703
(S.D. Fla. June 25, 2001) ..............................................................................10

*Greebel v. FTP Software*,
939 F. Supp. 57 (D. Mass. 1996)....................................................................6

*Hargett v. Valley Fed. Savings Bank*,
60 F.3d 754 (11th Cir. 1995) ..........................................................................4

*In re AFC Enters. Sec. Litig.*,
Civil Action No. 1:03-CV-817-TWT (N.D. Ga.)...........................................14

*In re Enron Corp., Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002) ..................................................................13

*In re Global Crossing Sec. & ERISA Litig.*,
No. 02 MD 1472, 2004 U.S. Dist. LEXIS 23946
(S.D.N.Y. Nov. 23, 2004)..............................................................................12

*In re JDN Realty Sec. Litig.*,
Civil Action No. 1:00-CV-0396-RWS (N.D. Ga.).........................................14

*In re Providian Fin. Corp. Sec. Litig.*,
Master File No. C-01-3952-CRB (N.D. Ca.) .................................................14

**Page**

*In re Serologicals Corp. Sec. Litig.*,
　　No. 1:00-CV-1025-CAP (N.D. Ga. Aug. 7, 2000)........................................14

*Johnson v. Celotex Corp.*,
　　899 F.2d 1281 (2nd Cir. 1990) .......................................................................4

*Kennedy v. Tallant*,
　　710 F.2d 711 (11th Cir. 1983) ......................................................................10

*Kirkpatrick v. J.C. Bradford & Co.*,
　　827 F.2d 718 (11th Cir. 1987) ........................................................10, 11, 12

*Lax v. First Merchants Acceptance Corp.*,
　　No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866
　　(N.D. Ill. Aug. 6, 1997) ................................................................................10

*Phillips v. Joint Legislative Comm. on Performance and
　　Expenditure Review*,
　　637 F.2d 1014 (5th Cir. 1981) ......................................................................11

*Rossini v. Ogilvy & Mather, Inc.*,
　　798 F.2d 590 (2d Cir. 1986) .........................................................................10

*Sofran v. Labranche & Co.*,
　　220 F.R.D. 398 (S.D.N.Y. 2004) ..................................................................11

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
　　§78(j)(b) ............................................................................... *passim*
　　§78u-4(a)............................................................................... *passim*

Federal Rules of Civil Procedure

**Page**

Rule 42(a) ..................................................................................4
Rule 10b-5 .................................................................................1
Rule 23 ............................................................................ *passim*

17 C.F.R.
    §240.10b-5 ..........................................................................1

## SECONDARY AUTHORITY

H.R. Conf. Rep. No. 104-369, at 34 (1995),
    reprinted in 1995 U.S.C.C.A.N. 679, 733 ......................................8

## I.      PRELIMINARY STATEMENT

Presently pending before this Court are at least two-related securities class action lawsuits (the "Actions") brought on behalf of all those who purchased or otherwise acquired Coca-Cola Enterprises, Inc. ("CCE" or the "Company") shares between October 15, 2003, and July 28, 2004, inclusive (the "Class Period") and allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Institutional Investors Argento Trading Company L.P., Boca Raton Firefighters' and Police Pension Fund and Southwest Carpenters Pension Trust (collectively, the "Institutional Investor Group") hereby move this Court for an Order to: (i) consolidate the Actions; (ii) appoint the Institutional Investor Group as Lead Plaintiff in the Actions under Section 21D(a)(3)(B) of the Exchange Act; and (iii) approve the Institutional Investor Group's selection of the law firms of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") and Motley Rice LLC ("Motley Rice") to serve as Lead Counsel.

This motion is made on the grounds that the Institutional Investor Group is the most adequate plaintiff, as defined by the PSLRA.  The members of the Institutional

Investor Group are precisely the type of institutional investors that Congress sought to summon and empower when it enacted the PSLRA. *See Ferrari v. Impath, Inc.*, No. 03 Civ. 5667, 2004 U.S. Dist. LEXIS 13898, *10 (S.D.N.Y. July 15, 2004) (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as lead plaintiffs). Moreover, as an institutional investor, the members of the Institutional Investor Group are accustomed to acting as fiduciaries and their experience in legal and financial matters will substantially benefit the class.

The Institutional Investor Group collectively suffered losses of approximately $429,998.81 in connection with its purchases of thousands of CCE shares during the Class Period. *See* Worley Decl. Ex. B.[1] To the best of our knowledge, this is the greatest loss sustained by any moving class member or class member group who has brought suit or filed an application to serve as Lead Plaintiff in these Actions. In addition, the Institutional Investor Group, for the purposes of this motion, adequately satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the putative class and that it will fairly and adequately represent the interests of the class.

---

[1] References to the "Worley Decl. Ex. ___" are to the exhibits attached to the accompanying Declaration of David J. Worley dated April 17, 2006, and submitted herewith.

## II.    FACTUAL BACKGROUND[2]

CCE is the world's largest marketer, producer and distributor of products of The Coca-Cola Company.

The Complaint alleges that defendants violated the Securities Exchange Act of 1934 by failing to disclose to the investing public that CCE had a longstanding and systemic practice of channel stuffing, forcing extra product onto its customers to boost revenue. *See* Complaint, ¶¶3, 37, 40, 42. CCE's reported financial results and future earnings prospects were materially misleading without disclosure of CCE's channel stuffing practices and how those practices affected CCE's financial condition. *See id*. at ¶¶2-3, 37. The complaint also alleges that CCE's channel stuffing resulted in the improper recognition of revenue in violation of generally accepted accounting principles. *See id*. at ¶¶5, 42.

On July 29, 2004, CCE made a partial corrective disclosure regarding CCE's true financial condition and diminished its future earnings prospects. On this news, CCE's stock price fell by approximately 25% or $5 per share. *See id*. at ¶¶6, 8.

---

[2]    These facts are drawn from the allegations in the complaint entitled *Argento Trading Company L.P. v. Coca-Cola Enterprises, Inc. et al.*, Civil Action No. 1:06-cv-00275-TWT (the "*Argento* Action" or "Complaint").

## III.   ARGUMENT

### A.   THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Under Rule 42(a), this Court has broad discretion to consolidate cases pending within its district.  *See Hargett v. Valley Fed. Savings Bank*, 60 F.3d 754, 765 (11th Cir. 1995).  The Actions each assert class claims on behalf of the purchasers of CCE shares for alleged violations of the Exchange Act during the relevant time period.  The Actions name the same defendants and involve the same factual and legal issues.  They are each brought by investors who purchased CCE shares during the relevant time period in reliance on the integrity of the market for such securities and were injured by the fraud on the market that was perpetrated through the issuance of materially false and misleading statements and concealment of material information, thus artificially inflating the prices of CCE securities at all relevant times.  Consolidation is appropriate where there are actions involving common questions of law or fact.  Fed. R. Civ. P. 42 (a).  *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2nd Cir. 1990).  That test is met here and, accordingly, the Actions should be consolidated.

**B.     THE INSTITUTIONAL INVESTOR GROUP SHOULD
BE APPOINTED LEAD PLAINTIFF**

**1.     The Procedure Required by the PSLRA**

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Securities Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. §78u-4(a)(3)(A)(i).  Plaintiff in the *Argento* Action caused the first notice regarding the pendency of these actions to be published on *Business Wire*, a national, business-oriented newswire service, on February 16, 2006.  *See* Worley Decl. Ex. A.[3]  Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  15 U.S.C. §§78u-4(a)(3)(A) and (B).

---

[3]     On February 21, 2006, a corrected notice was issued correcting the deadline by which the motions for lead plaintiff should be filed.  *See* Worley Decl. Ex. A.

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members.  15 U.S.C. §78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### 2. The Institutional Investor Group Satisfies the "Lead Plaintiff" Requirements of the Exchange Act

#### a. The Institutional Investor Group Has Complied with the Exchange Act and Should Be Appointed Lead Plaintiff

The time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on April 17, 2006. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on February 16, 2006), the Institutional Investor Group timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

The members of the Institutional Investor Group have duly signed and filed certifications stating that they are willing to serve as representative parties on behalf of the class. *See* Worley Decl. Ex. C. In addition, the Institutional Investor Group has selected and retained competent counsel to represent them and the class. *See* Worley Decl. Exs. D-E. Accordingly, the Institutional Investor Group has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and selection of Lead Counsel as set forth herein, considered and approved by the Court.

### b. The Institutional Investor Group Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA

The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. The members of the Institutional Investor Group, as institutional investors, are precisely the type of lead plaintiff Congress envisioned when it passed the PSLRA. *See id.* ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.").

### c. The Institutional Investor Group Has the Requisite Financial Interest In the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, the accompanying signed certifications, *see* Worley Decl. Ex. C, the Institutional Investor Group purchased thousands of CCE shares in reliance upon the materially false and misleading statements issued by the defendants and were injured thereby. In addition, the Institutional Investor Group incurred a substantial $429,998.81 loss on its transactions in CCE shares. The Institutional Investor Group thus has a significant financial interest in this case. Therefore, the Institutional Investor Group satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### d. The Institutional Investor Group Otherwise Satisfies Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Lax v. First Merchants Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866 at *20, (N.D. Ill. Aug. 6, 1997). The Institutional Investor Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722-25 (11th Cir. 1987); *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983); *Foderaro v. Partsbase.com, Inc.*, No. 01-8319-CIV, 2001 WL 34092703, at *2 (S.D. Fla. June 25, 2001); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class

representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Phillips v. Joint Legislative Comm. on Performance and Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981); *Sofran v. Labranche & Co.,* 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact"). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Phillips*, 637 F.2d at 1024; *Impath,* 2004 U.S. Dist. LEXIS 13898, at *18.

The members of the Institutional Investor Group satisfy this requirement because, just like all other class members, they: (1) purchased CCE shares during the Class Period; (2) purchased CCE shares in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. Thus, the Institutional Investor Group's claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." *See Kirkpatrick*, 827 F.2d at 722-725. The PSLRA

- 11 -

directs this Court to limit its inquiry regarding the adequacy of the Institutional Investor Group to represent the class to the existence of any conflicts between the interest of the Institutional Investor Group and the members of the class. The Court must evaluate adequacy of representation by considering: (i) whether the class representatives' claims conflict with those of the class; and (ii) whether class counsel is qualified, experienced, and generally able to conduct the litigation. *See Kirkpatrick*, 827 F.2d at 726; *In re Global Crossing Sec. & ERISA Litig.*, No. 02 MD 1472, 2004 U.S. Dist. LEXIS 23946, *53 (S.D.N.Y. Nov. 23, 2004).

Here, the members of the Institutional Investor Group are adequate representatives of the class. As evidenced by the injuries suffered by the Institutional Investor Group, who purchased CCE shares at prices allegedly artificially inflated by defendants' materially false and misleading statements, the interests of the Institutional Investor Group are clearly aligned with the members of the class, and there is no evidence of any antagonism between the Institutional Investor Group's interests and those of the other members of the class. Further, the Institutional Investor Group has taken significant steps which demonstrate it will protect the interests of the class: it has retained competent and experienced counsel to prosecute these claims. In addition, as shown below, the Institutional Investor Group's proposed Lead Counsel are highly qualified, experienced and able to conduct this complex

litigation in a professional manner.  Thus, the Institutional Investor Group *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### C.   THE COURT SHOULD APPROVE THE INSTITUTIONAL INVESTOR GROUP'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. In that regard, the Institutional Investor Group has selected the law firms of Lerach Coughlin and Motley Rice as Lead Counsel, firms which have substantial experience in the prosecution of shareholder and securities class actions.  *See* Worley Decl. Exs. D-E.  Indeed, Lerach Coughlin has been appointed as lead counsel in landmark class actions, including *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002).  In approving the lead plaintiff's choice of Lerach Coughlin as sole lead counsel in *Enron*, the Honorable Melinda Harmon found that "the submissions of [Lerach Coughlin] stand out in the breadth and depth of its research and insight." *Enron*, 206 F.R.D. at 458.

The Institutional Investor Group has also selected Motley Rice, which opened an Atlanta office that focuses primarily on securities class action litigation on February 16, 2006.  Motley Rice's Atlanta office is led by four partners, each of

whom has substantial experience litigating securities class actions.[4]  A listing of cases in which these Motley Rice attorneys managed or played major roles in the litigation while their former firms acted as lead or co-lead counsel is set forth at pages 6-7 of Exhibit E to the Worley Decl.  Some of Motley Rice's experience litigating other types of complex class litigation is also set forth at pages 1-5, 8 of Exhibit E to the Worley Decl.

Moreover, the Institutional Investor Group's choice of counsel includes a local law firm, which promotes the efficient conduct of this litigation.  *See, e.g., In re Serologicals Corp. Sec. Litig.,* No. 1:00-CV-1025-CAP, slip op. at 4 (N.D. Ga. Aug. 7, 2000) (*see* Worley Decl. Ex. F) (inclusion of an Atlanta firm in leadership structure promotes the efficient conduct of the litigation.).  Accordingly, the Court should approve the Institutional Investor Group's selection of counsel.

---

[4]     The partners' experience includes the recently settled *In re AFC Enters. Sec. Litig.*, Civil Action No. 1:03-CV-817-TWT (N.D. Ga.), *In re JDN Realty Sec. Litig.*, Civil Action No. 1:00-CV-0396-RWS (N.D. Ga.) (Ms. Antonino) in which Judge Story praised counsel, noting "the quality of what has been submitted to the Court in this case has been just excellent," and *In re Providian Fin. Corp. Sec. Litig.*, Master File No. C-01-3952-CRB (N.D. Ca.) (Messrs. Guber and Evangelista) in which the court also praised their work.

## IV.   CONCLUSION

For all the foregoing reasons, the Institutional Investor Group respectfully requests that the Court: (i) consolidate the Actions; (ii) appoint the Institutional Investor Group as Lead Plaintiff in the Actions; (iii) approve its selection of Lead Counsel as set forth herein; and (iv) grant such other relief as the court may deem just and proper.

DATED:  April 17, 2006               MOTLEY RICE LLC


                                     /s/ David J. Worley
                                     _____
                                     DAVID J. WORLEY
                                     Georgia Bar No. 776665
                                     dworley@motleyrice.com
                                     LAUREN S. ANTONINO
                                     Georgia Bar No. 652408
                                     lantonino@motleyrice.com
                                     STUART J. GUBER
                                     Georgia Bar No. 141879
                                     sguber@motleyrice.com
                                     JAMES M. EVANGELISTA
                                     Georgia Bar No. 707807
                                     jevangelista@motleyrice.com
                                     One Georgia Center
                                     600 West Peachtree Street, Suite 800
                                     Atlanta, GA  30308
                                     Telephone:  404/201-6900
                                     404/201-6959 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
STEVEN W. PEPICH
DAVID A. THORPE
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DAVID A. ROSENFELD
MARIO ALBA, JR.
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

*[Proposed] Co-Lead Counsel for Plaintiffs*

I:\Coca_Cola\LP Motion\LP Memo.doc

# EXHIBIT B

**GRANT & EISENHOFER P.A.**
Stuart M. Grant
Megan D. McIntyre
James R. Banko (JB-9686)
Russell D. Paul
P. Bradford deLeeuw
Chase Manhattan Centre
1201 N. Market Street
Wilmington, Delaware 19801
Tel:    (302) 622-7000
Fax:    (302) 622-7100

**MURRAY, FRANK & SAILER LLP**
Eric J. Belfi, Esq.
Christopher S. Hinton, Esq.
275 Madison Avenue, 8th Floor
New York, New York 10016
Tel:    (212) 682-1818
Fax:    (212) 682-1892

**Proposed Co-Lead Counsel**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAIM LODISH, <br> Individually and On Behalf of All Others <br> Similarly Situated <br><br>     v. <br><br> ABLE LABORATORIES, INC., et al. | : <br> : <br> : <br> :    **Civil Action No. 2:05-cv-02681-JAG** <br> : <br> : <br> : |
| DAVID KRIEGEL, <br> Individually and On Behalf of All Others <br> Similarly Situated <br><br>     v. <br><br> ABLE LABORATORIES, INC., et al. | : <br> : <br> : <br> :    **Civil Action No. 2:05-cv-02683-JAG** <br> : <br> : <br> : |

[captions continued on next page]

COMMUNICATIONS WORKERS OF
AMERICA PLAN FOR EMPLOYEES'
PENSIONS AND DEATH BENEFITS,
On Behalf of Itself and All Others Similarly
Situated

        v.

ABLE LABORATORIES, INC., et al.

:     **Civil Action No. 2:05-cv-02685-JAG**

GIANNI SKOROS,
Individually and On Behalf of All Others
Similarly Situated

        v.

ABLE LABORATORIES, INC., et al.

:     **Civil Action No. 2:05-cv-02810-JAG**

GLORIA McFARLANE,
Individually and On Behalf of All Others
Similarly Situated

        v.

ABLE LABORATORIES, INC., et al.

:     **Civil Action No. 2:05-cv-03013-JAG**

SHERRY E. HAND and WILLIAM J. HAND,
JR.,
              Plaintiffs,

        v.

ABLE LABORATORIES, INC., et al.

:     **Civil Action No. 2:05-cv-03083-JAG**

PAMELA K. CUMMINGS,
Individually and On Behalf of All Others
Similarly Situated

        v.

ABLE LABORATORIES, INC., et al.

:     **Civil Action No. 2:05-cv-03378-JAG**

[captions continued on next page]

| | | |
|---|---|---|
| RICHARD SILVERMAN, | : | |
| Individually and On Behalf of All Others | : | |
| Similarly Situated | : | |
| | : | **Civil Action No. 2:05-cv-03068-JAG** |
| v. | : | |
| | : | |
| ABLE LABORATORIES, INC., et al. | : | |
| | : | |
| MICRO INVESTORS, LLC, | : | |
| Individually and On Behalf of All Others | : | |
| Similarly Situated | : | |
| | : | **Civil Action No. 2:05-cv-02684-JAG** |
| v. | : | |
| | : | |
| ABLE LABORATORIES, INC., et al. | : | |

## JOINT MEMORANDUM OF LAW BY DEKA INTERNATIONAL (IRELAND) LIMITED AND THE DENVER EMPLOYEES RETIREMENT PLAN IN SUPPORT OF THEIR APPOINTMENT AS CO-LEAD PLAINTIFFS AND IN OPPOSITION TO ALL COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

GRANT & EISENHOFER P.A.
Stuart M. Grant
Megan D. McIntyre
James R. Banko (JB-9686)
Russell D. Paul
P. Bradford deLeeuw
Chase Manhattan Centre
1201 N. Market Street
Wilmington, Delaware 19801
Telephone: (302) 622-7000
Facsimile: (302) 622-7100

**Counsel for Denver Employees Retirement Plan**

MURRAY, FRANK & SAILER LLP
Eric J. Belfi, Esq.
Christopher S. Hinton, Esq.
275 Madison Avenue, 8th Floor
New York, New York 10016
Tel: (212) 682-1818
Fax: (212) 682-1892

**Counsel for Deka International (Ireland) Limited**

Dated: August 29, 2005

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.......................................................................................ii

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS.........................................................................................2

ARGUMENT...............................................................................................................5

I.    THE INSTITUTIONAL INVESTOR GROUP SHOULD BE
APPOINTED LEAD PLAINTIFF.................................................................5

    A.    The Institutional Investor Group Has The Largest Interest In This
Litigation ............................................................................................5

    B.    The Fact that the Institutional Investor Group Was Formed After
the Filing of Lead Plaintiff Motions Does Not Preclude Their
Appointment .......................................................................................6

    C.    The Institutional Investor Group Satisfies The Typicality and
Adequacy Requirements of Rule 23 ..................................................8

II.    RICHARD UPHAM'S MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF SHOULD BE DENIED .........................................................12

    A.    He Does Not Have the Largest Financial Interest ............................12

    B.    He Has Not Established a *Prima Facie* Case of Adequacy..................12

III.    THE OTHER MOVANTS ARE NOT ENTITLED TO APPOINTMENT
AS LEAD PLAINTIFF...............................................................................15

IV.    THE COURT SHOULD APPROVE MOVANTS' SELECTION OF
LEAD COUNSEL ......................................................................................15

CONCLUSION .........................................................................................................16

## TABLE OF AUTHORITIES

### CASES

*A.F.I.K. Holding SPRL v. Fass*,
   216 F.R.D. 567 (D.N.J. 2003) ..................................................................................8, 9

*In re Calpine Corp. Sec. Litig.*,
   No. 02-1200, 2004 WL 3316309 (N.D. Cal. Feb. 5, 2004)........................................10, 13

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ...............................................................5, 9, 11, 12

*In re Critical Path, Inc. Sec. Litig.*,
   156 F. Supp. 2d 1102 (N.D. Cal. 2001)..............................................................10

*Eisenberg v. Gagnon*,
   766 F.2d 770 (3d Cir. 1985) ...........................................................................9

*Gluck v. CellStar Corp.*,
   976 F. Supp. 542 (N.D. Tex. 1997) ..................................................................10

*Local 144 Nursing Home Pension Fund v. Honeywell Int'l Inc.*,
   No. 00-cv-3605, 2000 U.S. Dist. LEXIS 16712 (D.N.J. Nov. 16, 2000)..........................8

*King v. Livent, Inc.*,
   36 F. Supp. 2d 187 (S.D.N.Y. 1999) ...............................................................15

*Montoya v. Mamma com*
   No. 05-2313, 2005 U.S. Dist. LEXIS 10224 (S.D.N.Y. May 31, 2005) ...........................7

*In re Nice Systems Sec. Litig.*,
   188 F.R.D. 206 (D.N.J. 1999) .........................................................................9

*In re Party City Sec. Litig.*,
   189 F.R.D. 91 (D.N.J. 1999) ......................................................................7, 14

*Ohio Public Employees Ret. Sys. v. Fannie Mae*,
   357 F. Supp. 2d 1027 (S.D. Ohio 2005) ............................................................10

*Takeda v. Turbodyne Techs., Inc.*,
   67 F. Supp. 2d 1129 (C.D. Cal. 1999)..............................................................10

*In re Vicuron Pharms., Inc. Sec. Litig.*,
   225 F.R.D. 508 (E.D. Pa. 2004) ..................................................................10, 12

## STATUTES

15 U.S.C. § 78u-4(a)(3)(B)................................................................................................passim

# PRELIMINARY STATEMENT

The Denver Employees Retirement Plan ("DERP") and Deka International (Ireland) Limited ("Deka"), having previously filed separate motions for appointment as lead plaintiff, have elected to jointly prosecute this action involving Able Laboratories, Inc. ("Able" or the "Company") and hereby request that they be appointed co-lead plaintiffs. DERP and Deka further request that the law firms of Grant & Eisenhofer P.A. and Murray Frank & Sailer LLP be appointed co-lead counsel.

DERP and Deka (collectively the "Institutional Investor Group" or the "Movants"), have sustained over $1.723 million[1] in losses resulting from their transactions in Able common stock, which is more than any other movant that has sought appointment as lead plaintiff.[2] Additionally, the Institutional Investor Group – which is comprised of two sophisticated institutional investors – *prima facie* satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Thus, the Institutional Investor Group is entitled to a presumption under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(iii), that it is the most adequate lead plaintiff in this action. There is no evidence to rebut that presumption.

---

[1] During the period October 31, 2002 through May 18, 2005 (the "Class Period"), the Institutional Investor Group suffered losses of $1,723,639 million. DERP and Deka individual lost $841,282 and $882,357, respectively.

[2] The competing movants claim losses as follows, in descending order of magnitude: (1) Richard Upham ("Upham") – $1,589,163; (2) the "Webster Family" (comprised of Floyd Webster, Kent Webster, Keith Webster and Helen Darrah) – $542,900; (3) the "Genessee Group" (comprised of the Genessee County Employees' Retirement System and Julian M. Warren, M.D.) – $399,742; (4) Charles Gillis – $348,847; (5) the "CWA Group" (comprised of the Communications Workers of America Plan for Employees' Pensions and Death Benefits and Daniel Levy) – $243,216; and (6) Edward Howlette – $94,188.

The investor with the second largest loss after the Institutional Investor Group is an individual named Richard Upham. Mr. Upham should not be appointed lead plaintiff, not only because he does not have the largest financial interest in the case, but also because he has failed to meet his burden of presenting a *prima facie* case that he would be an adequate lead plaintiff. Accordingly, the Institutional Investor Group should be appointed lead plaintiff, and all of the competing lead plaintiff motions should be denied.

## STATEMENT OF FACTS

Able is a public corporation which, until May 2005, manufactured and sold a broad range of generic prescription pharmaceutical products. On May 19, 2005, Able issued a press release announcing that it was suspending sales of *all* of its products. Also on May 19, Able announced that its Chairman and Chief Executive Officer would be resigning. Four days later, on May 23, Able further stunned the market when it announced that the problems with its products were so severe that it was recalling *all* of its extant products and that it would withdraw all of its pending new drug applications with the FDA.

Since May 19, when the revelations began, Able's share price has fallen from $24.63 per share on May 18 to less than 20 cents per share, a decline of more than 99 percent. Able's market capitalization has declined from $465 million to less than $4 million in that same time period. DERP, Deka, and numerous other common stockholders of Able suffered losses as a result of the disclosure of these previously-concealed problems with Able's products.

In response to the initial class action notice (filed immediately after the May 19 announcement), eight plaintiffs or groups of plaintiffs have filed competing motions for appointment as Lead Plaintiff. These movants, and the losses asserted by each, are set forth below:

| Proposed Lead Plaintiff | Claimed Losses |
|---|---|
| Institutional Investor Group | $1,723,639 |
| Deka | $882,357 |
| DERP | $841,282 |
| Richard Upham | $1,589,163[3] |
| Webster Family | $ 542,900 |
| Genessee Group | $ 399,742 |
| Charles Gillis | $ 348,847 |
| CWA GROUP | $ 243,216 |
| Edward Howlette | $ 94,188 |

Deka and DERP are each institutional investors which possess the resources, expertise, and incentives necessary to pursue this action on behalf of the class. The single movant claiming to have the largest loss in this case, by contrast, is an individual: Richard Upham. Deka and DERP are concerned that, as a single individual, Mr. Upham cannot assure the adequate representation of the class and that his appointment as lead plaintiff would subject the class to undue, and unnecessary, risks. Moreover, in contrast to the specifically-tailored certifications executed by Deka and DERP in support of their motions, and the pre-existing attorney-client

---

[3] Although Mr. Upham claims a loss of $1,589,163, this loss is based on a post-class period sale of 12,427 shares on June 13, 2005 at a price of $1.75, when in fact the closing price of Able common stock on June 13, 2005 was $4.06 and the lowest trading price on that day was $4.04. Mr. Upham's claimed loss is also based on an average lookback price of $3.32 during the period from May 24, 2005 (the day Mr. Upham claims as the beginning of the lookback period) through July 22, 2005 (the date Mr. Upham filed his motion). However, the more appropriate date for the beginning of the lookback period – and the date used by DERP and Deka in calculating their losses -- is May 19, 2005, the date Able first revealed in a press release that it had "identified apparent departures from standard operation procedures with respect to certain laboratory testing practices" and "decided to temporarily suspend shipment of each of its products." During the lookback period of May 19, 2005 through July 22, 2005, the average price of Able's common stock was $3.97. Correcting Mr. Upham's losses for the incorrect transaction price and lookback price, his actual loss is no more than $1,508,866.58 when calculated using the first-in-first-out (FIFO) method. Under the alternative last-in-first-out (LIFO) method, Mr. Upham's loss is even less -- $1,242,705 -- while the Institutional Investor Group's financial interest is virtually unchanged at $1,704,114.

relationships between the members of the Institutional Investor Group and each of their counsel, Mr. Upham's certification appears to be the type of cookie-cutter fill-in-the-blank form that certain plaintiffs' law firms send out *en masse* to a company's stockholders, trying to solicit plaintiffs on whose behalf they can file motions for lead plaintiff. This fact – which smacks of the type of lawyer-driven litigation Congress sought to eliminate when it passed the PSLRA -- heightens Movants' concern about Mr. Upham's adequacy to lead this litigation and to ensure that the lead plaintiff, as opposed to counsel, is making the important decisions.

In light of these concerns, counsel for DERP requested information from Mr. Upham's counsel which would shed light on his adequacy, including information regarding his background and level of sophistication, and the manner in which he selected counsel.[4] Aside from general statements that Mr. Upham has never worked for Able, and that his counsel believe him to be an appropriate lead plaintiff, no responsive information was provided. Mr. Upham's counsel's unwillingness to provide more specific information regarding their client did little to ease Movants' concerns. Accordingly, to protect their own interests and those of the class, DERP and Deka thereafter conferred to discuss this matter, and agreed to join together and seek appointment as co-lead plaintiffs. *See* Declaration of Victoria Halliday, General Counsel for the Denver Employees Retirement Plan ("Halliday Decl."), ¶¶ 3-4; Declaration of Grainne Walsh, General Manager/Director for Deka International (Ireland) Limited ("Walsh Decl."), ¶¶ 3-6. DERP and Deka not only have a more significant financial interest in this litigation than Mr. Upham, but as sophisticated institutional investors with substantial resources, including

---

[4]     DERP offered to provide similar information regarding itself, upon request by Mr. Upham. No such request was ever made.

dedicated in-house legal and financial staffs, they are capable of managing this litigation effectively and in the best interests of the class. *See* Halliday Decl. ¶¶ 1-2; Walsh Decl. ¶¶ 1-2, 7.

## ARGUMENT

**I.     THE INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF**

Under Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), this Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members. . . ." 15 U.S.C. § 78u-4(a)(3)(B). The Exchange Act provides for a rebuttable presumption that the most adequate plaintiff will be "the person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." *Id.*; *In re Cendant Corp. Litig.*, 264 F.3d 201, 223 (3d Cir. 2001). This presumption may be overcome by evidence that a proposed Lead Plaintiff will not fairly and adequately represent the class or is subject to unique defenses. *Id.*

**A.     The Institutional Investor Group Has The Largest Interest In This Litigation**

The threshold question on motions for appointment of lead plaintiffs is which candidate has the largest financial interest in the litigation. *See Cendant Corp.*, 264 F.3d at 262-68 (holding that the lead plaintiff process under the PSLRA is sequential and that the Court must first determine which movant has the largest financial interest in the litigation) (citing 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)).

It is clear that the Institutional Investor Group -- with losses of over $1.7 million – has a larger financial interest in this litigation than any other movant. By comparison, Mr. Upham has losses of at most $1.5 million, and as little as $1.24 million, and the other movants claim losses

ranging from $94,000 to $543,000.[5]  Thus, the Institutional Investor Group has the largest

financial interest in the outcome of the litigation and is the presumptive most adequate plaintiff

under the PSLRA.

**B.      The Fact that the Institutional Investor Group Was Formed After the Filing
of Lead Plaintiff Motions Does Not Preclude Their Appointment**

Movants anticipate that Mr. Upham will argue that, because DERP and Deka initially

filed separate motions for appointment as lead plaintiff, they are somehow precluded from

joining together now.  That argument should be rejected under the circumstances of this case.

First, there is very recent precedent from within this District for the appointment of co-

lead plaintiffs who joined together after filing separate lead plaintiff motions.  *See In re Bradley*

*Pharms., Inc. Sec. Litig.*, No. 05-1219 (FSH) (D.N.J. May 27, 2005) (Order).  Second, Mr.

Upham's own proposed liaison counsel, the law firm of Bernstein Litowitz Berger & Grossman,

successfully argued to another court just last month that their client (which had the third largest

loss of the movants in that case) should be permitted to join forces with the movant with the

second largest loss  -- after they had each filed separate motions for appointment as lead plaintiff

-- so as to defeat the appointment of the movant with the largest claimed loss as lead plaintiff.

*See* Joint Memorandum of Law of the City of Philadelphia Board of Pensions and Retirement

and the General Retirement System of the City of Detroit, in the case of *Capone v R&G*

*Financial Corp.*, No. 05-CV-04186 (JES) in the Southern District of New York, attached as

---

[5]      Even standing on their own, DERP and Deka each have losses that exceed those of the Webster Family, the
Genessee Group, Charles Gillis, the CWA Group, and Edward Howlette.

Exhibit A to the accompany Declaration of Megan D. McIntyre ("McIntyre Decl.").[6] It would be disingenuous for them to take a contrary position here.

Third, as Judge Baer of the Southern District of New York recently explained in *Montoya v. Mamma.com*, where he appointed as co-lead plaintiffs two movants that initially filed separate lead plaintiff motions:

> [D]espite arguments to the contrary, two independent lead plaintiff movants may join together to help ensure that "adequate resources and experience are available to the prospective class in the prosecution of th[e] action" . . .

No. 05-2313, 2005 U.S. Dist. LEXIS 102224, at *5 (S.D.N.Y. May 31, 2005) (citations omitted). That is precisely the reason why DERP and Deka have joined together in this case. Absent a coalition between DERP and Deka, the presumptive lead plaintiff would be Mr. Upham, an individual whose background is unknown to Movants, whose counsel has declined to provide specific information about him, and who appears from the face of his certification to be a figurehead plaintiff who was solicited by his proposed counsel. There is no reason to believe that Mr. Upham has the sophistication or resources to manage this litigation effectively, or that he will keep this case from becoming the type of lawyer-driven litigation the PSLRA was designed to prevent.[7] *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 104 (D.N.J. 1999) (PSLRA seeks to "ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers").

---

[6]     By Order dated July 26, 2005, the Southern District of New York appointed those two movants as co-lead plaintiffs. (McIntyre Decl. Ex. B).

[7]     Because the issue is not before the Court in this case, DERP and Deka take no position as to whether it would be permissible for the second and third largest movants to join together after filing their motions, if the movant with the largest loss was a sophisticated institutional investor which would be an adequate lead plaintiff.

Accordingly DERP and Deka have agreed to join forces in order to help ensure that adequate resources and experience are available to the class.[8]

### C.   The Institutional Investor Group Satisfies The Typicality and Adequacy Requirements of Rule 23

In *Cendant*, the Third Circuit "refined the lead plaintiff selection and rebuttal process and established a standard procedure." *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 571 (D.N.J. 2003). As set forth in *A.F.I.K. Holdings*:

> First, a court must determine whether the movant with the largest financial interest in the cases has made a *prima facie* showing of typicality and adequacy so that it "otherwise satisfies" Rule 23. [*Cendant*, 264 F.3d] at 263. This determination should be a product of the court's independent judgment. *Id.* The court may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted. *Id.* at 264. Once a prima facie showing has been made, it is a rebuttable presumption that this movant will serve as the lead plaintiff. *Id.*

216 F.R.D. at 571.

Movants Deka and DERP have each made a *prima facie* showing that, in addition to together having the largest financial interest in the outcome of the litigation, they also each satisfy the typicality and adequacy requirements of Rule 23, as required by the PSLRA. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). As set forth in their opening motions, Movants allege, as do

---

[8]   Under Third Circuit precedent, the absence of a pre-litigation relationship between DERP and Deka is also irrelevant to the appointment of lead plaintiff. In *Cendant*, the Third Circuit rejected the argument that a group of "unrelated individuals" was precluded from serving as lead plaintiff under the PSLRA, stating: "The statute contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'" *Id.* at 266. *See also Local 144 Nursing Home Pension Fund v. Honeywell Int'l Inc.*, No. 00-cv-3605, 2000 U.S. Dist. LEXIS 16712, at *13 (D.N.J. Nov. 16, 2000) "[T]he PSLRA does not require that members of a group of investors have some sort of pre-litigation relationship in order to be appointed lead plaintiff. Rather, what is required when considering whether to appoint a group of investors is whether that group will be able to manage effectively the litigation."). DERP and Deka, as a small group of sophisticated institutional investors, are plainly capable of managing this litigation effectively and of adequately representing the class.

all class members, that Defendants violated the Securities Exchange Act of 1934 by making what they knew, or were reckless in not knowing, were false or misleading statements or omissions of material facts concerning Able's substantial quality control problems in its manufacturing and testing of its products during the Class Period. Movants, like all members of the Class, purchased Able common stock on the NASDAQ National Market during the Class Period at prices that were artificially inflated by defendants' misrepresentations and omissions. Movants satisfy the "typicality" requirement of Rule 23 because their claims "arise[] from the same event or course of conduct that gives rise to the claims of other class members and [are] based on the same legal theory." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985); *In re Nice Systems Sec. Litig.*, 188 F.R.D. 206, 218 (D.N.J. 1999). *See also A.F.I.K. Holding*, 216 F.R.D. at 572 (movant that set forth similar information had made a *prima facie* showing of typicality).

Movants also satisfy the adequacy requirement of Rule 23. In assessing a lead plaintiff movant's adequacy, the Court should consider whether the movant:

> has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.

*In re Cendant Corp. Litig.*, 264 F.3d at 265 (quoting *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988)). Unlike Mr. Upham – as to whom there are serious unanswered questions about his ability and incentive to represent the class free of any conflicts of interest -- the Institutional Investor Group and their counsel overwhelmingly satisfy these elements.

As set forth in Declarations of Victoria Halliday and Grainne Walsh (submitted herewith) and in the Certification of Steven E. Hutt (submitted with DERP's original motion), DERP and Deka are institutional investors, each of which has a significant financial stake in this litigation, is accustomed to acting in a fiduciary capacity, and has the resources and skills to actively

manage this litigation for the benefit of the class. *Ohio Public Employees Ret. Sys. v. Fannie Mae*, 357 F. Supp. 2d 1027, 1035 (S.D. Ohio 2005) (finding movants adequate where they were "well-grounded and sophisticated institutional investors that [could] commit substantial resources to th[e] litigation"). Among other things, DERP and Deka have dedicated investment and legal staffs with the expertise necessary to oversee this case and direct the actions of counsel, and they have expressed their intention to actively monitor these cases and participate jointly in all significant decisions, rather than simply relying on counsel. *See* Hutt Certification, ¶ 3; Halliday Decl. ¶¶ 2, 4; Walsh Decl. ¶¶ 4, 7. It is precisely for these reasons that, in enacting the PSLRA, Congress expressed a strong preference for having institutional investors appointed as lead plaintiff in securities class actions.[9] The case law likewise reflects this preference.[10]

DERP and Deka have discussed this action and the lead plaintiff motions filed on July 22, 2005, have conferred with their counsel, and have pledged to work cooperatively with respect to all aspects of this litigation to ensure that all class members receive a full and fair recovery. *See*

---

[9]     *See* Conference Report on Securities Litigation Reform, H.R. Rep. No. 104-369 (1995), *reprinted in* 1996 U.S.C.C.A.N. 730, 731-34 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation"); S. Rep. No. 104-98 (1995), *reprinted in* 1996 U.S.C.C.A.N. 679, 687-90 (the PSLRA was intended "to increase the likelihood that institutional investors will serve as Lead Plaintiffs" because, among other reasons, institutional investors are accustomed to acting in a fiduciary capacity).

[10]     *See, e.g., In re Vicuron Pharms., Inc Sec Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (choosing institutional investor group over two individual investor groups as lead plaintiff, stating: "Under the PSLRA, institutional investors are considered preferred lead plaintiffs."); *In re Calpine Corp Sec Litig.*, 2004 WL 3316309, at *3 (N.D. Cal. Feb. 5, 2004) ("The PSLRA generally favors institutional investors over individual investors because institutional investors are presumed to be sophisticated, experienced in the securities business, and enjoy greater resources (such as an in-house legal team)."); *Takeda v. Turbodyne Tech., Inc.*, 67 F. Supp. 2d 1129, 1135 (C.D. Cal. 1999) (the PSLRA's preference for lead plaintiff is large, sophisticated, institutional investors); *In re Critical Path, Inc. Sec Litig.*, 156 F. Supp. 2d 1102, 1109 (N.D. Cal. 2001) ("While it may be true that losing a high percentage of one's net worth due to an alleged fraud contributes to one's desire to prosecute a lawsuit against the wrongdoer, that desire is no substitute for the experience and resources of an institutional investor with, presumably, an in-house legal team and experience in the securities business."); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("Through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors ").

Halliday Decl. ¶ 4; Walsh Decl. ¶¶ 4, 6, 7. Indeed, DERP has experience doing precisely that, having served as one of the co-lead plaintiffs in *In re DaimlerChrysler AG Securities Litigation*, which resulted in a $300 million settlement which, at the time, was one of the five largest securities class action settlements in history. *See* Halliday Decl. ¶ 2.

Additionally, Movants have selected co-lead counsel – the law firms of Grant & Eisenhofer P.A. and Murray Frank & Sailer LLP – with the requisite skills, experience, and competence to prosecute this action vigorously and efficiently, in the best interests of all class members. Moreover, the Institutional Investor Group has negotiated a fee agreement with proposed co-lead counsel, whereby the total fee to be requested by co-lead counsel will not increase by virtue of the appointment of two firms rather than one, and will fall within the range of 9% - 23%, depending upon the amount of recovery and the stage of the litigation when it is achieved. *See* Halliday Decl. ¶ 5; Walsh Decl. ¶ 9. By negotiating these reasonable terms, Movants have already demonstrated their commitment and ability to manage this litigation in the best interests of the class. *See Cendant Corp.*, 264 F.3d at 265 ("one of the best ways for a court to ensure that [a movant] will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel").

Having made a *prima facie* demonstration that they satisfy the adequacy and typicality requirements of Rule 23, Deka and DERP have satisfied the requirements of the PSLRA and the Third Circuit in *Cendant*, and the Institutional Investor Group is entitled to the presumption that it is the most adequate plaintiff. There is no evidence that could rebut the presumption, and therefore DERP and Deka should be appointed co-lead plaintiffs.

## II. RICHARD UPHAM'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF SHOULD BE DENIED

### A. He Does Not Have the Largest Financial Interest

Running second to the losses suffered by the Individual Investor Group is Richard Upham. As stated above, the amount of financial loss is the most significant element in determining the lead plaintiff in securities fraud class action cases. *See In re Vicuron Pharmaceuticals, Inc. Sec. Litig.*, 225 F.R.D. at 511. Because the Institutional Investor Group's financial interest exceeds Mr. Upham's, and because the Institutional Investor Group otherwise satisfies the requirements for appointment as lead plaintiff, the Court need not and should not consider Mr. Upham's adequacy to serve as lead plaintiff. His motion should be denied because he does not have the largest financial interest in the case.

### B. He Has Not Established a *Prima Facie* Case of Adequacy

In order to be appointed lead plaintiff under the PSLRA, a plaintiff must make a "prima facie" showing of its adequacy to serve in that role. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Cendant Corp.*, 264 F.3d at 264 (court must determine whether movant has stated a "prima facie case" of typicality and adequacy, and cannot simply "presume" those requirements to be satisfied). Among other things, the Court must consider whether the movant "has the ability and incentive to represent the claims of the class vigorously." *Cendant Corp. Litig.*, 264 F.3d at 265. The Third Circuit has expressly recognized that "a court might conclude that [a lead plaintiff movant] could not surmount the threshold adequacy inquiry if it lacked legal experience or sophistication . . . or had negotiated a clearly unreasonable fee agreement with its chosen counsel." 264 F.3d at 264.

Despite the requirement that he make a *prima facie* showing as to his adequacy as a lead plaintiff, Mr. Upham's certification and motion provide *no information* whatsoever to support

such a finding. Nor do they provide even so much as his middle initial, his state of residence, or any other identifying information which would enable other lead plaintiff movants or the Court to independently gather information bearing upon his adequacy. In the face of this dearth of information, counsel for DERP has requested information from Mr. Upham's counsel – both informally and by subpoena – which would enable Movants and the Court to assess Mr. Upham's adequacy to serve in the role of lead plaintiff. Among other information, DERP's subpoena requested Mr. Upham's full name, place of employment, job title, educational and employment background, and a copy of his fee agreement (if any) with his proposed lead counsel. *See* McIntyre Decl. Ex. C. Mr. Upham's counsel has declined to provide that information, essentially forcing Movants and the Court to "take it on faith" that Mr. Upham has the necessary sophistication and resources to manage a litigation of this size.

Both the absence of information regarding Mr. Upham's adequacy as a lead plaintiff in his motion, and his counsel's refusal to provide such information in response to DERP's requests, give rise to serious concerns on the part of DERP and Deka as to whether Mr. Upham will adequately represent the class in this litigation. More importantly, by failing to provide such information, Mr. Upham has failed to make the *prima facie* showing of his adequacy that would be necessary to become the presumptive lead plaintiff under the PSLRA. *See In re Calpine Corp. Sec. Litig.*, 2004 WL 3316309, at \*3 (declining to appoint individual as lead plaintiff where "all [he] has done is make conclusory allegations in his moving papers that he is typical of the Class and that he will represent the Class fairly," and "not[ing] with great concern" that the movant's submissions "ma[de] no references to his professional or investment experience" and "provide[d] no evidence that he could, in fact, fairly and adequately represent the class"). His motion should be denied for that reason alone.

-13-

Additionally, the fill-in-the-blank nature of Mr. Upham's certification in support of his motion is inconsistent with the type of client-controlled litigation which Congress envisioned when enacting the PSLRA. It appears that Mr. Upham's counsel simply sent out blank certification forms to Able stockholders, and solicited them to fill in the blanks and return them. This case has already become a poster child in the press for critics of class actions, when similar tactics by another law firm resulted in the first complaint being filed on behalf of an investor, Chaim Lodish, who knew nothing about the facts underlying this suit until he "was caught up in a standard 'dialing for dollars' campaign" by lawyers looking for potential plaintiffs and then found himself named in the complaint. *See* "Feeding frenzy over Able Labs begins," The Star-Ledger (May 25, 2005) (McIntyre Decl. Ex. D). In the face of evidence suggesting that Mr. Upham is merely a figurehead plaintiff who was chosen by his counsel (instead of the other way around) because he happened to have the largest loss of the investors they solicited, the Court should not appoint him as lead plaintiff. *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 104 (D.N.J. 1999) (PSLRA seeks to "ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers"). Accordingly, even if DERP and Deka did not have a larger financial interest in this litigation than Mr. Upham – which they do – Mr. Upham's motion should be denied in favor of the appointment of DERP and Deka as co-lead plaintiffs. Alternatively, the Court should require Mr. Upham to respond to discovery regarding his adequacy as a lead plaintiff, so the Court can have sufficient information upon which to decide the pending motions.[11] After all, the process

---

[11] The PSLRA permits one plaintiff to take discovery of another if there is "a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv). If Mr. Upham were found to be the presumptively most adequate plaintiff (which he should not be),

(continued on next page)

by which a lead plaintiff is selected "works better with more information than less." *King v.*
*Livent, Inc.*, 36 F. Supp. 2d 187, 191 (S.D.N.Y. 1999).

## III.  THE OTHER MOVANTS ARE NOT ENTITLED TO APPOINTMENT AS LEAD PLAINTIFF

The remaining movants seeking appointment as lead plaintiff for the Class claim losses
smaller than those of the Institutional Investor Group. Indeed, even if DERP and Deka had not
joined forces, each of their individual losses would exceed those of each of these movants. Since
the Institutional Investor Group is an appropriate lead plaintiff and the PSLRA presumption has
not been rebutted, there is no reason to consider the other movants.

## IV.  THE COURT SHOULD APPROVE MOVANTS' SELECTION OF LEAD COUNSEL

The PSLRA vests authority in the Lead Plaintiffs to select and retain Lead Counsel,
subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, a court should not disturb a lead
plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §
78u-4(a)(3)(B)(iii)(II)(aa). DERP and Deka have selected Grant & Eisenhofer P.A. and Murray,
Frank & Sailer LLP as Co-Lead Counsel for the Class. As set forth in the original motions filed
by DERP and Deka, Grant & Eisenhofer and Murray Frank & Sailer have extensive experience
in the areas of securities and complex litigation and have successfully prosecuted numerous
securities fraud class actions on behalf of injured investors. Thus, the Court will be assured that
the Class will receive the highest caliber of legal representation available.

---

there would be a reasonable basis to find that he is incapable of adequately representing the class. Among other
things, he is an individual investor who has failed to present any affirmative evidence to suggest that he would be an
adequate lead plaintiff; Congress has expressed a preference for the appointment of sophisticated investors; and Mr.
Upham's certification suggests that he merely responded to a solicitation seeking prospective lead plaintiffs.

## CONCLUSION

In light of the foregoing, the Institutional Investor Group respectfully requests that the Court: (i) order these actions consolidated; (ii) appoint DERP and Deka to serve as Co-Lead Plaintiffs pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934; (iii) approve their selection of Grant & Eisenhofer P.A. and Murray, Frank & Sailer LLP as Co-Lead Counsel for the Class; and (iv) grant such other and further relief as the Court may deem just and proper.

Dated: August 29, 2005

Respectfully submitted,

_____
GRANT & EISENHOFER P.A.
Stuart M. Grant
Megan D. McIntyre
James R. Banko (JB-9686)
Russell D. Paul
P. Bradford deLeeuw
Chase Manhattan Centre
1201 N. Market Street
Wilmington, Delaware 19801
Tel:     (302) 622-7000
Fax:    (302) 622-7100

MURRAY, FRANK & SAILER LLP
Eric J. Belfi
Christopher S. Hinton
275 Madison Avenue, 8th Floor
New York, New York 10016
Tel:     (212) 682-1818
Fax:    (212) 682-1892

**Proposed Lead Counsel**

# EXHIBIT C

Yahoo!  My Yahoo!  Mail   **Make Y! your home page**       Search:                    **Web Search**

**YAHOO!** FINANCE   **Sign In**       Finance Home - Help       **market WIRE**
New User? Sign Up                                           a CCNMatthews Company

**Welcome** [**Sign In**]                                   To track stocks & more, **Register**

## Financial News

Enter symbol(s)           Basic          [ Get ]    Symbol Lookup

**Press Release**                                    Source: Kahn Gauthier Swick, LLC

# Shareholders Sue XM Satellite Radio Holdings, Inc. -- KGS Announces Filing

Thursday May 11, 9:33 pm ET

NEW ORLEANS, LA--(MARKET WIRE)--May 11, 2006 -- Kahn Gauthier Swick, LLC ("KGS") announces that a securities class action lawsuit has been commenced in the U.S. District Court for the District of Columbia, on behalf of shareholders who purchased, exchanged or otherwise acquired the common stock of XM Satellite Radio Holdings, Inc. (NasdaqNM:XMSR - News) between July 28, 2005 and February 15, 2006. No class has yet been certified in this action.

UNTIL A CLASS IS CERTIFIED, YOU ARE NOT REPRESENTED BY COUNSEL UNLESS YOU RETAIN AN ATTORNEY.

The Complaint alleges that defendants misrepresented XM's ability to reduce its subscriber acquisition costs, and that defendants knew or recklessly disregarded the fact that excessively large marketing expenditures would be needed through 2005 to reach XM's goal of 6 million subscribers. It was only on February 16, 2006, that XM disclosed to investors the fact that XM's subscriber acquisition costs were skyrocketing. Shares of the Company immediately fell 13% to close at $21.96 on February 17, 2006 and have subsequently fallen further to around $17.00 per share. During the class period, several key insiders of XM made huge sales of their personal holdings in the fourth quarter of 2005, taking advantage of the artificial inflation of XM's common stock and selling almost $70 million in Company stock during that time.

If you purchased shares of XM between between July 28, 2005 and February 15, 2006, and wish to discuss your legal rights, you may e-mail or call KGS, without obligation or cost to you. You may contact Lewis Kahn of KGS toll free 1-866-467-1400, ext. 100, or at 504-648-1850, or by email at lewis.kahn@kglg.com. Further information is available at. http://www.kglg.com/case/case.asp?lngCaseId=4799

*Contact:*

```
        Contact:
        Lewis Kahn
        KGS
        1-866-467-1400, ext. 100
        504-648-1850
        lewis.kahn@kglg.com
        http://www.kglg.com/case/case.asp?lngCaseId=4799
```

Source: Kahn Gauthier Swick, LLC

Copyright © 2006 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Ad Feedback

Copyright © 2006 Market Wire. All rights reserved. All the news releases provided by Market Wire are copyrighted. Any forms of copying other than an individual user's personal reference without express written permission is prohibited. Further distribution of these materials is strictly forbidden, including but not limited to, posting, emailing, faxing, archiving in a public database, redistributing via a computer network or in a printed form.

<u>Yahoo!</u>  <u>My Yahoo!</u>  <u>Mail</u>    **Make Y! your home page**    Search:    [ Web Search ]

**YAHOO!** FINANCE    **Sign In**    Finance Home - Help    PRIMEZONE
New User? Sign Up    M E D I A • N E T W O R K

**Welcome** [**Sign In**]    To track stocks & more, **Register**

**Financial News**

Enter symbol(s)    Basic    [ Get ]    Symbol Lookup

**Press Release**    Source: Kahn Gauthier Swick, LLC

# XM Satellite Radio Holdings, Inc. Class Action Lead Plaintiff Deadline Approaches, KGS Announces -- XMSR

Wednesday May 24, 8:00 pm ET

NEW ORLEANS, May 24, 2006 (PRIMEZONE) -- Kahn Gauthier Swick, LLC (``KGS'') announces that shareholders have only until July 3, 2006, to move the Court to serve as Lead Plaintiff in the securities class action lawsuit commenced in the U.S. District Court for the District of Columbia, on behalf of shareholders who purchased, exchanged or otherwise acquired the common stock of XM Satellite Radio Holdings, Inc. (NasdaqNM:XMSR - News) between July 28, 2005 and February 15, 2006. No class has yet been certified in this action.

Institutional investors are strongly encouraged to move for lead plaintiff status.

As investors have now learned, defendants appear to have misrepresented XMSR's ability to achieve subscriber acquisition cost goals, and omitted to disclose that excessively large marketing expenditures would be needed through 2005 even to reach XMSR's revised subscriber growth projections. It was only on February 16, 2006, however, that XM disclosed to investors the fact that XMSR's subscriber acquisition costs were skyrocketing. Shares of the Company immediately fell 13% to close at $21.96 on February 17, 2006, and have subsequently fallen further to around $17.00 per share. Today, however, shares fell to a 52-week low, closing at $13.75 per share, after the Company again lowered subscriber projections. While shareholders of the Company have seen billions of dollars of market capitalization eviscerated, during the class period, several key insiders of XMSR made huge sales of their personal holdings in the fourth quarter of 2005 -- taking advantage of the artificial inflation of XMSR's common stock and selling almost $70 million in their privately held shares during that time.

If you purchased shares of XMSR between July 28, 2005 and February 15, 2006 and wish to discuss your legal rights, you may e-mail or call KGS, without obligation or cost to you. You may contact Lewis Kahn of KGS toll free 1-866-467-1400, ext. 106, or by email at lewis.kahn@kglg.com. Further information is available at http://www.kglg.com/case/case.asp?lngCaseId=4799.

More information on this and other class actions can be found on the Class Action Newsline at http://www.primezone.com/ca.

*Contact:*

        Kahn Gauthier Swick, LLC
        Lewis Kahn
        1-866-467-1400, ext. 106
        lewis.kahn@kglg.com

Source: Kahn Gauthier Swick, LLC

Copyright © 2006 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Ad Feedback

Copyright © 2006 PrimeZone Media Network. All rights reserved. Redistribution of this content is expressly prohibited without prior written consent. PrimeZone makes no claims concerning the accuracy or validity of the information, and shall not be held liable for any errors, delays, omissions or use thereof.

# EXHIBIT D

Yahoo!  My Yahoo!  Mail    **Make Y! your home page**    **Search:**    **Web Search**

YAHOO!® FINANCE    **Sign In**    Finance Home - Help    PRIMEZONE
New User? Sign Up    MEDIA•NETWORK

**Welcome** [**Sign In**]    To track stocks & more, Register

**Financial News**

Enter symbol(s)    Basic    [  ] **Get**    Symbol Lookup

**Press Release**    Source: Schatz & Nobel, P.C.

# Schatz & Nobel, P.C. Announces Expanded Class Period in Class Action Lawsuit Against XM Satellite Radio Holdings, Inc. -- XMSR

Friday June 30, 2:36 pm ET

HARTFORD, Conn., June 30, 2006 (PRIMEZONE) -- The law firm of Schatz & Nobel, P.C., which has significant experience representing investors in prosecuting claims of securities fraud, announces that a lawsuit seeking class action status has been filed in the United States District Court for the District of Columbia on behalf of all persons who purchased or otherwise acquired the publicly traded securities of XM Satellite Radio Holdings, Inc. (``XM'' or the ``Company'') (NasdaqNM:XMSR - News) between the expanded period July 28, 2005 and May 24, 2006, inclusive, (the ``Class Period'').

The Complaint alleges that defendants violated federal securities laws by issuing a series of materially false statements. Specifically, defendants made misrepresentations regarding XM's ability to reduce the costs of its new subscribers as it reached its goal of 9 million subscribers by year-end 2006. In anticipation of XM's competitor Sirius' contract with shock jock Howard Stern, XM began to spend extraordinarily large sums on its marketing efforts. Nevertheless, defendants represented that XM expected to exceed 9 million subscribers by year-end 2006 and that XM had been successful in lowering its subscriber acquisition costs. Throughout the Class Period, defendants failed to disclose that XM's subscriber acquisition costs would rise to extraordinary levels and that it would not meet its subscriber guidance. During the Class Period, several key insiders of XM made huge sales of their personal holdings.

On February 16, 2006, the Company announced a much wider loss in the fourth quarter on higher costs for marketing and acquiring subscribers. XM announced that its subscriber acquisition cost per customer was $89, compared to $64 in the same period of the prior year. Then, on May 24, 2006, XM announced that it was reducing its subscriber guidance for 2006 from 9 million to 8.5 million. Upon this announcement, shares of XM fell $1.76, or 13%, to close at $13.75 per share.

If you are a member of the class, you may, no later than July 3, 2006, request that the Court appoint you as lead plaintiff of the class. A lead plaintiff is a class member that acts on behalf of other class members in directing the litigation. Although your ability to share in any recovery is not affected by the decision whether or not to seek appointment as a lead plaintiff, lead plaintiffs make important decisions which could affect the overall recovery for class members, including decisions concerning settlement. The securities laws require the Court to consider the class member(s) with the largest financial interest as presumptively the most adequate lead plaintiff(s).

To view a copy of the Complaint or for more information about the case, class action cases in general, and your rights, please contact Schatz & Nobel toll-free at (800) 797-5499, or by e-mail at sn06106@aol.com, or visit our website: http://www.snlaw.net.

Contact:

```
        Schatz & Nobel, P.C.
        Wayne T. Boulton
        Nancy A. Kulesa
        (800) 797-5499
```

```
sn06106@aol.com
www.snlaw.net
```

Source: Schatz & Nobel, P.C.

Copyright © 2006 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Ad Feedback
Copyright © 2006 PrimeZone Media Network. All rights reserved. Redistribution of this content is expressly prohibited without prior written consent.
PrimeZone makes no claims concerning the accuracy or validity of the information, and shall not be held liable for any errors, delays, omissions or
use thereof.